# United States Court of Appeals
## For the First Circuit

---

No. 21-1983

UNITED STATES OF AMERICA,

Appellee,

v.

DEREK SHEEHAN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

---

Before

Barron, Chief Judge,
Selya and Lynch, Circuit Judges.

---

   Robert L. Sheketoff, with whom Sheketoff & O'Brien was on brief, for appellant.
   Donald C. Lockhart, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for appellee.

---

June 8, 2023

---

SELYA, **Circuit Judge**. Defendant-appellant Derek Sheehan appeals both the district court's refusal to suppress the seizure of his cell phone and its refusal to suppress evidence of child pornography. We conclude that the seizure of the cell phone was lawful, but that the warrant authorizing the search of his electronic devices containing the child-pornography evidence was neither supported by probable cause nor within the good-faith exception to the warrant requirement. Accordingly, we affirm in part and reverse in part the district court's denial of Sheehan's motion to suppress, vacate both Sheehan's conviction and his conditional guilty plea, and remand for further proceedings consistent with this opinion.

## I

When reviewing the disposition of a motion to suppress, "[w]e rehearse the facts as supportably found by the district court," supplementing those facts (as may be necessary) "with uncontested facts drawn from the broader record." United States v. Adams, 971 F.3d 22, 28 (1st Cir. 2020). With this standard in mind, we first canvass the relevant facts and then trace the travel of the case.

## A

On June 28, 2018, a woman reported to police in Norwell, Massachusetts, that Sheehan had sexually assaulted her younger brother, who was a friend of Sheehan's son. A seven-week

investigation followed, during which state and local police conducted a series of interviews with several children and their parents, all of whom were apparently acquainted with Sheehan and his family.

From those interviews, the police learned of an elaborate ruse through which Sheehan ostensibly had attempted to dispel or preempt any suspicions the other parents might have had that he was a pedophile. In a series of interviews, the parents independently told a similar tale: that Sheehan had earlier said that he had been the subject of a state police investigation after text messages between two children describing him as a pedophile had been unearthed by administrators at the children's school.

According to the parents, Sheehan said that the investigation had exonerated him. In support, he showed them what purported to be both a state police file and an email exchange between him and the school resource officer. The parents described the supposed police file as being hundreds of pages in length and imprinted with the emblem of the Massachusetts State Police. But all of this was made up out of whole cloth: unbeknownst to the parents, Sheehan had never before been either the subject or the target of any such investigation.

Police officers also learned that Sheehan had created an "Apple ID" account for the child he had allegedly assaulted.[1]  By creating such an account, Sheehan was able to monitor that child's text messages, pictures, and videos.  Indeed, the police were told that Sheehan had used a desktop computer in his home to spy on that child's text messages.  One of those messages, sent to another child in January of 2018, described Sheehan as a "literal child rpst [sic]."

On August 1, 2018, police officers tried to interview Sheehan at his home.  Because he was not there at the time, they instead spoke to his wife.  She denied ever having seen the state police file described by the other parents.  Before leaving, though, the officers informed her that Sheehan was under investigation.

On August 16, one of the parents called the Norwell police to report that Sheehan and his wife had spoken to her by telephone a few days earlier.  Their stated intention was to deter her from cooperating with the investigation.  They told her, among

---

[1] According to the affidavit submitted in support of the warrant to search Sheehan's home, the interview from which the police learned that Sheehan had created the Apple ID account occurred on August 17 (the day after the application for that warrant had been approved).  It is unclear whether the date is a typographical error or whether the affidavit was somehow amended after the warrant issued.  In all events, Sheehan does not challenge the warrant itself.  Absent a better explanation, we assume — for argument's sake — that the date of the interview was recorded incorrectly.

other things, that the police were dissembling about Sheehan and could not be believed.  In that conversation, Sheehan also told the parent that she should inform the police that he had done nothing wrong.

That evening, a Norwell police officer, Kayla Puricelli, applied for a search warrant.  The application expressly incorporated by reference an attached affidavit, which described the evidence gathered by the police during their interviews with the parents and children.  Additionally, the affidavit referred to evidence, obtained by state police, that Sheehan had created two email accounts.  He created one such account in the name of the school resource officer, and he created the other in the name of the child whom he had allegedly assaulted.

Based on those facts, the affidavit stated that there was probable cause to believe that Sheehan had committed the crimes of identity fraud, unauthorized access to a computer, witness intimidation, and impersonation of a police officer.  See Mass. Gen. Laws ch. 266, §§ 37E, 120F, ch. 268, §§ 13B, 33.  To obtain additional evidence of those crimes, the affidavit (and thus the warrant application) sought authorization to seize, and subsequently search, any electronic devices found within Sheehan's home that could transmit or store digital data, including cell phones.  An assistant clerk of the Hingham District Court issued the warrant (with docket number 1858SW0035), which authorized the

search of Sheehan's house and person, but not the search of any other person within the home.

The following morning — wielding an arrest warrant separately obtained by the Massachusetts State Police — officers arrested Sheehan for indecent assault and battery of a child under the age of fourteen, see Mass. Gen. Laws ch. 265, § 13B, and witness intimidation, see id. ch. 268, § 13B. The officers then searched Sheehan's home pursuant to the warrant obtained by Officer Puricelli, seizing myriad electronic devices in the process.[2]

Sheehan's wife had his cell phone in her possession at the time of the search. While his arrest was taking place, Sheehan asked his wife to call a lawyer. That is when the arresting officers seized the phone: in Sheehan's words, one of the officers "grabbed [his] wife by the arm, twisted her arm[,] and removed the phone from her hand."[3]

---

[2] In addition, the police seized a tobacco container, electronic cigarette cartridges, and three unopened bottles of root beer. It is not immediately apparent why the police believed that those items were responsive to the warrant, which authorized only the seizure of computers and electronic devices capable of storing or transmitting digital data. But because that issue does not bear directly upon the current appeal, we do not probe the point more deeply.

[3] Sheehan's affidavit states that the search and arrest occurred on August 12. But the affidavit was entered into the record when Sheehan moved for reconsideration of the district court's denial of his motion to suppress the fruits of the August 17 search. Given both the context in which the affidavit was offered and the record as a whole, it can safely be assumed that the affidavit describes the August 17 search. The government

Shortly thereafter, state prosecutors moved to impound the search warrant because it contained information that could possibly identify juvenile victims of sexual assault.  On August 20, a justice of the Hingham District Court granted the motion.

On August 29, Officer Puricelli applied for a second search warrant, this time seeking to search the electronic devices seized from Sheehan's home for evidence of possession of child pornography.  See Mass. Gen. Laws ch. 272, § 29C.  Like the first warrant application, the second expressly incorporated an attached affidavit.  In that affidavit, Officer Puricelli stated that because she had submitted the affidavit "for the limited purpose of securing a search warrant," she had refrained from including "each and every fact known to [her] concerning th[e] investigation."  Instead, the affidavit "set forth only those facts that [she] believe[d] [were] sufficient to establish the requisite probable cause for a search warrant."

The affidavit then recounted, in pertinent part, that a seven-week police investigation had culminated in the issuance of an arrest warrant for Sheehan and a search warrant for his home (both of which were executed on August 17).  The electronic devices seized in that search were then taken into custody by the Massachusetts State Police Computer Crimes Unit.  A state trooper

asserts as much in its briefing, and Sheehan does not dispute the point.

- 7 -

from that unit notified Officer Puricelli that — while downloading digital evidence from Sheehan's phone — he had seen "pictures he believed to be child pornography."  According to the affidavit, "[t]he pictures consisted of images of prepubescent penises that lacked pubic hair."  Based solely on that description and the fact of Sheehan's arrest, the second application sought a warrant to search all devices seized from Sheehan's home for evidence of possession of child pornography.

Other than stating that Sheehan had been arrested for indecent assault and battery on a child under the age of fourteen in violation of Mass. Gen. Laws ch. 265, § 13B, the second affidavit neither provided details of the alleged assault nor recounted any facts drawn from the initial investigation.  By the same token, the second application did not contain copies of any of the supposedly pornographic images.  And although the affidavit attached to the second application made clear that the devices to be searched had been seized pursuant to the first search warrant (which the second affidavit identified specifically by docket number), the second affidavit at no point expressly incorporated by reference the first search warrant, the application for that warrant, or the affidavit furnished in support of that application.

Officer Puricelli did state in the second affidavit that she had "previously submitted the same application relative to [the electronic devices]," but she made pellucid that the prior

application had been "based on probable cause for other crimes." What is more, she stated that she had "not previously submitted the same application" as it related to the crime of possession of child pornography.  (Emphasis in original).  She also reiterated that distinction on the form for the second warrant application.

An assistant clerk of the Hingham District Court — albeit not the assistant clerk who approved the first warrant — authorized the search.  The second warrant issued with docket number 1858SW0036.  The ensuing search uncovered videos of Sheehan sexually abusing a child on three separate occasions.  Based on that evidence, he was charged in state court with several offenses, including three counts of aggravated rape of a child in violation of Mass. Gen. Laws ch. 265, § 22A.

**B**

Federal criminal charges followed.  On September 19, 2018, a criminal complaint was filed in the United States District Court for the District of Massachusetts, charging Sheehan with three counts of sexual exploitation of children.  See 18 U.S.C. § 2251(a), (e).  On October 25, a federal grand jury returned an indictment on those charges and added a child-pornography forfeiture allegation, see id. § 2253.

In due season, Sheehan moved to suppress the evidence obtained pursuant to both the first and second search warrants. As relevant here, he contended that the police exceeded the scope

- 9 -

of the first warrant by seizing his phone from his wife, given that the warrant did not authorize the search of anyone in the home (apart from Sheehan himself).  He also contended that the second warrant was unsupported by probable cause because the application for the warrant neither attached a copy of the image(s) to which the search was directed nor described the image(s) with sufficient detail such that a neutral magistrate could determine whether there was probable cause that the alleged object or objects of the search were pornographic.  See United States v. Brunette, 256 F.3d 14, 17-19 (1st Cir. 2001).

    The district court was unconvinced.  As to Sheehan's phone, the court held that Sheehan lacked standing to contest the seizure of his phone from his wife's possession.  See United States v. Sheehan, No. 18-10391, 2020 WL 429447, at *6 n.10 (D. Mass. Jan. 28, 2020).  So, too, it held that the description of the allegedly pornographic images contained in the second warrant affidavit was sufficiently detailed to establish probable cause that child pornography would be found on the devices.  See id. at *5.  Accordingly, the motion to suppress was denied.  See id. at *7.  Sheehan moved for reconsideration, but the district court summarily denied that motion.

    On July 20, 2021, Sheehan entered a conditional guilty plea, pursuant to a plea agreement, to all counts charged in the indictment.  See Fed. R. Crim. P. 11(a)(2).  His plea was

contingent upon the retention of his right to appeal the district court's denial of his motion to suppress. On November 23, Sheehan was sentenced to serve a 540-month term of immurement. This timely appeal followed.

## II

When reviewing a denial of a motion to suppress, we examine the district court's "factual findings for clear error and its legal conclusions, including its ultimate constitutional determinations, de novo." United States v. Moss, 936 F.3d 52, 58 (1st Cir. 2019). We may uphold a suppression ruling on any ground made manifest in the record. See id.; United States v. Ackies, 918 F.3d 190, 197 (1st Cir. 2019).

The Fourth Amendment provides that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Sheehan contends, as he did below, that the evidence arrayed against him was obtained in violation of these safeguards both because the police exceeded the scope of the first search warrant and because the second search warrant was issued without a sufficient showing of probable cause. We address these contentions in turn.

### III

We start with Sheehan's remonstrances concerning the seizure of his cell phone.  "Whether a search exceeds the scope of a search warrant is an issue we determine through an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search."  United States v. Pimentel, 26 F.4th 86, 92 (1st Cir. 2022) (quoting United States v. Hitchcock, 286 F.3d 1064, 1071 (9th Cir.), amended on other grounds, 298 F.3d 1021 (9th Cir. 2002)).  Here, the first search warrant unmistakably authorized the police to search Sheehan's residence and his person in order to seize any handheld digital devices or cell phones.  It did not, however, authorize the search of any other person.

Sheehan contends that the seizure of his phone was the result of a warrantless search of his wife.  He points to no evidence to support this theory other than statements by the government before the district court that the phone had been "with" Sheehan's wife at the time of the search.  Sheehan asserts that such a statement is indicative of his wife having been searched by the police and that, at the very least, additional evidence should have been taken on the issue.

The district court declined to address this issue on the merits.  Instead, it held that Sheehan lacked standing to challenge the seizure of the phone from his wife's possession.  On appeal,

the government does not press the standing issue but, rather, invites us to affirm the district court's ruling on an alternative ground:  that no search of Sheehan's wife occurred and that the seizure of the phone was within the scope of the warrant.

We accept the government's invitation and find its arguments persuasive.  "A search within the meaning of the Fourth Amendment occurs whenever the government intrudes upon any place and in relation to any item in which a person has a reasonable expectation of privacy."  Moss, 936 F.3d at 58.  There is no such intrusion, though, when an object is simply held in one's hand and the officer on the scene can see that the held object is subject to seizure pursuant to the terms of a warrant.  See United States v. Corleto, 56 F.4th 169, 177-78 (1st Cir. 2022).

This is such a case.  Sheehan points to no evidence that the phone was concealed on his wife's person.  Nor does he point to any evidence that the police patted her down or rummaged through her pockets to obtain it.  Rather — according to Sheehan's own account of events — the police pried the phone from her hand.  What Sheehan has described, then, is a seizure of personal property. See United States v. Jacobsen, 466 U.S. 109, 113 (1984) (defining a seizure of personal property as "some meaningful interference with an individual's possessory interests in that property").  The first search warrant authorized such a seizure, and Sheehan makes no argument that — to the extent his wife was not searched — the

- 13 -

seizure of the phone was not authorized by the warrant.  We therefore uphold the seizure of the phone under the first search warrant.

## IV

This brings us to Sheehan's argument that the second search warrant was unsupported by probable cause.  A finding of probable cause "demands proof sufficient to support a fair probability that a crime has been committed and that evidence of that crime is likely to be found within the objects to be searched."  United States v. Coombs, 857 F.3d 439, 446 (1st Cir. 2017).  When assessing whether such a finding is justified, we look to the totality of the circumstances as they are set forth in the warrant application and its accompanying affidavit, see Illinois v. Gates, 462 U.S. 213, 238 (1983), mindful that "[t]he probable cause standard 'is not a high bar,'" Adams, 971 F.3d at 32 (quoting Kaley v. United States, 571 U.S. 320, 338 (2014)).  That standard requires only "the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" Florida v. Harris, 568 U.S. 237, 244 (2013) (alteration in original) (quoting Gates, 462 U.S. at 238, 231).

Even so, "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."  Gates, 462 U.S. at 239.  Thus, in reviewing the

issuance of a warrant, we look to "ensure that the magistrate had a substantial basis for concluding that probable cause existed." United States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015) (quoting Gates, 462 U.S. at 238-39).

In the court below, Sheehan challenged the second search warrant on the ground that the second affidavit's description of the nude images as seen by the state trooper was not sufficiently specific to establish probable cause for possession of child pornography.  The court rejected that challenge, and Sheehan renews it on appeal.

**A**

Sheehan's argument rests heavily on our decision in United States v. Brunette, in which we held that a law enforcement officer's assessment that images constituted child pornography could not, on its own, support a finding of probable cause sufficient to justify the issuance of a search warrant.  See 256 F.3d at 16-19.  There, the affidavit submitted by the officer stated that images linked to the defendant depicted "a prepubescent boy lasciviously displaying his genitals" — a description that simply parroted the statutory definition of child pornography without providing any detail about the specific images in question. Id. at 17 (quoting United States v. Brunette, 76 F. Supp. 2d 30, 37 (D. Me. 1999)); see 18 U.S.C. § 2256(2)(A)(v).  We determined that such "conclusory statutory language" could not alone

establish probable cause because it left the magistrate without sufficient facts from which to determine independently if the images constituted child pornography. <u>Brunette</u>, 256 F.3d at 19. We also wrote, albeit in dictum, that "[a] judge cannot ordinarily make [a probable cause] determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them." <u>Id.</u> at 18.

Sheehan argues that the second affidavit's description of "pictures consist[ing] of images of prepubescent penises that lacked pubic hair" is equally conclusory and therefore insufficient to ground a showing of probable cause. The government demurs, insisting that the affidavit's description of the images is far more specific than that offered in <u>Brunette</u>.

As a threshold matter, our probable cause inquiry is shaped by the specific crime for which the police sought evidence. The second warrant authorized the search of Sheehan's devices for evidence of possession of child pornography as proscribed by state law — not federal law (as was the case in <u>Brunette</u>). <u>Compare</u> Mass. Gen. Laws ch. 272, § 29C <u>with</u> 18 U.S.C. § 2252A. For present purposes, though, that is a distinction without a difference: although Massachusetts law defines child pornography as conveying a "lewd exhibition" of children (whereas federal law uses the term "lascivious exhibition"), the Massachusetts Supreme Judicial Court (SJC) has held that the state and federal definitions are

- 16 -

synonymous.  See Commonwealth v. Rex, 11 N.E.3d 1060, 1069 n.14

(Mass. 2014).  Thus, case law concerning the sufficiency of a

probable cause showing for possession of child pornography under

federal law may inform our analysis here.

Against this backdrop, we hasten to add that child nudity

alone does not make an image pornographic.  See United States v.

Amirault, 173 F.3d 28, 33 (1st Cir. 1999); Rex, 11 N.E.3d at 1068.

Instead, the images at issue must be "lewd" (or in the federal

context "lascivious") in nature.  See Mass. Gen. Laws ch. 272,

§ 29C; 18 U.S.C. § 2256(2)(A)(v).  In making this determination,

courts consider the following factors:

> 1) whether the focal point of the visual
> depiction is on the child's genitalia or pubic
> area;
>
> 2) whether the setting of the visual depiction
> is sexually suggestive, i.e., in a place or
> pose generally associated with sexual
> activity;
>
> 3) whether the child is depicted in an
> unnatural pose, or in inappropriate attire,
> considering the age of the child;
>
> 4) whether the child is fully or partially
> clothed, or nude;
>
> 5) whether the visual depiction suggests
> sexual coyness or a willingness to engage in
> sexual activity; [and]
>
> 6) whether the visual depiction is intended or
> designed to elicit a sexual response in the
> viewer.

Rex, 11 N.E.3d at 1069 (alteration in original) (quoting United
States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986)); see
Amirault, 173 F.3d at 31-32 (adopting Dost factors in review of
sentencing enhancement); Brunette, 256 F.3d at 18 (same in review
of probable cause determination for warrant).[4]  It follows that
the second affidavit's description of the images on Sheehan's phone
could only have established probable cause by providing enough
detail for the magistrate to determine — in light of those factors
— that the images seen by the state trooper were sufficiently
"lewd," such that they were indicative of child pornography.

We hold that the affidavit failed to cross this
threshold.  Its cursory description that the trooper saw "images
of prepubescent penises that lacked pubic hair" did little more
than signify that the images contained child nudity.  That
description offered no detail as to the focus of the images, how
the children were positioned in the images, or whether the images
were sexually provocative in any other respect.  See Rex, 22 N.E.3d
at 1070-71.  As was the case in Brunette, the affidavit here failed

---

[4] We caution that although we find these factors "generally
relevant" and useful for the guidance they provide, they are
"neither comprehensive nor necessarily applicable in every
situation."  Amirault, 173 F.3d at 32.  A determination of an
image's lasciviousness "will always be case-specific."  Id.; see
United States v. Charriez-Rolón, 923 F.3d 45, 52-53 (1st Cir.
2019).

to provide a "reasonably specific description" from which to assess probable cause.  Brunette, 256 F.3d at 19.

The government asserts, unconvincingly, that the use of the phrase "consisted of" in the warrant application's explanation that "[t]he pictures consisted of images of prepubescent penises that lacked pubic hair" denoted a focus on child genitalia.  This is whistling past the graveyard:  the assertion that the images "consisted of" genitalia means only that the genitalia was a constituent part of the images.  See 3 The Oxford English Dictionary 772 (2d ed. 1989) (defining "consist of" as "to be made up or composed of; to have as its constituent substance or elements").  It says nothing as to the focus of the images.  The affidavit's description of the images thus failed to make the necessary showing of lewdness needed to establish probable cause of possession of child pornography.

**B**

That the description of the images in the second affidavit — when viewed in isolation — failed to establish probable cause does not end our inquiry.  After all, Brunette addressed a narrow circumstance in which the only proof offered to show probable cause was the description of the allegedly pornographic images.  See 256 F.3d at 17.  Where, as here, an affidavit contains additional facts probative of child pornography, we consider the otherwise deficient image description within a broader context to

determine whether the totality of the circumstances, as set forth in the affidavit, justifies a finding of probable cause. See United States v. Chiu, 36 F.4th 294, 298 (1st Cir. 2022).

In that respect, federal law differs from Massachusetts law, which does not factor into the probable cause calculus "other ancillary evidence that may be suggestive of the defendant's state of mind," and instead focuses exclusively on evidence of "what is visually portrayed in the pictures themselves." Rex, 11 N.E.3d at 1068 n.13. Even so, evidence obtained by state officials while investigating a violation of state law is admissible in federal proceedings if it is obtained in conformity with the Constitution. See United States v. Syphers, 426 F.3d 461, 468-69 (1st Cir. 2005). Consequently, we must evaluate whether the second warrant application and affidavit, taken as a whole, comported with the requirements of the Fourth Amendment — regardless of the requirements imposed by state law. See United States v. Sutherland, 929 F.2d 765, 769 (1st Cir. 1991).

The issue, then, is whether those documents provided a sufficient basis from which a neutral magistrate could independently determine if the images that were the object of the search were lewd in nature. To that end, the second affidavit makes only a scant showing. In addition to the cursory description of the images seen by the state trooper, the affidavit states that after a seven-week investigation, Sheehan was arrested for

indecent assault and battery of a child under the age of fourteen, that the police searched his home pursuant to a search warrant, and that the search yielded several electronic devices. Refined to bare essence, the second affidavit offers only two unconnected data points relevant to the probable cause determination: that Sheehan was arrested for indecent assault and battery of a child and that images of child nudity were seen on his phone.

Such a meager showing cannot establish probable cause. It is true that "[p]robable cause does not require either certainty or an unusually high degree of assurance." United States v. Morel, 922 F.3d 1, 11 (1st Cir. 2019) (quoting United States v. Clark, 685 F.3d 72, 76 (1st Cir. 2012)). Still, "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause." Gates, 462 U.S. at 239. The second affidavit provides almost no basis, never mind a substantial basis, from which the magistrate could infer that Sheehan's phone contained child pornography. It does not supply any additional details about the alleged assault or Sheehan's pedophilic tendencies. It does not state that Sheehan used a computer as part of a ploy to prey upon children or that he recorded any of his assaults. It does not even convey facts, or an opinion by the affiant-officer based on training and experience, to suggest that perpetrators of child sexual abuse frequently trade in child pornography. The short of it is that nothing in the affidavit

would permit a magistrate to infer that the assault for which
Sheehan was arrested increased (to the degree required by the
probable cause standard) the likelihood that evidence of child
pornography would be found on his phone. Conjecture or hunch
cannot fill this void.

In each previous case in which we have affirmed a
magistrate's finding of probable cause for possession of child
pornography, the challenged affidavit presented a far more robust
factual showing from which to conclude that the images sought were
child pornography. See Chiu, 36 F.4th at 298-99 (finding probable
cause when affidavit conveyed not only statements that defendant
viewed child pornography, but also evidence of defendant's online
behavior and his technical skill in surreptitiously obtaining
child pornography over internet); United States v. Burdulis, 753
F.3d 255, 260-61 (1st Cir. 2014) (finding that defendant's email
statements offering to send pornographic images to undercover
officer posing as a minor online, as well as defendant's
transmission of nude image of himself to officer, established
probable cause to search for child pornography). And we have ruled
before that an allegation of child sexual assault does not provide
probable cause to search a defendant's computer or electronic
devices in the absence of facts connecting the assault to the
devices in question. See United States v. Cordero-Rosario, 786
F.3d 64, 70-71 (1st Cir. 2015) (holding that probable cause was

not established to search computer for evidence of child molestation when affidavit included nothing more than fact that defendant was under investigation for that crime and allegation of pornography on computer); cf. Joubert, 778 F.3d at 251-53 (upholding search of electronic devices for evidence of child molestation when affidavit stated that defendant photographed and video-recorded his victims).

        None of this is to say that evidence of child molestation or sexual assault cannot in some instances be probative of possession of child pornography. Such evidence may support a finding of probable cause when the assault is presented within a context that makes the possession of child pornography more likely. See Syphers, 426 F.3d at 466 (considering in probable cause analysis for possession of child pornography allegation that defendant photographed and fondled minor girls, sexually explicit pictures found in his home that featured minor girls, and evidence that he accessed website trafficking in pornographic videos featuring the same). But the affidavit must present that context and cannot rely on the magistrate to presume a connection between an assault charge and the possession of child pornography. See United States v. Falso, 544 F.3d 110, 120-22 (2d Cir. 2008) (holding that allegation that defendant attempted to access child pornography website, combined with prior conviction for child sexual abuse, was insufficient to show probable cause for search

when no association between those two facts was "stated or supported"); see also United States v. Perkins, 850 F.3d 1109, 1119-21 (9th Cir. 2017).

The bottom line is that a cursory description of images of child nudity, coupled with the unconnected fact that the defendant was charged with indecent assault and battery of a child, does not, without further elaboration and factual support, suffice to show probable cause of possession of child pornography. See United States v. Pavulak, 700 F.3d 651, 663 (3d Cir. 2012); United States v. Doyle, 650 F.3d 460, 472-74 (4th Cir. 2011). So it is here — in the absence of additional proof establishing some relation between those two facts, the magistrate was left without any substantial basis from which to infer probable cause.

## C

The government strives to persuade us that we should expand the universe of facts available to the magistrate by considering not only the information provided in the second affidavit but also the "additional contextual and investigatory details" provided in the first affidavit. We are not convinced. Following the government's lead would offend the rule that we must limit our assessment of probable cause to "information provided in the four corners of the affidavit supporting the warrant application." Morel, 922 F.3d at 12 n.10 (quoting United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999)).

The government tries to avoid this rule. In its view, the second affidavit incorporated the first, such that the facts in the first affidavit "must be considered as well" in the probable cause determination. As we explain below, this "incorporation" theory is woven entirely out of gossamer strands of speculation and surmise and — as such — does not withstand scrutiny.

**1**

To begin, the government suggests that Sheehan has waived the right to argue against its incorporation theory. In advancing this suggestion, the government submits that the district court held the first affidavit to be incorporated into the second affidavit and that Sheehan waived any right to contest that incorporation by failing to make the argument in his opening brief. We reject the government's characterization of the district court's order and, thus, reject its argument.

The district court's order stated — in its survey of the facts of the case — that "Puricelli did not specifically incorporate by reference her first affidavit." Sheehan, 2020 WL 429447, at *2 n.3. Even so, the court stated that it was reasonable to infer "that the second [magistrate] would have been aware of the earlier warrant issued by his court" because Officer Puricelli had "four times listed the docket number of the first warrant" in the second affidavit; because she had "disclosed that the first application involved the seizure of the same items as named in the

second [application]"; and because "the second warrant was given
the next successive docket number to the first." Id.  It is
unclear, though, how such an inference — even if drawn — could be
said to come from within the four corners of the affidavit.  And
in any event, the district court upheld the second warrant based
only on the second affidavit's description of the images, without
reference to any facts gleaned from the first affidavit.  See id.
at *5.  Consequently, it was not incumbent upon Sheehan to
challenge an incorporation theory that the government has teased
from an off-hand, and ultimately superfluous, footnote in the
district court's order.  Cf. United States v. Jurado-Nazario, 979
F.3d 60, 62 (1st Cir. 2020) (explaining that an argument is not
waived when party "brought the issue to the court's attention 'at
the earliest point when it was logical to do so'" (quoting Holmes
v. Spencer, 685 F.3d 51, 66 (1st Cir. 2012))).

### 2

This brings us to the merits of the government's
argument.  The government concedes that the incorporation it
envisions was not done explicitly.  It nonetheless argues that the
second affidavit implicitly incorporated the first for the reasons
articulated by the district court:  that it referred to the first
warrant by its docket number, that the electronic devices to be
searched had been seized pursuant to that warrant, and that the
second warrant issued with a docket number successive to the first.

From this concatenation of circumstances, we can assume, the government insists, that the assistant clerk who authorized the second warrant was aware of the facts contained in the first affidavit (even though the first affidavit was not part of the application for the second warrant).

The case law that it offers in support of this theory cannot carry the weight that the government loads upon it. As an initial matter, the line of cases cited by the government concerns whether incorporated materials can cure defects in the particularity or breadth of a search warrant. Those cases do not directly address the incorporation of materials into a warrant application.

Notwithstanding that distinction, we are aware of no case — and the government has identified none — holding that the mere mention of a document external to an affidavit (by docket number or otherwise) implicitly incorporates the contents of that document. Although the government cites cases signaling that no specific verbiage is required for incorporation, those cases still require language of some kind that expressly directs the reader's attention to the purportedly incorporated materials. See, e.g., United States v. Lazar, 604 F.3d 230, 236 (6th Cir. 2010) (holding that attachment's reference to "the below listed patients" sufficed to incorporate patient list that accompanied warrant application); United States v. SDI Future Health Inc., 568 F.3d

684, 700 (9th Cir. 2009) (upholding incorporation when warrant used "suitable words of reference" that pointed explicitly to incorporated material).  There is certainly no support in the case law for the proposition that merely alluding to a document, without more, can alone suffice to incorporate that document by reference.

The government further contends that incorporated materials need not physically accompany a warrant application that is presented to a magistrate.  But the cases that the government cites in this regard address the separate issue of whether incorporated materials must accompany a warrant during the execution of a search.  See, e.g., Baranski v. United States, 515 F.3d 857, 860-61 (8th Cir. 2008); United States v. Hurwitz, 459 F.3d 463, 471-72 (4th Cir. 2006).  Nothing in those decisions suggests that a magistrate — when determining whether sufficient probable cause exists to authorize a warrant — may consider unattached and external materials to which an affiant has only obliquely alluded.  What is more, the relevant case law in this circuit holds that "[a]n affidavit may be referred to for purposes of providing particularity if the affidavit accompanies the warrant, and the warrant uses suitable words of reference which incorporate the affidavit." Moss, 936 F.3d at 59 n.9 (alteration and emphasis in original) (quoting United States v. Roche, 614 F.2d 6, 8 (1st Cir. 1980)); see United States v. Klein, 565 F.2d 183, 186 n.3 (1st Cir. 1977).  Under this established circuit

precedent, incorporation would require both suitable words to that
effect and the attachment of the affidavit.  See generally United
States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018) (explaining
law-of-the-circuit doctrine); United States v. Wogan, 938 F.2d
1446, 1449 (1st Cir. 1991) (same).

Those requirements were not satisfied here.  Although
the second affidavit refers in passing to the first warrant by
docket number, it never specifically references the first
affidavit.  That silence speaks volumes:  it stands in stark
contrast to the express incorporation by reference of both
affidavits into their respective search warrant applications,
demonstrating that Officer Puricelli was aware of how to
incorporate documents properly into a warrant application.  And
there is nothing in the record to suggest that the first affidavit
was attached to the second warrant application when it was
presented to the magistrate.

Finally, neither the second affidavit's reference to the
seizure of the items during the first search nor the fact that the
second search warrant issued with a docket number successive to
the first has much to do with the issue of incorporation.  Together
those facts might, at most, suggest that Officer Puricelli
requested the second search warrant within the context of a larger
investigation.  That suggestion, however, would be superfluous:
Officer Puricelli stated as much in the second affidavit.  She

explained that the affidavit did not include every fact that she knew about the investigation but, rather, "only those facts [she] believe[d] [were] sufficient to establish the requisite probable cause for a search warrant." It defies logic to discount such an express statement directing the magistrate to the probable cause showing made within the affidavit itself in favor of a theory of implicit incorporation based on a web of attenuated inferences. On these facts, there is simply no basis for concluding that the second affidavit incorporated the first.

### D

The fatal deficiencies of the second affidavit were therefore left unremedied, and the second search warrant issued without the required showing of probable cause.

### V

When a warrant issues without probable cause, the evidence obtained from the resultant search is ordinarily suppressed. See Pimentel, 26 F.4th at 90. Suppression is inappropriate, though, if the officer who conducted the search acted in reliance upon the defective warrant and that reliance was objectively reasonable. See Cordero-Rosario, 786 F.3d at 72. This exception, familiarly known as the "good-faith exception," is grounded in the principle that "the purpose of suppression is to deter police misconduct, and when law enforcement officers have obtained a search warrant in good faith and acted within its scope,

there is 'nothing to deter.'"  Coombs, 857 F.3d at 446 (citation omitted) (quoting United States v. Leon, 468 U.S. 897, 921 (1984)).

Notwithstanding the salutary considerations that have spawned it, the good-faith exception is not a panacea for every invalid warrant.  Importantly, an officer cannot be said to have relied on a warrant in good faith when the supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).  That a magistrate approved the warrant despite its obvious deficiencies does not mitigate the unreasonableness of the officer's conduct.  See Vigeant, 176 F.3d at 572; see also Malley v. Briggs, 475 U.S. 335, 346 n.9 (1986) ("The officer . . . cannot excuse [her] own default by pointing to the greater incompetence of the magistrate.").  And an officer's reliance on a magistrate's approval of a facially deficient warrant is especially unreasonable when those "deficiencies arise from the failure of the [officer] conducting the search to provide the required supporting information in the affidavit."  Cordero-Rosario, 786 F.3d at 72-73; cf. Groh v. Ramírez, 540 U.S. 551, 563-65 (2004) ("[B]ecause petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid.").

In such circumstances, suppression "remains an appropriate remedy." Leon, 468 U.S. at 923.

"The government bears the burden of showing that its officers acted with objective good faith." Brunette, 256 F.3d at 17. In assessing the government's good-faith arguments, "we evaluate all of the attendant circumstances at the time of the warrant application and its execution." Id. Here, the government has done little more than to state, in a conclusory fashion, that there were sufficient facts indicative of probable cause such that it was not objectively unreasonable for the officers to have relied on the second search warrant. But the record, fairly read, belies the government's optimistic characterization.

For a start, the second affidavit was "so lacking in indicia of probable cause" that any reliance upon it was objectively unreasonable. Leon, 468 U.S. at 923. As we already have discussed, see supra Part IV(B), the affidavit encompassed little more than a cursory description of the images seen on Sheehan's phone and the bare fact of his assault — a showing so bereft of factual support that no reasonable officer would have thought the warrant valid. See Doyle, 650 F.3d at 470-76 (holding that evidence of molestation and possession of nude images not enough to engender good-faith reliance that warrant for child pornography was supported by sufficient probable cause); United States v. Hodson, 543 F.3d 286, 293 (6th Cir. 2008) (finding good-

faith exception did not apply when evidence of only child molestation was used to obtain search warrant for child pornography).  And even though a magistrate ultimately approved the warrant application, Officer Puricelli herself was responsible for the warrant's defects:  she had available a trove of other information that she could have included in the warrant application but which she chose to withhold.  Her decision to submit a bare bones affidavit and keep relevant data points to herself undercuts any suggestion that she was justified in relying on the magistrate's assurances of the warrant's legality.  See Cordero-Rosario, 786 F.3d at 72-73.

When we have upheld searches for child pornography under the good-faith exception, we have done so based on affidavits that exhibited much more specificity and diligence than the second affidavit here.  See United States v. Robinson, 359 F.3d 66, 67-70 (1st Cir. 2004) (upholding warrant on good-faith grounds when affidavit included evidence that defendant had surreptitiously photographed adolescents, viewed pornography on his computer around minors, and asked a child to pose provocatively for him); see also Syphers, 426 F.3d at 466-68.  So, too, other circuits — in applying the good-faith exception — have done so only when the affidavits at issue contained detailed information about the history of the investigation and/or the defendant's pedophilic predilections.  See, e.g., United States v. Caesar, 2 F.4th 160,

174 (3d Cir. 2021) (holding good-faith exception applicable when affidavit described receipt of tip from National Center for Missing and Exploited Children, defendant's suspicious online behavior seeking pictures of children in underwear, and evidence of sexual abuse of two children); United States v. Edwards, 813 F.3d 953, 971-73 (10th Cir. 2015) (same when affidavit stated that defendant had posted hundreds of images of child erotica, described some of those images in detail, contained defendant's comments related to those postings, and provided affiant-officer's opinion, based on training and experience, that purveyors of child erotica also possess child pornography).  The affidavit prepared by Officer Puricelli in connection with the application for the second search warrant is conspicuously lacking in this level of detail.

Nor can it be said — even considering all the attendant circumstances — that Officer Puricelli held an objectively reasonable belief that her first affidavit was incorporated into the application for the second search warrant.  To be sure, the second affidavit made clear that the devices to be searched had been seized during a previous search of Sheehan's home and that a prior warrant application concerning those items had been submitted to the Hingham District Court.  But those facts — whether viewed singly or in the ensemble — do not form the basis for a reasonable belief that the first affidavit was incorporated into

the second when considered within the context of the record as a whole.

The record shows that the second affidavit stated that it did not contain all the facts that the police had uncovered during their investigation but, rather, included only those facts that Officer Puricelli believed were "sufficient to establish the requisite probable cause for a search warrant." Giving due consideration to that statement, it would be wholly unreasonable for an officer to presume that the magistrate — in making the probable cause determination — was to incorporate sub silentio facts that had been expressly excluded from the affidavit. We note, as well, that each warrant application explicitly incorporated its supporting affidavit by reference. Seen in this light, it strains credulity to suggest that a reasonable officer would have intended to incorporate additional materials without using any suitable language, especially when there is no evidence that those materials were ever submitted to the assistant clerk as part of the warrant application.[5] And the final straw is that Officer Puricelli noted on the second warrant application that her

_____

[5] For this reason, the case at hand is easily distinguished from those cases cited by our dissenting colleague, in which officers were deemed to have had a good-faith basis for believing in the incorporation of an affidavit that was attached to the warrant application and to which the warrant application in some way referred. See United States v. Tracey, 597 F.3d 140, 152-53 (3d Cir. 2010); United States v. Hamilton, 591 F.3d 1017, 1024-27 (8th Cir. 2010).

previous application for the seizure of the devices had not made out probable cause for the crime of child pornography. A reasonable officer, acknowledging that fact, would have understood the need for the second warrant application to establish probable cause on its own.

Our dissenting colleague seems to suggest that because the first warrant and its accompanying application had been impounded, Officer Puricelli could reasonably have believed that it was inappropriate either to attach or to directly refer to those documents (even while expecting the assistant clerk to understand that those documents were implicitly incorporated by reference). But any such belief would surely have been unreasonable, given the Supreme Court's decision in <u>Groh</u> v. <u>Ramírez</u>, in which reliance on a facially deficient warrant that failed either to incorporate or to attach a sealed affidavit (which would have cured the warrant's deficiencies) was deemed objectively unreasonable. 540 U.S. at 555, 563-65. For purposes of a Fourth Amendment analysis, there is no material difference between the impounded warrant here and the sealed affidavit in <u>Groh</u>, see <u>Pixley</u> v. <u>Commonwealth</u>, 906 N.E.2d 320, 328 n.12 (Mass. 2009), and a reasonable officer would have known that to rely on the impounded warrant without incorporating it properly was contrary to law.

Relatedly, we add that the record does not support the notion that Officer Puricelli may have entertained a reasonable

belief that the assistant clerk was somehow apprised of the details of Sheehan's case such that a proper showing of probable cause was unnecessary.  Although some personnel at the clerk's office of the Hingham District Court may have been familiar with Sheehan's case due to the first warrant application and the ensuing motion to impound, each application or motion in this case was handled by a different officer of that court.  Short of rank speculation, there is simply no basis from which to presume that the assistant clerk who authorized the second search warrant was aware of the investigatory information contained in the first affidavit.

We understand that the police have demanding jobs.  The good-faith exception is designed to cut police officers some slack when they get close calls wrong.  See Coombs, 857 F.3d at 446.  The case at hand, however, does not fit that mold:  it exhibits a failure in what is a core competency of a police officer — presenting sufficient probable cause of a crime to a neutral magistrate to justify the issuance of a warrant.  Under the circumstances of this case, the good-faith exception does not apply, and suppression of the evidence is required.  See Leon, 468 U.S. at 923.

## VI

The expansion of the good-faith exception in Herring v. United States, 555 U.S. 135 (2009), to cases involving police negligence does not alter our analysis.  In Herring, the Supreme

Court declined to apply the exclusionary rule to evidence obtained by police after they effected an arrest pursuant to a facially valid warrant, which — unbeknownst to them — had been recalled. See id. at 138, 147-48. The Court explained that "when police mistakes are the result of negligence . . . , rather than systemic error or reckless disregard of constitutional requirements," the "marginal deterrence" gained by the exclusionary rule fails to justify the "harm to the justice system" wrought by letting a criminal go free. Id. at 147-48. "To trigger the exclusionary rule," Chief Justice Roberts wrote, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. at 144. Because the police conduct in that case had not been "deliberate, reckless, or grossly negligent," or the result of "recurring or systemic negligence," the Court declined to apply the exclusionary rule. Id.; see Davis v. United States, 564 U.S. 229, 238 (2011) (stating that deterrent effect of exclusionary rule is attenuated when police error stems from isolated negligence).

        The Herring Court took pains to anchor its holding to precedent. See 555 U.S. at 144-46. Far from breaking new ground, Herring applied the rationale elaborated in Leon: that the exclusionary rule should not be invoked when the rule's social costs outweigh the benefits derived from deterring police

misconduct.  <u>See</u> <u>Herring</u>, 555 U.S. at 147-48; <u>see also</u> <u>Leon</u>, 468
U.S. at 909-10.  Nothing in <u>Herring</u> suggests an expansion of the
good-faith exception to circumstances that <u>Leon</u> previously held to
be beyond the pale — such as the issuance of a warrant based on an
affidavit "so lacking in indicia of probable cause" as to render
any reliance on it "entirely unreasonable."  <u>Leon</u>, 468 U.S. at
923.  That is the situation presented here.

        We do not read <u>Herring</u> to require an additional or
individualized assessment of the deliberateness and culpability of
police conduct in such circumstances.  Submitting a warrant
application so deficient in probable cause such that no officer
could reasonably rely upon it is exactly the kind of police conduct
the exclusionary rule is meant to deter.  <u>See</u> <u>id.</u> at 926
("[S]uppression is appropriate only if the officers were dishonest
or reckless in preparing their affidavit or could not have harbored
an objectively reasonable belief in the existence of probable
cause."); <u>United States</u> v. <u>Fuccillo</u>, 808 F.2d 173, 178 (1st Cir.
1987) (holding that failure to furnish affidavit with "information
which was known or easily accessible" to police reflected reckless
conduct to which good-faith exception did not apply).  To hold
otherwise would expand the good-faith exception to swallow, in a
single gulp, the warrant requirement itself.  That cannot be the

law.  If the good-faith exception is to have any limits, it cannot encompass the police conduct that occurred here.[6]

### VII

We need go no further.  For the reasons elucidated above, the district court's denial of the motion to suppress is <u>affirmed</u> in part and <u>reversed</u> in part; the defendant's conviction and his conditional guilty plea are <u>vacated</u>; and the case is <u>remanded</u> to the district court for further proceedings consistent with this opinion.

— **Dissenting Opinion Follows** —

---

[6] Our dissenting colleague contends that the exclusionary rule is inappropriate here because the first warrant supplied sufficient probable cause to search Sheehan's electronic devices in their entirety, rendering the second warrant altogether unnecessary.  In support, she relies on the decision in <u>United States</u> v. <u>Monell</u>, 801 F.3d 34 (1st Cir. 2015), but that reliance is misplaced.  <u>Monell</u> itself distinguished <u>Cordero-Rosario</u> because, although the affidavit at issue in <u>Cordero-Rosario</u> "suffered from 'glaring deficiencies,'" the affidavit at issue in <u>Monell</u> "provide[d] probable cause to believe that a crime involving gun use had occurred, and that some evidence related to that crime was in [the] apartment" that was searched.  801 F.3d at 42 (quoting <u>Cordero-Rosario</u>, 786 F.3d at 71-72).  As we have explained, the second warrant issued in this case was supported by an affidavit that was insufficient for the same reasons that the affidavit in <u>Cordero-Rosario</u> was insufficient.  Thus, <u>Monell</u> — on its own terms — is of no help to the government's argument that we should uphold the search conducted under the second affidavit on good-faith grounds.  And to the extent that our dissenting colleague suggests that the first warrant, standing alone, provided an independently sufficient basis for the government to search Sheehan's electronic devices in a way that would have uncovered the images at issue, the government has made no such argument to us.

**LYNCH**, **Circuit Judge**, **dissenting**.    With respect, I regret that the majority has improperly rejected the good-faith exception to the exclusionary rule, which clearly applies here. See United States v. Leon, 468 U.S. 897, 922-25 (1984); see also Davis v. United States, 564 U.S. 229, 236-41 (2011); Herring v. United States, 555 U.S. 135, 139-48 (2009).  The majority errs in concluding that the law of incorporation of earlier materials into the second affidavit was so clear that the prophylaxis of suppression is justified.  And, regardless of whether the first warrant was incorporated, exclusion is not justified on the cost-benefit analysis described in Davis and Herring.  Under binding Supreme Court case law and First Circuit precedent, we are required to affirm the district court's denial of the motion to suppress.  I dissent and would, as required by federal law, show greater respect for the actions of the state judicial and law enforcement officials.

The majority errs in holding that the second warrant, dated August 29, 2018, was "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" such that the good-faith exception does not apply.  Leon, 468 U.S. at 923 (quoting Brown v. Illinois, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)).  In addition to recounting that Sheehan had been arrested for indecent assault and battery of a child under the age of

fourteen and that the Computer Crimes Unit officer found "images of prepubescent penises that lacked pubic hair" on Sheehan's iPhone, this affidavit referred four times to the first warrant by its docket number.  The affidavit also made clear that it concerned items that had been seized pursuant to the first warrant.  And the second warrant application was given the very next docket number after the first warrant.  Even if one assumes arguendo that the first warrant needed to be incorporated into the affidavit, a dubious proposition, this first warrant supplied highly probative information, such as the fact that a witness reported that Sheehan had access to a young boy's "texts, pictures and videos" and "sp[ied]" on him.  And, as I describe later, suppression would not be justified here regardless of whether the first warrant was incorporated.

The majority discounts other facts about the second warrant application that bear on the incorporation inquiry.  The Massachusetts state court that issued the warrant is the Hingham District Court.  It is a small court.  There can be no doubt that the judicial officer who authorized the second warrant was aware of the first warrant.  And between the issuance of the first warrant and the application for the second warrant, the court had impounded the first warrant, affidavit, and return.[7]  This order

---

[7]    "The terms 'impounded' and 'sealed' are closely related . . . . [A]n order of impoundment prevents the public, but

further explains why the second affidavit referred to the first warrant by docket number rather than including details from this earlier warrant.[8]

The majority's reliance on Groh v. Ramírez, 540 U.S. 551 (2004), to argue that a reasonable officer could not have believed that the second warrant application incorporated the first warrant and warrant application is misplaced for multiple reasons. First, Groh addressed the very different question whether a warrant that completely failed to identify the property to be seized was valid. Id. at 554. This violated the particularity requirement expressly set forth in the Fourth Amendment. Id. at 557. Here, there is no dispute that the second warrant application and affidavit described the property to be seized with particularity. There was no "glaring deficiency" in the warrant application akin to that at issue in Groh. Id. at 564.

Further, Groh did not turn on arguments about documents' sealed status, and the Court did not make new law on this point. The Court declined to "explore the matter of incorporation" at any length because it accepted the premise that "the warrant did not

_____

not the parties, from gaining access to impounded material, unless otherwise ordered by the court." Pixley v. Commonwealth, 906 N.E.2d 320, 328 n.12 (Mass. 2009).

[8]    In my view, the state court got it right when it issued the second warrant. That is so even before the good-faith exception is applied.

incorporate other [sealed] documents by reference." Id. at 558;
see id. at 554-55, 557-58. Groh did not decide whether the fact
that a document is sealed or impounded bears on the reasonableness
of an officer's belief as to the sufficiency of efforts to
incorporate that document. See id. at 557-58.

Two final points on Groh bear note. To the extent the
decision mentioned the Leon good-faith exception, that reference
predates the Court's expansion of the good-faith doctrine in
Herring and Davis. And Groh itself was the product of a divided
Court, with Chief Justice Rehnquist and Justices Scalia, Kennedy,
and Thomas all in dissent.

It was reasonable for the officers to believe that the
many indicia of incorporation, in combination with the other facts
in the second warrant, sufficed to show probable cause. See United
States v. Tracey, 597 F.3d 140, 152 (3d Cir. 2010) ("Even though
we conclude these efforts [to expressly incorporate an affidavit]
were not legally sufficient . . . it would be reasonable for an
officer in [this officer's] position to believe the affidavit was
properly incorporated and, therefore, the warrant was valid.");
United States v. Hamilton, 591 F.3d 1017, 1029 (8th Cir. 2010)
(concluding that it was reasonable for an officer to rely on a
warrant "even if [the court] were now to conclude that the words
of incorporation [used in the warrant] were less than clear"). It
is clear that there is no overcoming of the principle announced in

Leon.  See 468 U.S. at 922 ("'[A] warrant issued by a magistrate
normally suffices to establish' that a law enforcement officer has
'acted in good faith in conducting the search.'" (quoting United
States v. Ross, 456 U.S. 798, 823 n.32 (1982))).

        The majority and I also disagree about the contours of
the Leon good-faith exception after Davis and Herring.  As stated,
my view is that the majority's holding fails even the Leon test.
It certainly fails under the doctrinal changes worked by Davis and
Herring, which further restricted the use of the exclusionary rule.
See, e.g., United States v. Caesar, 2 F.4th 160, 169 (3d Cir. 2021)
(describing, in a warrant-based search case, Davis and Herring as
"further refine[ments] to the [Leon] good faith exception, placing
the culpability of the officer's misconduct at the center of the
deterrence analysis" and stating that "[i]t could be said that
these [cases] . . . further narrowed the scope of the exclusionary
rule"); R. Re, The Due Process Exclusionary Rule, 127 Harv. L.
Rev. 1885, 1887 (2014) (describing Herring as providing "the
doctrinal basis for radically curtailing the circumstances in
which the Fourth Amendment exclusionary rule might apply").

        Herring instructs that "[t]he fact that a Fourth
Amendment violation occurred . . . does not necessarily mean that
the exclusionary rule applies" and that the exclusionary rule
applies only where "the benefits of deterrence . . . outweigh the

costs" of applying the rule.    555 U.S. at 140-41.[9]    "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."    Id. at 144.    Thus, exclusion is typically proper only where officers engage in "deliberate, reckless, or grossly negligent conduct," or, "in some circumstances," where there is "recurring or systemic negligence."    Id.    Applying these principles, the Herring Court held that a negligent recordkeeping error that led an officer to make an arrest based on a recalled warrant should not result in exclusion of the evidence found during the arrest.    See id. at 136-38, 147-48.

The Supreme Court reiterated this cost-benefit analysis two years later in Davis.    Davis emphasized that deterrence is "the sole purpose of the exclusionary rule" and rejected the argument that "facilitating the overruling of precedent" was a relevant consideration.    564 U.S. at 246.

Our circuit has repeatedly relied on Davis and Herring to conclude that the good-faith exception applies where a police mistake amounts to isolated negligence rather than intentional, reckless, or grossly negligent misconduct.    See United States v.

---

[9]    Herring involved a defendant who was "no stranger to law enforcement."    555 U.S. at 137.    Similarly, Sheehan had been under investigation for seven weeks before officers obtained an arrest warrant.

Monell, 801 F.3d 34, 41 (1st Cir. 2015) (assuming warrant was invalid but concluding that, under Herring, "the nature, effect, and cause of this particular type of . . . invalidity are such as to render the exclusionary rule inapplicable"); United States v. Echevarría-Ríos, 746 F.3d 39, 40-41 (1st Cir. 2014) (finding good-faith exception applicable where defendant failed to show that officers engaged in intentional, reckless, or grossly negligent misconduct in relying on procedurally defective warrant to arrest him); see also United States v. Cruz-Ramos, 987 F.3d 27, 42 n.9 (1st Cir. 2021) (concluding that defendant waived applicability of exclusionary rule where he did not engage in Herring cost-benefit weighing analysis); United States v. Thomas, 736 F.3d 54, 60, 66 (1st Cir. 2013) (concluding that social costs of excluding DNA sample obtained in earlier investigation would outweigh deterrent value).

Here, there can be no possible deterrent effect to be accomplished by excluding the evidence on the cost-benefit analysis described in Davis and Herring. See United States v. Szczerba, 897 F.3d 929, 939 (8th Cir. 2018) (applying good-faith exception where officer "acted negligently in drafting the warrant . . . [and] should have . . . ensured that the supporting affidavit was incorporated into the warrant," but her "conduct certainly did not reflect the type of deliberate, reckless, or

grossly negligent disregard for the Fourth Amendment that the exclusionary rule can effectively deter").

That there could be no possible deterrent effect is underscored by the fact that the officers here need not have taken the cautious measure of applying for a second search warrant to search the devices seized under the first warrant. The first warrant authorized officers to search Sheehan's devices for "computer data files or cellular / smart phone data files" in relation to the four crimes set forth in that warrant: impersonation of a police officer, witness intimidation, unauthorized access to a computer system, and identity fraud. See Mass. Gen. Laws ch. 266, §§ 37E, 120F; id. ch. 268, §§ 13B, 33. This situation is thus similar to Monell, where we applied the good-faith exception to a labeling error in an affidavit because, if this error had not occurred, "there still would have been a search" on a different basis, "that search would have been valid," and "precisely that evidence which was found in the search challenged here would have been found in [the] valid search." 801 F.3d at 41. The majority attempts to distinguish Monell by contending that its rule applies only when the affidavit at issue is not "glaring[ly] deficien[t]." (Quoting id. at 42.) Even assuming the validity of that premise, here -- for all the reasons

previously stated -- the second affidavit is not "glaringly deficient."

With the greatest respect for my colleagues, I dissent.