NO. 21-1983

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
APPELLEE

V.

DEREK SHEEHAN,
DEFENDANT-APPELLANT

ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOINT APPENDIX

*Counsel for Derek Sheehan*:

ROBERT L. SHEKETOFF, ESQ.
LAW OFFICE OF ROBERT L. SHEKETOFF
1 MCKINLEY SQUARE
BOSTON, MASSACHUSETTS 02109
(617) 367-3449

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

DONALD C. LOCKHART
ASSISTANT U.S. ATTORNEY
JOHN J. MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3193

No. 21-1983

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

UNITED STATES OF AMERICA,
APPELLEE

v.

DEREK SHEEHAN,
DEFENDANT-APPELLANT

_____

JOINT APPENDIX

_____

## Table of Contents

1.     Docket sheet............................................................................JA: 001

2.     Indictment [ECF 13] .............................................................JA: 015

3.     Government's response to motion to suppress [ECF 66].....................JA: 020

4.     Transcript of 9/20/2019 suppression hearing .......................................JA: 047

5.     District court's order regarding further briefing on motion
to suppress [ECF 73] ................................................................JA: 056

6.     Transcript of 11/15/2019 suppression hearing [ECF 146] ..................JA: 059

7.     Defendant's motion to file additional arguments [ECF 115]...............JA: 090

8.     Defendant's affidavit [ECF 117] .........................................................JA: 097

9.     Government's opposition to defendant's motion
to reconsider [ECF 119] ........................................................JA: 099

10.  District court's electronic order denying motions to suppress, to file additional arguments, and for reconsideration [ECF 120] ...................JA: 102

11.  Defendant's notice of appeal [ECF 136] ..............................................JA: 103

CM/ECF - USDC Massachusetts - Version 1.6.3 as of 3/1/2022                    Page 1 of 14

APPEAL,VICTIM

# United States District Court
## District of Massachusetts (Boston)
### CRIMINAL DOCKET FOR CASE #: 1:18-cr-10391-RGS-1

Case title: USA v. Sheehan                          Date Filed: 10/25/2018

Magistrate judge case number: 1:18-mj-06273-MPK      Date Terminated: 11/30/2021

Assigned to: Judge Richard G. Stearns

Appeals court case number: 21-1983
USCA - First Circuit

**Defendant (1)**

**Derek Sheehan**                   represented by   **William Keefe**
*TERMINATED: 11/30/2021*                             Law Office of William Keefe
                                                     801 C Tremont Street
                                                     Boston, MA 02118
                                                     617-947-8483
                                                     Fax: 617-445-8002
                                                     Email: wkeefelaw@gmail.com
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

**Pending Counts**                                   **Disposition**

18:2251(a) and (e) -- SEXUAL                         540 months in the custody of the
EXPLOITATION OF CHILDREN                             Bureau of Prisons; 5 years supervised
(1-3)                                                release; $300 special assessment

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**                                **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                       **Disposition**

# JA: 1

18:2551(a) and (e)- Sexual exploitation
of children

---

**Plaintiff**

**USA**                              represented by   **Anne Paruti**
                                                      United States Attorney's Office MA
                                                      1 Courthouse Way
                                                      Suite 9200
                                                      Boston, MA 02210
                                                      (617) 748-3310
                                                      Email: anne.paruti.lohnes@usdoj.gov
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*
                                                      *Designation: Assistant US Attorney*

                                                      **Charles Dell'Anno**
                                                      United States Attorney's Office MA
                                                      1 Courthouse Way
                                                      Suite 9200
                                                      Boston, MA 02210
                                                      617-748-3161
                                                      Email: charles.dell'anno@usdoj.gov
                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/19/2018 | 2 | ELECTRONIC NOTICE of Case Assignment as to Derek Sheehan; Magistrate Judge M. Page Kelley assigned to case. (Danieli, Chris) [1:18-mj-06273-MPK] (Entered: 09/19/2018) |
| 09/19/2018 | 3 | COMPLAINT as to Derek Sheehan (1). (Attachments: # 1 Redacted affidavit, (2)Sealed Affidavit) (Belmont, Kellyann). (Additional attachment(s) added on 9/19/2018: # 3 Sealed Affidavit) (Belmont, Kellyann). (Additional attachment (s) added on 9/24/2018: # 3 JS45) (Belmont, Kellyann). [1:18-mj-06273-MPK] (Entered: 09/19/2018) |
| 09/25/2018 | 6 | ELECTRONIC NOTICE OF HEARING for Initial Appearance as to Derek Sheehan. Initial Appearance set for 10/1/2018 02:00 PM in Courtroom 24 before Magistrate Judge M. Page Kelley. (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 09/25/2018) |
| 09/25/2018 | 7 | Writ of Habeas Corpus ad Prosequendum Issued as to Derek Sheehan for 10/1/2018 (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 09/25/2018) |
| 10/01/2018 | 8 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Initial Appearance as to Derek Sheehan held on 10/1/2018. Court goes over the proceedings and advises the defendant of his rights. Court has colloquy with defendant about whether or not he understands his right and the charges pending against him. Attorney Keefe submits a notice of appearance. |

**JA: 2**

| | | Government states charges and moves for detention and continuance. Defendant is currently held pretrial in state custody. Defendant consents to a voluntary order of detention without prejudice and waives a probable cause hearing. Court has colloquy with defendant about the waivers and finds that they are knowing and voluntary. Order to issue. Defendant remanded to state custody. (Attorneys present: Anne Paruti for the government and William Keefe for the defendant and Gina Affsa for Probation. )Court Reporter Name and Contact or digital recording information: Digital Recording. To order a copy of this Digital Recording, please go to https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio-recordings . For a transcript of this proceeding, contact Deborah Scalfani bycalfani@mad.uscourts.gov. (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 10/01/2018) |
|---|---|---|
| 10/01/2018 | 9 | WAIVER of Preliminary Hearing by Derek Sheehan (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 10/02/2018) |
| 10/01/2018 | 10 | NOTICE OF ATTORNEY APPEARANCE: William Keefe appearing for Derek Sheehan. Type of Appearance: Retained. (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 10/02/2018) |
| 10/01/2018 | 11 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON DETENTION MOTION as to Derek Sheehan (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 10/02/2018) |
| 10/23/2018 | 12 | Arrest Warrant Returned Executed on 10/1/2018 as to Derek Sheehan. (Belmont, Kellyann) [1:18-mj-06273-MPK] (Entered: 10/24/2018) |
| 10/25/2018 | 13 | INDICTMENT as to Derek Sheehan (1) count(s) 1-3. (Attachments: # 1 JS45) (Geraldino-Karasek, Clarilde) (Entered: 10/25/2018) |
| 10/25/2018 | 14 | ELECTRONIC NOTICE of Case Assignment as to Derek Sheehan; Judge Richard G. Stearns assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Finn, Mary) (Entered: 10/25/2018) |
| 10/25/2018 | 15 | Judge Richard G. Stearns: ELECTRONIC ORDER entered. Order Referring Case to Magistrate Judge M. Page Kelley Reason for referral: Full Pretrial Proceedings as to Derek Sheehan (Geraldino-Karasek, Clarilde) (Entered: 10/25/2018) |
| 10/30/2018 | 16 | ELECTRONIC NOTICE OF HEARING as to Derek Sheehan Arraignment set for 11/1/2018 03:00 PM in Courtroom 24 before Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 10/30/2018) |
| 10/30/2018 | 17 | Writ of Habeas Corpus ad Prosequendum Issued as to Derek Sheehan for 11/1/2018 (Belmont, Kellyann) (Entered: 10/30/2018) |
| 11/01/2018 | 18 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Arraignment as to Derek Sheehan (1) Count 1-3 held on 11/1/2018. Defendant waives formal reading of indictment. Government states charges and maximum penalties. Court has colloquy with defendant about whether or |

JA: 3

| | | not he understands the pending charges. Not Guilty Plea entered by Derek Sheehan on counts 1-3. Counsel agree to exclude the time under the Speedy Trial Act. Order to issue. Detention Hearing set for 11/13/2018 02:00 PM in Courtroom 24 before Magistrate Judge M. Page Kelley.(Attorneys present: Anne Paruti for the government and William Keefe for defendant. )Court Reporter Name and Contact or digital recording information: Digital Recording. To order a copy of this Digital Recording, please go to https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio-recordings . For a transcript of this proceedi Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Belmont, Kellyann) (Entered: 11/01/2018) |
|---|---|---|
| 11/01/2018 | 19 | ELECTRONIC NOTICE OF HEARING as to Derek Sheehan Initial Status Conference set for 12/17/2018 10:45 AM in Courtroom 24 before Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 11/01/2018) |
| 11/01/2018 | 20 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Time excluded from 10/25/2018 until 12/17/2018. Reason for entry of order on excludable delay: 18 USC 3161(h)(7)(A) Interests of justice. (Belmont, Kellyann) (Entered: 11/02/2018) |
| 11/08/2018 | 21 | ELECTRONIC NOTICE OF RESCHEDULING as to Derek Sheehan: Detention Hearing reset for 11/13/2018 02:30 PM in Courtroom 24 before Magistrate Judge M. Page Kelley. Note: change is to time only!(Belmont, Kellyann) (Entered: 11/08/2018) |
| 11/08/2018 | 22 | Writ of Habeas Corpus ad Prosequendum Issued as to Derek Sheehan for 11/13/2018 (Belmont, Kellyann) (Entered: 11/08/2018) |
| 11/13/2018 | 23 | MOTION for Release from Custody *Defendant's Motion for Release on Conditions* as to Derek Sheehan. (Keefe, William) (Entered: 11/13/2018) |
| 11/13/2018 | 24 | Assented to MOTION for Protective Order *regarding discovery materials* as to Derek Sheehan by USA. (Attachments: # 1 proposed protective order)(Paruti, Anne) (Entered: 11/13/2018) |
| 11/13/2018 | 25 | Magistrate Judge M. Page Kelley: Protective ORDER entered granting 24 Motion for Protective Order as to Derek Sheehan (1) (Belmont, Kellyann) (Entered: 11/13/2018) |
| 11/13/2018 | 28 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Detention Hearing as to Derek Sheehan held on 11/13/2018. Defendant present. Parties agree to proceed by way of proffer. Court hears argument on detention. Government submits motion to seal hearing exhibits. Motion allowed. Court will return the exhibits to the government after it has reviewed them. Government moves to admit exhibits 1-7. No objection. Admitted. Court takes the matter under advisement. Defendant remanded to state custody. (Attorneys present: Anne Paruti for the government and William Keefe for defendant. Jennifer Dailey for Probation. )Court Reporter Name and Contact or digital recording information: Digital Recording. To order a copy of this Digital Recording, please go to |

JA: 4

| | | https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio-recordings . For a transcript of this proceeding, contact Deborahat deborah_scalfani@mad.uscourts.gov. (Belmont, Kellyann) (Entered: 11/13/2018) |
| 11/13/2018 | 31 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER OF DETENTION PENDING TRIAL as to Derek Sheehan (Belmont, Kellyann) (Entered: 11/13/2018) |
| 11/13/2018 | 32 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered denying 23 Motion for Release from Custody as to Derek Sheehan (1). See order # 31 . (Belmont, Kellyann) (Entered: 11/13/2018) |
| 11/28/2018 | 33 | MOTION to Revoke *Defendant's Motion for Revocation or Amendment of Order and Request for Release on Conditions* as to Derek Sheehan. (Attachments: # 1 Order of Detention Pending Trial)(Keefe, William) (Entered: 11/28/2018) |
| 12/12/2018 | 34 | Judge Richard G. Stearns: ORDER entered denying 33 Motion for Revocation or Amendment of Order and Request for Release on Conditions as to Derek Sheehan (1). Denied, for the reasons stated by the Magistrate Judge. (Maynard, Timothy) (Entered: 12/12/2018) |
| 12/17/2018 | 35 | ELECTRONIC NOTICE CANCELLING HEARING as to Derek Sheehan. At request of counsel the status hearing set for 12/17/18 at 10:45am is cancelled and will be rescheduled. (Belmont, Kellyann) (Entered: 12/17/2018) |
| 12/17/2018 | 36 | STATUS REPORT *and request to cancel hearing* by USA as to Derek Sheehan (Paruti, Anne) (Entered: 12/17/2018) |
| 12/17/2018 | 37 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Time excluded from 12/17/2018 until 1/22/2019. Reason for entry of order on excludable delay: 18 USC 3161(h)(7)(A) Interests of justice. (Belmont, Kellyann) (Entered: 12/17/2018) |
| 12/17/2018 | 38 | ELECTRONIC NOTICE OF HEARING as to Derek Sheehan Interim Status Conference set for 1/22/2019 10:10 AM in Courtroom 24 before Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 12/17/2018) |
| 01/22/2019 | 39 | ELECTRONIC NOTICE CANCELLING HEARING as to Derek Sheehan. At request of counsel the status conference set for 1/22/19 in front of Judge Kelley is cancelled and will be rescheduled. (Belmont, Kellyann) (Entered: 01/22/2019) |
| 01/22/2019 | 40 | ELECTRONIC NOTICE OF HEARING as to Derek Sheehan: Interim Status Conference set for 1/30/2019 03:15 PM in Courtroom 24 before Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 01/22/2019) |
| 01/22/2019 | 41 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Time excluded from 1/22/2019 until 1/30/2019. Reason for entry of order on excludable delay: 18 USC 3161 (h)(7)(A) Interests of justice. (Belmont, Kellyann) (Entered: 01/22/2019) |
| | | |

JA: 5

| 01/30/2019 | 42 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Interim Status Conference as to Derek Sheehan held on 1/30/2019. Counsel ask for a further date to resolve discovery issues. Final Status Conference set for 3/21/2019 12:00 PM in Courtroom 24 before Magistrate Judge M. Page Kelley. Counsel agree to exclude the time under the Speedy Trial Act. Order to issue. (Attorneys present: Anne Paruti for the government and William Keefe for defendant.. )Court Reporter Name and Contact or digital recording information: Digital Recording. To order a copy of this Digital Recording, please go to http://www.mad.uscourts.gov/attorneys/Mae-Audio.htm . For a transcript of this proceeding, contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Belmont, Kellyann) (Entered: 01/30/2019) |
| 01/30/2019 | 43 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Time excluded from 1/30/2019 until 3/21/2019. Reason for entry of order on excludable delay: 18 USC 3161 (h)(7)(A) Interests of justice. (Belmont, Kellyann) (Entered: 01/30/2019) |
| 03/21/2019 | 44 | Joint MOTION to Continue *status hearing* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 03/21/2019) |
| 03/21/2019 | 45 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered granting 44 Motion to Continue as to Derek Sheehan. The conference on March 21, 2019 is cancelled and will be rescheduled. (1) (Kelley, M.) (Entered: 03/21/2019) |
| 03/21/2019 | 46 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Time excluded from 3/21/2019 until 4/18/2019. Reason for entry of order on excludable delay: 18 USC 3161 (h)(7)(A) Interests of justice. **Final Status Conference set for 4/18/2019 11:45 AM in Courtroom 24 before Magistrate Judge M. Page Kelley.** (Belmont, Kellyann) (Entered: 03/21/2019) |
| 04/18/2019 | 47 | Joint MOTION to Continue *and exclude time* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 04/18/2019) |
| 04/18/2019 | 48 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered granting 47 Motion to Continue as to Derek Sheehan (1). A new date will be set. (Belmont, Kellyann) (Entered: 04/18/2019) |
| 04/29/2019 | 49 | ELECTRONIC NOTICE OF HEARING as to Derek Sheehan Final Status Conference set for 5/14/2019 11:00 AM in Courtroom 24 before Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 04/29/2019) |
| 05/01/2019 | 50 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Time excluded from 4/18/2019 until 5/14/2019. Reason for entry of order on excludable delay: 18 USC 3161 (h)(7)(A) Interests of justice. (Belmont, Kellyann) (Entered: 05/01/2019) |
| 05/14/2019 | 51 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Final Status Conference as to Derek Sheehan held on 5/14/2019. Discovery is complete and the parties ask for the case to be sent up to the District Court. It is not clear if a trial will be necessary but if it is it would last approximately 1-2 weeks. Defendant will file motion to suppress by 6/14/2019, |

JA: 6

| | | |
|---|---|---|
| | | government's response due by 6/28/2019 and defendant's reply (if any) due by 7/12/2019. Counsel agree to exclude the time until the date in front of Judge Stearns under the Speedy Trial Act. Order to issue. (Attorneys present: Anne Paruti for the government and William Keefe for defendant.. )Court Reporter Name and Contact or digital recording information: Digital Recording. To order a copy of this Digital Recording, please go to https://www.mad.uscourts.gov/caseinfo/transcripts.htm#audio-recordings . this proceeding, contact Deborah Scalfani by email at deborah_scalfani@mad.uscourts.gov. (Belmont, Kellyann) (Entered: 05/14/2019) |
| 05/14/2019 | 52 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER ON EXCLUDABLE DELAY as to Derek Sheehan. Reason for entry of order on excludable delay: 18 USC 3161(h)(7)(A) Interests of justice. FINAL STATUS REPORT as to Derek Sheehan (Belmont, Kellyann) (Entered: 05/14/2019) |
| 05/14/2019 | 53 | Case as to Derek Sheehan no longer referred to Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 05/14/2019) |
| 06/24/2019 | 59 | Assented to MOTION for Extension of Time to July 12, 2019 to File Response/Reply *to Defendant's motions to suppress and for Franks hearing* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 06/24/2019) |
| 06/26/2019 | 60 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting in part 59 Motion for Extension of Time to File Response/Reply as to Derek Sheehan (1). The Court will schedule a hearing after response have been filed, if necessary. (Maynard, Timothy) (Entered: 06/26/2019) |
| 07/11/2019 | 61 | Assented to MOTION for Extension of Time to July 16, 2019 to File *response to defendant's motions* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 07/11/2019) |
| 07/12/2019 | 62 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 61 Motion for Extension of Time to July 16, 2019 to File response to defendant's motions as to Derek Sheehan (1) (Maynard, Timothy) (Entered: 07/12/2019) |
| 07/15/2019 | 63 | Assented to MOTION for Extension of Time to File *response to defendant's motions* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 07/15/2019) |
| 07/16/2019 | 64 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 63 Motion for Extension of Time response to defendant's motions as to Derek Sheehan (1) (Maynard, Timothy) (Entered: 07/16/2019) |
| 07/24/2019 | 65 | Assented to MOTION for Leave to File as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 07/24/2019) |
| 07/24/2019 | 66 | Response as to Derek Sheehan: (Paruti, Anne) (Entered: 07/24/2019) |
| 07/25/2019 | 67 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 65 Motion for Leave to File Under Seal. (Maynard, Timothy) (Entered: 07/25/2019) |
| 08/08/2019 | 69 | Set Hearings re Motion in case as to Derek Sheehan 58 MOTION for Franks Hearing, 57 MOTION to Suppress. Motion Hearing (Non-evidentiary) set for |

|  |  | 9/20/2019 03:00 PM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 08/08/2019) |
|---|---|---|
| 09/20/2019 | 73 | Judge Richard G. Stearns: ORDER entered. MEMORANDUM AND ORDER on Defendant's Motion to Suppress. (Maynard, Timothy) (Entered: 09/20/2019) |
| 09/23/2019 | 74 | Judge Richard G. Stearns: ELECTRONIC ORDER entered. Renewed MOTION to Suppress due October 7, 2019 and any response is due October 21, 2019. (Maynard, Timothy) (Entered: 09/23/2019) |
| 09/23/2019 | 80 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying without prejudice 57 Motion to Suppress as to Derek Sheehan (1). (Maynard, Timothy) (Entered: 09/23/2019) |
| 09/23/2019 | 81 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying without prejudice 58 MOTION for a Franks Hearing and Incorporated Memorandum of Law as to Derek Sheehan. (Maynard, Timothy) (Entered: 09/23/2019) |
| 10/22/2019 | 85 | Assented to MOTION for Extension of Time to October 22, 2019 to File *response* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 10/22/2019) |
| 10/22/2019 | 86 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 85 Motion for Extension of Time as to Derek Sheehan (1) (Maynard, Timothy) (Entered: 10/22/2019) |
| 10/22/2019 | 87 | Memorandum regarding Government's response to defendant's supplemental memorandum as to Derek Sheehan (Paruti, Anne) (Entered: 10/22/2019) |
| 11/01/2019 | 88 | Set Motion Hearing (Non-evidentiary) in case as to Derek Sheehan: Motion Hearing set for 11/15/2019 10:00 AM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 11/01/2019) |
| 11/15/2019 | 89 | Electronic Clerk's Notes for proceedings held before Judge Richard G. Stearns: Motion Hearing as to Derek Sheehan held on 11/15/2019 re Motion to Suppress. Court hears argument from the parties; Motion taken under advisement. Defendant remanded to the custody of USMS. (Attorneys present: Paruti for USA; Keefe for the defendant. )Court Reporter Name and Contact or digital recording information: James Gibbons at jamesgibbonsrpr@gmail.com. (Maynard, Timothy) (Entered: 11/15/2019) |
| 01/28/2020 | 90 | Judge Richard G. Stearns: ORDER entered. MEMORANDUM AND ORDER on Dkt #57 Motion to Suppress and #58 Motion for a Franks Hearing. (Zierk, Marsha) (Entered: 01/28/2020) |
| 02/28/2020 | 91 | Set Hearings as to Derek Sheehan: Rule 11 Hearing set for 4/14/2020 03:00 PM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 02/28/2020) |
| 04/10/2020 | 92 | Reset Hearings as to Derek Sheehan: Rule 11 Hearing set for 7/16/2020 10:00 AM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 04/10/2020) |
| 05/08/2020 | 93 |  |

JA: 8

| | | |
|---|---|---|
| | | MOTION for Release from Custody *Defendant's Motion to Reconsider Release for Covid-19 Reasons* as to Derek Sheehan. (Keefe, William) (Entered: 05/08/2020) |
| 05/13/2020 | 94 | Opposition by USA as to Derek Sheehan re 93 MOTION for Release from Custody *Defendant's Motion to Reconsider Release for Covid-19 Reasons* (Attachments: # 1 McDonald declaration 4.21.20, # 2 McDonald declaration 5.6.20, # 3 Baker declaration 4.15.20)(Paruti, Anne) (Entered: 05/13/2020) |
| 05/18/2020 | 95 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 93 Motion for Release from Custody as to Derek Sheehan (1). The motion for consideration of the detention order is DENIED. I find no change of circumstances, or change in the state of defendant's health, that outweigh the risks to the community that would be posed by his release considering the predatory nature of the offenses with which he is charged and the difficulty in the present environment of providing close supervision of defendants released to the community. I am also persuaded by Sheriff McDonald's Declaration that the Plymouth County Correctional Facility has implemented appropriate measures to protect the health of the staff and the persons detained at the facility. (Maynard, Timothy) (Entered: 05/18/2020) |
| 07/15/2020 | 96 | MOTION to Continue *Motion to Continue Rule 11 Hearing* as to Derek Sheehan. (Keefe, William) (Entered: 07/15/2020) |
| 07/15/2020 | 97 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 96 Motion to Continue as to Derek Sheehan (1): Rule 11 Hearing set for 10/14/2020 03:00 PM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 07/15/2020) |
| 10/09/2020 | 100 | MOTION to Continue *Motion to Continue Rule 11 Hearing* as to Derek Sheehan. (Keefe, William) (Entered: 10/09/2020) |
| 10/09/2020 | 101 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 100 Motion to Continue as to Derek Sheehan (1): Rule 11 Hearing set for 12/10/2020 10:00 AM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 10/09/2020) |
| 12/09/2020 | 102 | ELECTRONIC NOTICE CANCELING HEARING as to Derek Sheehan. Rule 11 Hearing set for 12/10/2020 10:00 AM is CANCELED. The Court will issue a date for a status conference. (Maynard, Timothy) (Entered: 12/09/2020) |
| 01/14/2021 | 103 | Judge Richard G. Stearns: ORDER entered. PRETRIAL ORDER as to Derek Sheehan: Final Status Conference set for 4/2/2021 02:00 PM in Courtroom 21 before Judge Richard G. Stearns. Jury Trial set for 4/5/2021 09:00 AM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 01/14/2021) |
| 02/08/2021 | 104 | NOTICE OF ATTORNEY APPEARANCE Charles Dell'Anno appearing for USA. (Dell'Anno, Charles) (Entered: 02/08/2021) |
| 02/24/2021 | 105 | Judge Richard G. Stearns: ORDER entered. PRETRIAL ORDER as to Derek Sheehan: Jury Trial set for 7/29/2021 09:00 AM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 02/24/2021) |
| | | |

**JA: 9**

| 02/24/2021 | 106 | Set Hearings as to Derek Sheehan: Final Pretrial Conference set for 7/27/2021 03:00 PM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 02/24/2021) |
| 04/01/2021 | 107 | ELECTRONIC NOTICE CANCELING HEARING as to Derek Sheehan. Final Status Conference set for 4/2/2021 02:00 PM is CANCELED due to scheduling of trial. (Maynard, Timothy) (Entered: 04/01/2021) |
| 06/03/2021 | 108 | MOTION in Limine *to Admit Evidence of Defendant's Other Crimes of Child Molestation Pursuant to Rules 414 and 404(b)* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 06/03/2021) |
| 06/03/2021 | 109 | MOTION to Seal *exhibits to Motion in Limine* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 06/03/2021) |
| 06/09/2021 | 111 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 109 Motion to Seal as to Derek Sheehan (1). (Maynard, Timothy) (Entered: 06/09/2021) |
| 06/22/2021 | 112 | MOTION for Hearing *on Government's Motion in Limine to Admit Evidence of Defendant's Other Crimes of Child Molestation Pursuant to Rules 414 and 404 (b)* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 06/22/2021) |
| 06/23/2021 | 113 | Judge Richard G. Stearns: ORDER entered granting 108 MOTION in Limine to Admit Evidence of Defendant's Other Crimes of Child Molestation Pursuant to Rules 414 and 404(b) as to Derek Sheehan by USA. (Maynard, Timothy) (Entered: 06/23/2021) |
| 06/23/2021 | 114 | Judge Richard G. Stearns: ELECTRONIC ORDER entered finding as moot 112 MOTION for Hearing on Government's Motion in Limine to Admit Evidence of Defendant's Other Crimes of Child Molestation Pursuant to Rules 414 and 404(b) as to Derek Sheehan by USA per ORDER (D. 113). (Maynard, Timothy) (Entered: 06/23/2021) |
| 07/02/2021 | 115 | MOTION to Suppress *Motion to File Additional Arguments Related to a Previously Filed Motion to Suppress and Motion to Reconsider* as to Derek Sheehan. (Keefe, William) (Entered: 07/02/2021) |
| 07/02/2021 | 116 | MOTION to Continue *Motion to Continue Trial* as to Derek Sheehan. (Keefe, William) (Entered: 07/02/2021) |
| 07/02/2021 | 117 | AFFIDAVIT by Derek Sheehan (Keefe, William) (Entered: 07/02/2021) |
| 07/06/2021 | 118 | Opposition by USA as to Derek Sheehan re 116 MOTION to Continue *Motion to Continue Trial* (Paruti, Anne) (Entered: 07/06/2021) |
| 07/06/2021 | 119 | Opposition by USA as to Derek Sheehan re 115 MOTION to Suppress *Motion to File Additional Arguments Related to a Previously Filed Motion to Suppress and Motion to Reconsider* (Paruti, Anne) (Entered: 07/06/2021) |
| 07/08/2021 | 120 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 115 MOTION to Suppress Motion to File Additional Arguments Related to a Previously Filed Motion to Suppress and Motion to Reconsider as to Derek Sheehan. (Maynard, Timothy) (Entered: 07/08/2021) |

**JA: 10**

| 07/08/2021 | 121 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 116 MOTION to Continue Motion to Continue Trial as to Derek Sheehan. (Maynard, Timothy) (Entered: 07/08/2021) |
|---|---|---|
| 07/19/2021 | 122 | Set Hearings as to Derek Sheehan<br><br>This hearing will be conducted by video conference. Counsel of record will receive a video conference invite at the email registered in CM/ECF. If you have technical or compatibility issues with the technology, please notify the session's courtroom deputy as soon as possible.<br><br>Access to the hearing will be made available to the media and public. In order to gain access to the hearing, you must sign up at the following address: https://forms.mad.uscourts.gov/courtlist.html.<br><br>For questions regarding access to hearings, you may refer to the Court's general orders and public notices available on www.mad.uscourts.gov or contact media@mad.uscourts.gov.<br><br>Rule 11 Hearing set for 7/20/2021 02:00 PM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 07/19/2021) |
| 07/20/2021 | 123 | PLEA AGREEMENT as to Derek Sheehan (Paruti, Anne) (Entered: 07/20/2021) |
| 07/20/2021 | 124 | PLEA AGREEMENT as to Derek Sheehan. (Maynard, Timothy) (Entered: 07/20/2021) |
| 07/20/2021 | 125 | Electronic Clerk's Notes for proceedings held before Judge Richard G. Stearns: Rule 11 Hearing as to Derek Sheehan held on 7/20/2021. Case called; Defendant pleads guilty conditionally to counts 1-3 of the indictment; Defendant sworn; Hold holds colloquy with the defendant; Government summarizes facts of the case and outlines the plea agreement; Counsel is directed to reach out to the clerk to schedule sentencing date. (Attorneys present: Paruti and Dell'Anno for USA; Keefe for Sheehan. )Court Reporter Name and Contact or digital recording information: James Gibbons at jamesgibbonsrpr@gmail.com. (Maynard, Timothy) (Entered: 07/21/2021) |
| 07/23/2021 | 126 | Set Hearings as to Derek Sheehan: Sentencing set for 11/16/2021 10:00 AM in Courtroom 21 before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 07/23/2021) |
| 07/30/2021 | | Terminate Deadlines and Hearings as to Derek Sheehan: Jury Trial cancelled. (Pacho, Arnold) (Entered: 07/30/2021) |
| 10/15/2021 | 127 | MOTION for Forfeiture of Property *Motion for Preliminary Order of Forfeiture and Proposed Preliminary Order of Forfeiture* as to Derek Sheehan by USA. (Attachments: # 1 Proposed Preliminary Order of Forfeiture)(Head, Carol) (Entered: 10/15/2021) |
| 11/10/2021 | 128 | Reset Hearings as to Derek Sheehan: Sentencing set for 11/23/2021 01:00 PM in Courtroom 21 (In person only) before Judge Richard G. Stearns. (Maynard, Timothy) (Entered: 11/10/2021) |

# JA: 11

| | | |
|---|---|---|
| 11/19/2021 | 129 | SENTENCING MEMORANDUM by Derek Sheehan (Attachments: # 1 Letter of Support, # 2 Letter of Support, # 3 Letter of Support, # 4 Letter of Support, # 5 Letter of Support)(Keefe, William) (Entered: 11/19/2021) |
| 11/19/2021 | 131 | MOTION to Seal Document *(victim impact statements)* as to Derek Sheehan by USA. (Paruti, Anne) (Entered: 11/19/2021) |
| 11/19/2021 | 132 | SENTENCING MEMORANDUM by USA as to Derek Sheehan (Paruti, Anne) (Entered: 11/19/2021) |
| 11/23/2021 | 134 | Judge Richard G. Stearns: ELECTRONIC ORDER entered granting 131 Motion to Seal Document as to Derek Sheehan (1) (Maynard, Timothy) (Entered: 11/23/2021) |
| 11/23/2021 | 135 | Electronic Clerk's Notes for proceedings held before Judge Richard G. Stearns: Sentencing held on 11/23/2021 for Derek Sheehan (1). Case called; The Court accepts the plea agreement; Government reads victim impact statements into the record; Government makes sentencing argument; Defense makes sentencing argument; Defendant addresses the Court; Derek Sheehan is hereby sentenced on Counts 1-3 to 540 months in the custody of the Bureau of Prisons, 5 years supervised release, $300 special assessment. The Court grants 127 Motion for Forfeiture of Property as to Derek Sheehan (1); (Attorneys present: Paruti + Dell'Anno for USA; Keefe + Sheketoff for Sheehan; Patten for USPO. )Court Reporter Name and Contact or digital recording information: James Gibbons at jamesgibbonsrpr@gmail.com. (Maynard, Timothy) (Entered: 11/23/2021) |
| 11/26/2021 | 136 | NOTICE OF APPEAL re 90 MEMORANDUM AND ORDER, 120 ELECTRONIC ORDER 137 JUDGMENT by Derek Sheehan (Fee Status: IFP requested). NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf.** US District Court Clerk to deliver official record to Court of Appeals by **12/16/2021. (Keefe, William)**<br><br>**Modified on 12/1/2021 to Correct Docket Text and Add Document Link to Judgment Being Appealed. Counsel Filed the Notice of Appeal Before the Entry of Judgment and Failed to Follow the CM/ECF Prompts When Filing the Notice of Appeal (Paine, Matthew).**<br><br>**(Entered: 11/26/2021)** |
| 11/30/2021 | 137 | Judge Richard G. Stearns: ORDER entered. JUDGMENT as to Derek Sheehan (1), Count(s) 1-3, 540 months in the custody of the Bureau of Prisons; 5 years supervised release; $300 special assessment (Maynard, Timothy) (Main Document 137 replaced on 12/2/2021 to add notation re Preliminary Order of Forfeiture on page 9) (Maynard, Timothy). (Entered: 11/30/2021) |

# JA: 12

| 11/30/2021 | 141 | Judge Richard G. Stearns: ORDER entered. PRELIMINARY ORDER OF FORFEITURE as to Derek Sheehan. (Maynard, Timothy) (Entered: 12/02/2021) |
| 12/02/2021 | 139 | Certified and Transmitted Abbreviated Electronic Record on Appeal as to Derek Sheehan to US Court of Appeals re 136 Notice of Appeal. (Paine, Matthew) (Entered: 12/02/2021) |
| 12/02/2021 | 140 | USCA Case Number as to Derek Sheehan 21-1983 for 136 Notice of Appeal.. (Paine, Matthew) (Entered: 12/02/2021) |
| 12/07/2021 | 142 | MOTION to Amend/Correct *Motion to Correct Sentence Pursuant to Rule 35* as to Derek Sheehan. (Keefe, William) (Entered: 12/07/2021) |
| 01/07/2022 | 143 | MEMORANDUM in Opposition by USA as to Derek Sheehan re 142 MOTION to Amend/Correct *Motion to Correct Sentence Pursuant to Rule 35* (Paruti, Anne) (Entered: 01/07/2022) |
| 01/10/2022 | 144 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 142 MOTION to Amend/Correct Motion to Correct Sentence Pursuant to Rule 35 as to Derek Sheehan for the reasons stated in the government's opposition. (Maynard, Timothy) (Entered: 01/10/2022) |
| 02/03/2022 | 145 | FILING FEE/PAYMENT RECEIVED $ 505.00, receipt number 1BST088205 re 136 Notice of Appeal, as to Derek Sheehan (Phillips, Sophie) (Entered: 02/03/2022) |
| 04/25/2022 | 146 | Transcript of Motion Hearing as to Derek Sheehan held on November 15, 2019, before Judge Richard G. Stearns. COA Case No. 21-1983. Court Reporter Name and Contact Information: James Gibbons at jamesgibbonsrpr@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 5/16/2022. Redacted Transcript Deadline set for 5/26/2022. Release of Transcript Restriction set for 7/25/2022. (Coppola, Katelyn) (Entered: 04/26/2022) |
| 04/25/2022 | 147 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Coppola, Katelyn) (Entered: 04/26/2022) |
| 05/04/2022 | 148 | Notice of Service of Process filed by USA as to Derek Sheehan. Individual (s)/Entities served: Derek Sheehan; William Keefe, Esq. as Counsel for Derek Sheehan. (Head, Carol) (Entered: 05/04/2022) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 10/07/2022 08:24:03 | | |
| **PACER Login:** | Lockhartdc | **Client Code:** | |
| | | | |

# JA: 13

| Description: | Docket Report | Search Criteria: | 1:18-cr-10391-RGS |
|---|---|---|---|
| Billable Pages: | 10 | Cost: | 1.00 |

**JA: 14**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 18cr10391 |
| | ) | |
| v. | ) | Violations: |
| | ) | |
| DEREK SHEEHAN, | ) | Counts One through Three: |
| | ) | Sexual Exploitation of Children |
| Defendant | ) | (18 U.S.C. §§ 2251(a) and (e)) |
| | ) | |
| | ) | Forfeiture Allegation: |
| | ) | (18 U.S.C. § 2253) |

INDICTMENT

COUNT ONE
Sexual Exploitation of Children
(18 U.S.C. §§ 2251(a) and (e))

The Grand Jury charges that:

On various dates beginning on a date unknown to the Grand Jury, but no later than March 16, 2017, through on or about April 8, 2018, in the District of Massachusetts, the defendant,

DEREK SHEEHAN,

did knowingly employ, use, persuade, induce, entice, and coerce a minor, "Minor A," to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and attempted to do so.

All in violation of Title 18, United States Code, Sections 2251(a) and (e).

1

**JA: 15**

<u>COUNT TWO</u>
Sexual Exploitation of Children
(18 U.S.C. §§ 2251(a) and (e))

The Grand Jury further charges that:

On various dates beginning on a date unknown to the Grand Jury but no later than July 5, 2018, through on or about July 14, 2018, in the District of Massachusetts, the defendant,

DEREK SHEEHAN,

did knowingly employ, use, persuade, induce, entice, and coerce a minor, "Minor B," to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct and the visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and attempted to do so.

All in violation of Title 18, United States Code, Sections 2251(a) and (e).

2

**JA: 16**

<u>COUNT THREE</u>
Sexual Exploitation of Children
(18 U.S.C. §§ 2251(a) and (e))

The Grand Jury further charges that:

On or about July 17, 2018, in the District of Massachusetts, the defendant,

DEREK SHEEHAN,

did knowingly employ, use, persuade, induce, entice, and coerce a minor, "Minor C," to engage in

any sexually explicit conduct for the purpose of producing any visual depiction of such conduct

and the visual depiction was produced and transmitted using materials that had been mailed,

shipped, and transported in and affecting interstate and foreign commerce by any means, including

by computer, and attempted to do so.

All in violation of Title 18, United States Code, Sections 2251(a) and (e).

3

**JA: 17**

<u>CHILD PORNOGRAPHY FORFEITURE ALLEGATION</u>
(18 U.S.C. § 2253)

1.      Upon conviction of any of the offenses in violation of Title 18, United States Code,

Section 2252A(a)(5)(B), set forth in Counts One through Three of this Indictment, the defendant,

DEREK SHEEHAN,

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section

2253, (i) any visual depiction described in sections 2251, 2251A, 2252, 2252A, 2252B, or 2260

of Chapter 110 of Title 18, or any book, magazine, periodical, film, videotape, or other matter

which contains any such visual depiction, which was produced, transported, mailed, shipped, or

received in violation of Chapter 110 of Title 18; (ii) any property, real or personal, constituting

or traceable to gross profits or other proceeds obtained from such offenses; and (iii) any property,

real or personal, used or intended to be used to commit or to promote the commission of such

offenses or any property traceable to such property.

2.      If any of the property described in Paragraph 1, above, as being forfeitable pursuant

to Title 18, United States Code, Section 2253, as a result of any act or omission of the defendant–

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the Court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without
         difficulty;

it is the intention of the United States of America, pursuant to Title 18, United States Code, Section

2253(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 2253.

4

**JA: 18**

A TRUE BILL

FOREPERSON


ANNE PARUTI
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS


District of Massachusetts: OCTOBER __25__, 2018
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK
10/25/KE  ·2:05pm

5

**JA: 19**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 18-CR-10391-RGS |
| | ) | |
| DEREK SHEEHAN, | ) | |
| | ) | |
| Defendant. | ) | |

---

GOVERNMENT'S OMNIBUS RESPONSE TO THE DEFENDANT'S MOTIONS
TO SUPPRESS EVIDENCE AND FOR <u>FRANKS</u> HEARING

---

Now comes the United States, by and through the undersigned Assistant United States Attorney, and hereby files its omnibus opposition to the defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants and Motion for a <u>Franks</u> Hearing. For the reasons discussed in greater detail below, this Court should DENY the motions.

## BACKGROUND AND RELEVANT FACTS

Derek Sheehan (the "defendant") stands charged by indictment in the above-captioned docket with three counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e). Count One involves a minor victim identified as "Minor A," Count Two involves a minor victim identified as "Minor B," and Count Three involves a minor victim identified as "Minor C." [Doc. 13]. The investigation precipitating these federal charges stemmed from a separate investigation that began on or around June 28, 2018, when Minor A reported that he was the victim of a past sexual assault by the defendant to the Norwell Police Department. [Search Warrant Affidavit of Special Agent Lisa Crandall ("Crandall Aff.") at ¶ 4, attached hereto as Sealed Exhibit A]. As outlined in more detail below, the ensuing state investigation led to the execution of a state search warrant, issued by and docketed in the Hingham District Court as 1858SW0035, on August

**JA: 20**

17, 2018.  [Crandall Aff. ¶ 6].  On that same date, the defendant was arrested by the Massachusetts State Police for indecent assault and battery on a child under 14, in violation of M.G.L. c. 265, § 13B.  Id.

In the course of the execution of that state search warrant, investigators seized several electronic devices, including the defendant's cell phone.  [Doc. 3 ¶¶ 5-6].  During subsequent forensic examination of the phone, the forensic analyst observed photographs containing what he believed to be child pornography, and the Norwell Police therefore sought and obtained a second search warrant, issued by and docketed in the Hingham District Court as 1858SW0036, which allowed investigators to search the items seized pursuant to the first warrant for evidence of child pornography violations.  [Doc. 3 ¶ 6].  When investigators executed that search, they observed video evidence of the defendant sexually abusing various children while they apparently slept in his home.  Based on this video evidence, the defendant was subsequently charged in federal court with the sexual exploitation of children.  [Docs. 3, 13].

I.     **The first warrant – 1858SW0035**

On August 16, 2018, Norwell Police Officer Kayla Puricelli ("Puricelli") sought a warrant to search the residence of the defendant and his wife, Nichole Sheehan, located at 1 Spring Brook Drive, Norwell, MA for evidence of Impersonation of a Police Officer, Witness Interference and Obstruction of Justice, Unauthorized Access to a Computer, and Identity Fraud.  [SW35, attached hereto as Exhibit B].[1]  Puricelli included a particularized description of the items to be searched for and seized in the body of her application and affidavit [SW35 Aff. ¶ 3] and in a separate four-page attachment [SW35 Att. 1].

---

[1]  Citation to the first search warrant, 1858SW0035, will be "SW35," with specific reference to the warrant, application, affidavit, and attachments where appropriate.  It is appended hereto as Sealed Exhibit B.

In the affidavit submitted in support of the application, Puricelli outlined facts learned during the investigation that were sufficient to establish probable cause for the search warrant. [SW35 Aff. ¶ 4(b)].  Those facts are summarized as follows:

**A.     Review of Minor A's iPhone**

On June 28, 2018, Puricelli received Minor A's iPhone from his sister, who had come to the Norwell Police Station to report the sexual assault.  [SW35 Aff. ¶ 4(c)(1)].  Minor A's sister reported to Puricelli that when she had reviewed Minor A's phone, she had observed references to a State Police file and an email exchange between the defendant and a person she believed to be the school resource officer, Rick Phelps, based on the email address involved in the exchange.  Id.

**B.     The State Police report**

Puricelli spoke with multiple individuals who had some knowledge of a document that appeared to be a Massachusetts State Police report.  Those portions of the affidavit are outlined as follows:

**1.     Minor B's family:[2] Paragraph 4(c)(6)**

Minor B's mother spoke with investigators on August 1, 2018.  During that interview, she reported that the defendant had told her that the State Police had investigated him based on allegations that he was a pedophile, and that he had been "cleared."  The defendant had shown her the report on several occasions at his home, the first time being earlier that summer before the end of the school year, and made her read it.  Minor B's mother also read the report with the defendant's

---

[2]   In his motion for a Franks hearing, the defendant appears to have appointed the pseudonym "Minor B" to a child who was interviewed as a potential witness to the crimes being investigated at the state level; Count 2 of the federal indictment, charging the defendant with the sexual exploitation of Minor B, refers to a *different* child.  For the purposes of the litigation of this motion only, the government adopts the defendant's naming convention to refer to the potential witnesses to the state crimes.

wife.  She described the tabbed report as consisting of hundreds of pages and bearing a State Police emblem on its cover, and indicated that it contained some of her son's text messages with another child referenced herein as Minor C.

### 2.    Minor C's family: Paragraph 4(c)(10)[3]

Minor C's mother met with investigators on August 14, 2018.  She relayed that the defendant had texted her husband in April 2018 to meet, and that during that meeting, the defendant brought a State Police report, which contained several printouts of text messages.

### 3.    Minor D's family: Paragraph 4(c)(7)[4]

Minor D's father met with investigators on August 1, 2018.  During that meeting, he informed them that he was aware of the report but had only seen a picture of it, which showed it to be tabbed and bear the State Police emblem on its cover.[5]  He explained that the defendant told him that kids were texting in school and a comment that "Mr. Sheehan loves me" got "flagged" on the school's WiFi, that school administration and Officer Phelps were alerted, and that Phelps had in turn alerted the defendant to the ongoing investigation.  Minor D's father understood that the defendant was subsequently "cleared" of all wrongdoing.

---

[3]  The child referred to as Minor C for the purposes of the litigation of the defendant's motion to suppress is *not* the child referenced in Count 3 of the federal indictment.

[4]  The child referred to as Minor D for the purposes of the litigation of the defendant's motion to suppress was later determined to be a victim depicted in the videos that show the defendant sexually abusing boys in his home.  He is referenced in Count 2 of the federal indictment as "Minor B."

[5]  Minor D's father forwarded the photograph to investigators.  The defendant has appended it to his motion for a <u>Franks</u> hearing.

**JA: 23**

4.     **Nichole Sheehan: Paragraph 4(c)(9)**

On August 1, 2018, investigators visited the defendant's wife at her home.  They asked her about the State Police report, and she claimed she had never seen it or anything that looked like a police report.  When investigators informed her that her husband had never, in fact, been previously investigated by the police, she bit her lip, appeared as if she were going to cry, and refused to continue speaking with them.

C.     **Minor A's Apple ID**

Puricelli also included information in the affidavit from various potential witnesses about the defendant's alleged access to Minor A's Apple account.  On August 7, 2018,[6] investigators interviewed Minor B.  [SW35 Aff. ¶ 4(c)(11).]  He told them that because the defendant had helped Minor A create his Apple ID "a while ago," the defendant still had access to Minor A's texts, pictures, and videos through the account.  Id.  Minor B indicated that the defendant frequently used the computer in his office to look at Minor A's text conversations, and that he had seen the defendant access Minor A's text conversations with his parents when Minor A wasn't there.  Id.  Minor B characterized the defendant as "spying" on Minor A's texts without Minor A's permission.  Id.  He further indicated that the defendant had a "bunch" of laptops in his home, a black iPhone, an iPad, and a server in his basement.  Id.

Following the August 14, 2018 interview of Minor C's mother, investigators spoke with Minor C.  [SW35 Aff. ¶ 4(c)(10).]  Minor C informed them that the defendant had made Minor A's Apple ID account for him, and thus had Minor A's Apple ID and password.  Id.  Minor C also

---

[6]  The government agrees with the defendant that, given the date of the first warrant application, Puricelli's reference to this interview as occurring on August 17 is likely a typo meant to read "August 7."

told investigators that in text messages between Minor A and Minor C around January 2018, the defendant was referred to as a "literal child rpst." Id.

As part of the investigation, Massachusetts State Trooper Donovan provided Puricelli with information obtained from Google. [SW35 Aff. ¶ 4(c)(14).] That information included subscriber information for an email account that contained Minor A's name, with the recovery email set as Minor A's first name @dgs.me, which investigators knew to be an address associated with the defendant's emails. Id. The phone number included in the subscriber information for that email account was the defendant's phone number. Id.

### D. The Phelps email account

Trooper Donovan also provided Puricelli with subscriber information for the email account "rickphelps21@gmail.com." [SW35 Aff. ¶ 4(c)(14).] Included as part of that subscriber information was documentation of the IP address used to create the Gmail address on April 14, 2018. Id. That IP address, 71.184.91.173, was registered on that date (and thereafter) to the defendant at his home address. Id.

In a meeting on June 28, 2018, Minor C's mother informed Puricelli that while she was looking through her son's phone, she observed a screen shot of an apparent email exchange between the defendant and a "Rick Phelps," who she believed to be the school resource officer. [SW35 Aff. ¶ 4(c)(2).]

In a conversation on June 30, 2018, Minor A's father informed Puricelli that, months earlier, the defendant had sent him a copy of an email exchange between the defendant and Officer Rick Phelps about an investigation into text messages between Minor A and Minor C. [SW35 Aff. ¶ 4(c)(3).] The defendant told Minor A's father that Minor A had called the defendant a

"pedophile" in a message to Minor C, that the school WiFi had flagged it, and the issue had been resolved.  Id.  Minor A's father understood Phelps to be the school resource officer.  Id.

### E.    Witness intimidation

Apart from the information outlined above regarding the Phelps email account and the State Police report, Puricelli's affidavit discussed further facts relevant to a potential witness intimidation charge.

On August 16, 2018, Minor B's mother informed Puricelli that on August 13, 2018, the defendant and Mrs. Sheehan "begged her" to call them.  [SW35 Aff. ¶ 4(c)(12)].  She did; Nichole Sheehan informed Minor A's mother that the police were investigating the defendant based on allegations of assault by Minor A the previous summer on the Cape, and the police were trying to turn her against her husband.  Id.  Nichole Sheehan told Minor B's mother that the police were lying and not to believe them.  Id.  Minor B's mother reported that during the conversation, the defendant got on the phone and told her that Detective Dooley was playing games, that the police would be talking to her (if they hadn't already), and that she should "go ahead and tell them that I've done nothing wrong."  Id.

## II.    The second warrant – 1858SW0036

On August 29, 2018, Puricelli applied for a second search warrant, issued by and docketed in the Hingham District Court as 1858SW0036, to search the electronic devices seized pursuant to the first warrant for evidence related to the possession of child pornography, committed in violation of M.G.L c. 272, § 29(C).[7]  Puricelli included a particularized description of the items to be searched for and seized both in the body of the application and affidavit [SW36 Aff. ¶ 3] and

---

[7]    Citation to the second search warrant, 1858SW0036, will be "SW36," with specific reference to the warrant, application, affidavit, and attachments where appropriate.  It is appended hereto as Sealed Exhibit C.

in a separate one page attachment [SW36 Att. 1].  In the affidavit submitted in support of the search warrant, Puricelli explained that, during his review of the defendant's phone during the execution of the first warrant, Massachusetts State Police Trooper Hart observed pictures he believed depicted child pornography.  [SW36 Aff. ¶ 4(b)(3).]  Specifically, he described the pictures as consisting of images of prepubescent penises that lacked pubic hair.  Id.

## DISCUSSION

### I.     **The Defendant's Motion to Suppress Evidence Must be Denied.**

In his Motion to Suppress, the defendant sets forth several grounds on which he urges this Court to suppress the video evidence that depicts him sexually assaulting young boys in his home. Specifically, he contends that: 1) the first search warrant lacked probable cause to believe that the defendant committed any crime and that fruits of those crimes would be found at his home; 2) the first warrant was unconstitutionally overbroad; 3) the seizure of the defendant's iPhone from his wife was not authorized by the first warrant; 4) the search executed pursuant to the first warrant was executed overbroadly; and 5) the second search warrant lacked probable cause.  For all of the reasons that follow, each of these arguments fails, and the motion to suppress must be denied.

### A.     **The affidavit established probable cause to believe that a crime had been committed and that evidence, fruits, and instrumentalities of that crime would be located at the defendant's residence.**

Probable cause for a search warrant exists "where information in the affidavit reveals a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Syphers, 426 F.3d 461, 464 (1st Cir. 2005) (internal quotations omitted).  Courts reviewing the sufficiency of an affidavit engage in a totality of the circumstances analysis, considering affidavits "in a common sense manner."  Syphers, 426 F.3d at 465 (internal quotations omitted).  Based on the totality of the information included in the affidavit, there was probable

cause to believe that the defendant had violated each of the statutes enumerated below, and that evidence, fruits, and instrumentalities of those crimes would be found in his home.

### 1.   Impersonation of a Police Officer, M.G.L. c. 268, § 33

Massachusetts General Laws, Chapter 268, Section 33 provides, in pertinent part:

Whoever falsely assumes or pretends to be a ... police officer … and acts as such or requires a person to aid or assist him in a matter pertaining to the duty of such officer, shall be punished …

Massachusetts courts have had few opportunities to examine the application of this provision, but given the plain language of the statute, have interpreted the government's burden to include proof "not only that the defendant impersonated an officer, but also that he took some action in keeping with the pretense." Commonwealth v. Widberg, 88 Mass. App. Ct. 1102 at *1 (2015) (unpublished).[8]

The defendant claims that the affidavit supporting the first warrant lacked probable cause because it does not allege that the defendant used the title or authority of the police to accomplish something.  [D.Mot. at 8].  This argument misses the mark; it is not only factually inaccurate, but it also imposes a burden of proof on the government that is rooted neither in statute nor common law.

Here, the affidavit lays out a scheme by which the defendant attempted to divert attention from himself as the target of a *real* investigation by assuming the identity of Norwell Police Officer Rick Phelps.  Central to the scheme was the defendant's creation of an email address in the officer's name, which he used to impersonate the *real* Phelps in a fake conversation over email with himself. A fair reading of the facts outlined in Puricelli's affidavit leads to the conclusion that the defendant

---

[8]   The government is unaware of any published case that directly addresses the elements of or the sufficiency of evidence supporting a conviction for a violation of the statute.

fabricated the Massachusetts State Police report to help pull off the ruse. He showed the fraudulent email conversations and report to multiple individuals who had some stake in the matter—such as Minor A's parents and Minor C's parents—and talked about it to others.

These facts certainly establish probable cause to believe that the defendant falsely impersonated an officer and "act[ed] as such." M.G.L. c. 268, § 33. Contrary to the defendant's suggestion, [D.Mot. at 9], the government need not show that he "used the title of a police officer and [took] official action consistent with his use of that title" to sustain its burden. See, e.g., United States v. Martindale, 790 F.2d 1129, 1135 (4th Cir. 1986) (defendant charged with impersonating federal officer in violation of 18 U.S.C. § 912 "acted as such" by using diplomatic passport to register at hotels and receive rental car discount); [9] United States v. Willis, 527 Fed. App'x 376, 378 (6th Cir. 2013) (sufficient evidence that defendants charged with impersonating federal officers under 18 U.S.C. § 912 "acted as such," where they provided a printing company with document bearing Dept. of Defense watermark); United States v. Gilbert, 143 F.3d 397, 398-399 (8th Cir. 1998) (defendant charged with impersonating federal officer in violation of § 912 "acted as such" by displaying U.S. Customs badge and identification card when pulled over for speeding).

Here, the defendant concedes that he "engage[d] in the pretense of being a person named Rick Phelps." [D.Mot. at 9.] The fact that he didn't use an "official" Norwell Police Department email account is irrelevant to the analysis. Under the totality of the circumstances, the warrant established "a fair probability" that evidence, fruits, and instrumentalities of violations of

---

[9] The Massachusetts statute tracks the language of the federal statute, which provides in pertinent part: "Whoever falsely assumes or pretends to be an officer or employee acting under authority of the United States or any department, agency or officer thereof, and acts as such…" shall be punished. 18 U.S.C. § 912.

impersonation of a police officer would be found at the defendant's residence.  Syphers at 464.

There was no error.

### 2.   Witness Intimidation, M.G.L. c. 268, § 13B

Massachusetts General Laws, Chapter 268, Section 13B provides, in pertinent part:

> Whoever willfully, either directly or indirectly: (i) threatens … or (iii) misleads, intimidates, or harasses another person who is a (A) witness or potential witness; (B) person who is or was aware of information, records, documents or objects that relate to a violation of a criminal law … with the intent to or with reckless disregard for the fact that it may: (1) impede, obstruct, delay, prevent or otherwise interfere with: a criminal investigation at any stage … shall be punished.[10]

G.L. c. 268, § 13B(b) (St. 2018, c. 69, § 155, eff. April 13, 2018).  The statute does not require, as

the defendant contends, that he intended to interfere with an "ongoing proceeding," [D.Mot. at 11-

12], or that he did so with "any expression of malice."  [D.Mot. at 13.]

Here, the conduct outlined in the affidavit falls squarely within the scope of the statute.

The defendant fabricated the State Police report for the sole purpose of diverting investigatory

focus from himself once he realized (by gaining unauthorized access to Minor A's text messages)

that Minor A and his friends might be talking about his alleged assault of Minor A.  He then

circulated that fraudulent report—along with a fabricated chain of emails that he concocted—to

make it seem as if "rumors" about him were investigated and cleared.  The only conceivable reason

for doing so is to mislead potential witnesses from the truth, to prevent a real investigation from

uncovering his illegal conduct.  Just a few months after the defendant engaged in those preliminary

efforts, the defendant apparently realized that his plan had failed.  The fair inference is that then,

---

[10] The version of the statute in effect from November 4, 2010 to April 2, 2018 does not differ from the current version of the statute in any way that is material to this analysis.  The government notes, however, that certain of the cases cited by the defendant interpret earlier versions of the statute that have been changed significantly by intervening amendments.  See, e.g., D.Mot. at 11 (citing Commonwealth v. Pagels, 69 Mass.App.Ct. 607, 612-613 (2007) (interpreting the 1996 version of the statute)).

his wife reached out to Minor B's mother, arguably on his behalf, to alert her that there was an active investigation targeting the defendant for crimes against one of her son's friends. Nichole Sheehan told Minor B's mother that the police were lying, urged her not to believe them, and the defendant joined in – for the sole purpose of misleading the investigation.

As an initial matter, there is no question that Minor B's mother and the other parents who the defendant targeted with this elaborate scheme were "potential witnesses" as contemplated by the statute. Commonwealth v. Fragata, 480 Mass 121, 126 (2018) (in analyzing 2010 version of statute, noting that "'potential witness at any stage of a criminal investigation' includes persons who are likely to participate in a future investigation that has not yet begun"). The defendant's reliance on Commonwealth v. Hamilton, 459 Mass. 422 (2011), Commonwealth v. Patch, 91 Mass. App. Ct. 1122 (2017) (unpublished), and Commonwealth v. Burt, 40 Mass. App. Ct. 275 (1996), is misplaced; those cases all interpret earlier versions of the statute, which are not relevant here. Hamilton and Patch are particularly inapposite, where they outline the statute's application to retaliatory conduct.

Similarly, the defendant's reading of "witness" as it is contemplated by the statute is too constricted; he dismisses the applicability of § 13B because there was "no possibility that [the people the defendant showed the report and emails to] would be called to testify against him about the assault on Minor A." [D.Mot. at 12.] The defendant's analysis on this point fails, however. A "witness" isn't defined by just potential *testimony*; the statute protects any "person who is a: (A) witness or potential witness; [or] (B) person who is or was aware of information, records, documents or objects that relate to a violation of a criminal law." M.G.L. c. 268, § 13B(b).

Moreover, there is no requirement, as the defendant suggests, that the government demonstrate "an expression of menace to the alleged victim's person or property." [D.Mot. at 13.]

**JA: 31**

In fact, the Supreme Judicial Court has long held to the contrary. See, e.g., Commonwealth v. Robinson, 444 Mass. 102, 109 (2005) (citing Commonwealth v. Gordon, 44 Mass. App. Ct. 233 (1998) for proposition that defendant's behavior can still qualify as intimidation even if not overtly threatening). All of the cases the defendant cites in support of this contention predate the significant overhauling of the statutory text in intervening years. *Now*, a defendant brings himself within the scope of the statute when he "threatens," "misleads," "intimidates," or "harasses" one of the people protected by the statute. M.G.L. c. 268, § 13B(b).

While the "misleading" prong is typically charged in connection with a "police officer" as its target, its application has not actually been expressly limited by statute or common law. The Supreme Judicial Court has noted that, given Massachusetts courts' construction of the statute as it has evolved over the years and in light of the underlying statutory purpose, "it seems evident that whether a statement is 'misleading' for purposes of § 13B depends on whether it reasonably could lead investigators to pursue a course of investigation materially different from the course they would have otherwise pursued." Commonwealth v. Paquette, 475 Mass. 793, 801-802 (2016). Nonverbal conduct may also satisfy this prong of the statute, when "it was intended to create a false impression in the mind of another and, if so, whether such conduct was reasonably likely to lead the investigation in a materially different, or wrong, direction." Commonwealth v. Tejeda, 476 Mass. 817, 819-820 (2017).

Here, the defendant's impersonation of Officer Phelps in an imaginary email chain; fabrication of the State Police report; presentation of both to multiple parents who, if allegations involving Minor A came to light, would certainly be potential witnesses or at least aware of information relevant to a violation of a criminal law; statements to those parents that he had been "cleared" of supposed wrongdoing; and efforts to convince Minor B's mother to tell the police that

he had "done nothing wrong" all demonstrate an elaborate and well-thought out attempt to steer investigators toward a "course of investigation materially different from the course they would have otherwise pursued." Paquette, 475 Mass. at 801-802. Under the totality of the circumstances, Puricelli's affidavit established a fair probability that evidence of violations of M.G.L. c. 268, § 13B would be found in the defendant's residence.

### 3.   Unauthorized Access to a Computer, M.G.L. c. 266, § 120F

M.G.L. c. 266, § 120F provides, in pertinent part:

> Whoever, without authorization, knowingly accesses a computer system by any means, or after gaining access to a computer system by any means knows that such access is not authorized and fails to terminate such access, shall be punished…

> The requirement of a password or other authentication to gain access shall constitute notice that access is limited to authorized users.

There is a dearth of case law interpreting this provision. A plain reading of the statute, however, shows that the affidavit contained sufficient facts to establish probable cause that evidence of a violation would be found in the place to be searched.

The affidavit established that Minor A had an Apple account that was password-protected, that the defendant logged into that account without Minor A's knowledge or consent, and that he did so using computer devices from his home. The defendant was not authorized to access Minor A's account. See, e.g., Commonwealth v. Piersall, 67 Mass. App. Ct. 246 (2006) (defendant liable under statute for accessing ex-wife's email account with password gleaned from minor daughter).

The defendant's argument to the contrary is unavailing. [D.Mot. at 15.] Regardless of whether Minor A realized that the defendant had his login information, the defendant was not authorized to access his account, which is plainly obvious given the purpose for which witnesses accused him of doing so: to spy on Minor A. The defendant was therefore potentially liable under the statute. See, e.g., Cheng v. Romo, 2012 WL 6021369 at *3-4 (D.Mass. 2012) (in denying

motion for summary judgment of civil complaint for violation of analogous provision of Stored Communications Act, noting that whether plaintiff gave defendant password was not determinative in evaluating whether defendant was authorized or exceeded authorization to access plaintiff's email account). The affidavit established probable cause to believe the statute had been violated and that evidence of said violation would be found in the defendant's home.

### 4. Identity Fraud, M.G.L. c. 266, § 37E

M.G.L. c. 266, § 37E provides, in pertinent part:

(b) Whoever with intent to defraud, poses as another person without the express authorization of that person and uses such person's personal identifying information to obtain or attempt to obtain … anything of value, … or to harass another…shall be guilty of identity fraud[.]"

When the defendant posed as Officer Rick Phelps, as outlined above, he did so specifically to avoid prosecution (or, at least, scrutiny from law enforcement).[11] A common sense reading of the statute supports the argument that attaining that goal would surely qualify as something of value.

However, less than five months before Puricelli submitted her affidavit to the clerk magistrate, the Supreme Judicial Court rejected the government's argument that "anything of value" could refer to intangible benefits in Commonwealth v. Escobar, 479 Mass. 225 (2018) (providing false name to police officer to avoid prosecution did not involve attempt to obtain "anything of value"). The government concedes that this new case law addresses the issue raised by the defendant here, and resolves it in the defendant's favor. But, neither Puricelli nor the clerk

---

[11] The defendant's plan was convoluted; he fabricated the emails and State Police report to convince the parents in his orbit that he had *already been* investigated and cleared so that, if Minor A or one of his friends *did* disclose his *true* crime, the parents would mistakenly believe that it had already been dealt with, and would thus be discouraged from sharing information with the police.

magistrate who issued the warrant should be faulted for finding probable cause to believe the defendant's misappropriation of Officer Rick Phelps's identity in order to avoid law enforcement scrutiny for crimes he was accused of committing against Minor A brought him within the scope of the statute. Just over one year earlier, a panel of the Massachusetts Appeals Court ruled that a defendant who presented a stolen license to an officer who pulled her over for speeding was properly prosecuted under the statute because her "ability to drive despite her license being suspended certainly qualifies as something of value." Commonwealth v. Ney, 91 Mass. App. Ct. 1107 at *2 (2017) (unpublished). Where an objectively reasonable officer would not necessarily have been aware of this new (March 2018) case in August 2018, suppression would have no deterrent effect and thus is not warranted. United States v. Brunette, 256 F.3d 14, 20 (1st Cir. 2001) (applying Leon good-faith exception where law unsettled).

### 5. Even if the affidavit did not supply probable cause, the Leon good-faith exception applies.

Even if this Court finds that the clerk magistrate erred in issuing the search warrant, on any or all of the bases described above, the defendant's motion to suppress must be denied because the officers executing the warrant acted in objectively reasonable reliance on it. Supreme Court precedent dictates that suppression is a remedy of last resort, to be used for the sole purpose of deterring future Fourth Amendment violations, and only when the deterrence benefits of suppression outweigh its heavy costs. Davis v. United States, 564 U.S. 229, 237 (2011); Herring v. United States, 555 U.S. 135, 140-41 (2009). "The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." Id. (citing Illinois v. Gates, 462 U.S. 213, 223 (1983)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully

deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring, 555 U.S. at 144.

These principles are reflected in the good-faith exception to the exclusionary rule articulated in Leon: when police act in "objectively reasonable reliance on a subsequently invalidated search warrant" obtained from a neutral and detached magistrate, "the marginal or nonexistent benefits produced by suppressing evidence . . . cannot justify the substantial costs of exclusion." United States v. Leon, 468 U.S. 897, 922 (1984). The good-faith exception thus recognizes that, "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . there is no police illegality and thus nothing to deter." Id. at 920-21.

The good-faith exception cannot apply in certain clearly-delineated situations: where the issuing judge was misled by information in the affidavit; where the issuing judge wholly abandoned his judicial role; where the warrant affidavit is so lacking in probable cause "as to render belief in its existence entirely unreasonable;" and where the warrant fails to identify with particularity the place to be searched or things to be seized so that agents could not reasonably presume it to be valid. United States v. Levin, 874 F.3d 316, 322 (1st Cir. 2017) (citing Leon at 923 and United States v. Woodbury, 511 F.3d 93, 99 (1st Cir. 2007)).

Here, none of these four exclusions to the good-faith exception apply. As discussed in more detail below, Puricelli did not mislead the clerk magistrate, there is nothing in the record to suggest that the clerk magistrate "wholly abandoned" his role in issuing the warrant, and the warrant was exceedingly particular in identifying the place to be searched and the things to be seized. Furthermore, for the reasons outlined above, the warrant did *not* lack probable cause. Puricelli and her colleagues acted in objective good faith in obtaining the search warrant and acted

within its scope, and there is no illegal behavior to deter.  <u>Leon</u>, 468 U.S. at 920-921.  The motion must therefore be denied.

**B.     The first warrant was not unconstitutionally overbroad.**

The defendant advances several arguments to support his complaint that the first warrant was unconstitutionally overbroad.  First, he contends that the search for "every media or electronic device, whether or not it was capable of generating or storing the items sought in the search" and "regardless of ownership" rendered the warrant invalid.  [D.Mot. at 18.]  He also argues that the warrant sought devices without offering proof that the defendant actually owned them.  [D.Mot. at 22.]

"General warrants authorizing the wholesale rummaging through a person's property are invalid."  <u>United States v. Kuc</u>, 737 F.3d 129, 133 (1st Cir. 2013) (internal citations omitted).  "To satisfy the particularity requirement, a search warrant 1) must include sufficient information to guide and control the judgment of the executing officer in deciding where to search and what to seize and 2) cannot be overbroad or include items that should not be seized."  <u>Id.</u>  The search and seizure conducted under a warrant must conform to the warrant.  <u>United States v. Upham</u>, 168 F.3d 532, 536 (1st Cir. 1999).

The defendant concedes that the crimes referenced in the warrant could have involved the use of an email account, an Apple account, and the printing of a publicly available State Police logo.  [D.Mot. at 19.]  He fails to assert, however, how or why any of the items specifically enumerated in Attachment 1 to the first search warrant (appended hereto as Exhibit B) are not sufficiently particularized.  The attachment to the affidavit lists less than two pages' worth[12] of

---

[12] The actual attachment is four pages, but a significant portion is consumed by a recitation of the relevant state statutes.

specific items to be seized, many of which are related to the storage, manipulation, and sending of computer data (Items A, C, D, E, M,[13] N, O, P, Q, R, and S) – a category that, by the defendant's own concession, might contain evidence of the crimes laid out in the affidavit.  Despite the defendant's allegation to the contrary [D.Mot. at 22], the affidavit did, in fact, contain information that the defendant specifically owned many of these items.  [SW35 Aff. ¶ 4(c)(11).]  The clerk magistrate who issued the warrant need not have "presumed" that he owned such things.  The affidavit explicitly indicated that he did.

Furthermore, the attachment to the affidavit identifies not only the types of items to be seized, but also the types of files to be searched for in those items.  Contrary to the defendant's claim, this was not styled as a "general warrant."  [D.Mot. at 20.]  For example, Item M seeks permission to search various types of files "relevant to the report of" each of the asserted crimes at issue.  [SW35 Att. 1.]  Items M through S are further specifically tied to "the aforementioned violations of Massachusetts General Law which are under investigation."  Id.  The warrant is sufficiently particularized to withstand constitutional scrutiny.  United States v. Kuc, 737 F.3d at 133-134.  A challenge to the particularity of the affidavit, under these circumstances, must fail. See, e.g., United States v. Carruthers, 2009 WL 4738186 at *5 (D.Mass. 2009) (warrant listing specific computer-related items capable of storing, manipulating, and sending data not lacking in particularity).

To the extent the warrant is flawed in the way the defendant claims it to be, blanket suppression is not the answer.  United States v. Riggs, 690 F.2d 298, 300-301 (1st Cir. 1982).  For example, if the Court agrees with the defendant that the affidavit doesn't draw a sufficient nexus to "MP3 players" [D.Mot. at 22] or information about the Snapchat username "Dank Stank"

[13] "M" is used twice, on pages 2 and 3 of the attachment; both fit into this category of data.

**JA: 38**

[D.Mot. at 24], the Court should suppress any MP3 players seized.  Finally, even if this Court finds that the language in the affidavit violated the particularity requirement of the Fourth Amendment, the good-faith exception to the exclusionary rule would apply.  Kuc, 737 F.3d at 134.  The motion to suppress, on these grounds, should be denied.

**C.    The search was not executed overbroadly.**

The defendant next argues that the search was overbroadly executed, in that a phone was seized from the person of Nichole Sheehan, in direct contravention to the face of the warrant, and in that investigators opened files not pertaining to the crimes outlined in the first warrant.  [D.Mot. at 25-26.]

As an initial matter, the first warrant return does not indicate the location from where the defendant's iPhone was seized.  The return merely indicates that it was seized pursuant to the warrant.  [SW35 Ret.]  The government is unclear as to the basis for the defendant's contention that the phone was seized as part of a "warrantless search."  [D.Mot. at 25.] [14]

The defendant also argues that the affidavit did not supply a basis to believe that there would be photographs or videos of an incriminatory nature, and therefore, the officers never should have reviewed video media in executing the search warrant.  [D.Mot. at 26.]  This argument, it appears, is really an extension of the argument made above – that the affidavit does not draw a sufficient nexus between the type of file to be searched (videos) and the crimes for which the affidavit established probable cause.  Styled as it is, however, it must fail. [15]  First, the affidavit submitted in support of the second warrant indicated that a trooper conducting a forensic analysis

---

[14] Rather than engage in a hypothetical analysis here, the government reserves argument on this point for a hearing on the motions or, if it would be helpful to the Court, in a separate briefing.

[15] To the extent the Court agrees that the affidavit did not draw a sufficient nexus to videos, the good-faith exception applies, for the reasons outlined above.

**JA: 39**

of the defendant's phone pursuant to the first warrant observed *pictures* he believed to be child pornography. This mistake of fact eviscerates the argument; the defendant does not suggest—nor could he, given the facts laid out in the affidavit regarding pictures of the Massachusetts State Police report—a deficient nexus between that type of media and the alleged crimes. The warrant, authorized by a detached and neutral clerk magistrate, allowed officers to search for pictures or images. In the absence of an allegation that the magistrate abandoned that detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit. Leon, 468 U.S. at 926. That is not the case here, and as such, the "extreme sanction of exclusion is inappropriate." Id.

> **D.      The second warrant was properly issued, where it established probable cause to believe the specified items would contain evidence of child pornography.**

In executing the first warrant, Trooper Hart observed images on the defendant's phone that he believed to be child pornography. [SW36 Aff. ¶ 4(b)(3).] Relying on the First Circuit's decision in United States v. Brunette, 256 F. 3d 14 (1st Cir. 2001), the defendant argues that, because Puricelli did not submit copies of the child pornography that Trooper Hart observed, the affidavit lacks probable cause and the fruits of the warrant should be suppressed. [D.Mot. at 30.] If this were an affidavit submitted to a federal magistrate judge in the District of Massachusetts (or elsewhere in the First Circuit), the government might agree. However, it was not; it was submitted to a clerk magistrate of a state district court. As such, while the First Circuit's opinion in Brunette may be instructive, it is not binding precedent. "Although we give respectful consideration to such lower Federal court decisions as seem persuasive, we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of federal law." Commonwealth v. Pon, 469 Mass. 296, 308 (2014) (internal quotations omitted). The government is unaware of any Supreme Court or Massachusetts state court case that adopts the "best practice"

outlined in <u>Brunette</u>.  As such, neither Puricelli nor the clerk magistrate who issued the second warrant should be held to its standard.

To establish probable cause, an affidavit need only establish a "fair probability" that evidence of particular crime will be found in particular locations.  <u>Commonwealth v. Anthony</u>, 451 Mass. 59, 72 (2008).  "An inference drawn from the affidavit, if not forbidden by some rule of law, need only be reasonable and possible…not necessary or inescapable."  <u>Commonwealth v. Molina</u>, 476 Mass. 388, 394 (2017) (internal quotations omitted).  Here, Puricelli's affidavit, when examined "in a common sense manner,"  <u>Syphers</u>, 426 F.3d at 465, establishes such a probability, where it indicates that Trooper Hart observed pictures of prepubescent penises lacking pubic hair.  [SW36 Aff. ¶ 4(b)(3).]   The clerk magistrate thus properly issued the warrant to search the specified devices for further evidence of child pornography.

Once again, even if this Court determines that the affidavit lacked probable cause, the defendant's motion to suppress must be denied because the officers executing the warrant acted in objectively reasonable reliance on it and the good-faith exception applies.

## II.      <u>The defendant's motion for a *Franks* hearing must be denied.</u>

Affidavits executed in support of a search warrant enjoy a presumption of validity.  <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).  A defendant may be entitled to a hearing to contest the factual validity of an affidavit only if he makes a "substantial preliminary showing" on two issues.  <u>Franks</u>, 438 U.S. at 170.  First, the defendant must make a showing of "deliberate falsehood or of reckless disregard for the truth" regarding specific portions of the warrant affidavit; "negligence or innocent mistake" will not suffice.  <u>Id.</u> at 171.  If the defendant alleges that the officer was reckless, the defendant must show that "the affiant in fact entertained serious doubts as to the truth of the allegations." <u>United States v. Ranney</u>, 298 F.3d 74, 78 (1st Cir. 2002) (internal quotations omitted).

Second, even if the defendant makes this showing, he is not entitled to a <u>Franks</u> hearing if, "when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause." <u>Id.</u> at 171-72. In other words, the defendant must show that the allegedly false statement was "necessary to the finding of probable cause." <u>United States v. Reiner</u>, 500 F.3d 10, 14 (1st Cir. 2007) (quoting <u>Franks</u>, 438 U.S. at 155-56).

"A defendant's failure to make a showing on either of these two elements dooms his challenge." <u>United States v. Owens</u>, 917 F.3d 26, 38 (1st Cir. 2019) (internal quotations omitted). If these two requirements are met, the defendant may then try to establish by a preponderance of the evidence that the search warrant affiant in fact committed perjury, and that the non-perjurious content of the search warrant affidavit would have been insufficient on its own to establish probable cause, thereby requiring that the search warrant be voided and its fruits suppressed. <u>Franks</u>, 438 U.S. at 156.

In announcing this rule, the Supreme Court emphasized that it "has a limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." <u>Id.</u> at 167. The First Circuit has aptly characterized these requirements as "clear" and "exacting standards" that a defendant must satisfy to obtain a <u>Franks</u> hearing. <u>United States v. Higgins</u>, 995 F.2d 1, 3 & n.3 (1st Cir. 1993). Because these standards are so high, the First Circuit, more than 20 years after the <u>Franks</u> decision, specifically cited <u>Franks</u> and its requirement for a substantial preliminary showing when observing that "evidentiary hearings on motions in criminal cases are the exception, not the rule." <u>United States v. Alicea</u>, 205 F.3d 480, 487 (1st Cir. 2000).

**JA: 42**

The <u>Franks</u> framework has been extended to the omission of material information from search warrant affidavits.  "In the case of an omission, 'suppression should be ordered only if the warrant application, . . . clarified by disclosure of previously withheld material, no longer demonstrates probable cause.'" <u>United States v. Reiner</u>, 500 F.3d 10, 14 (1st Cir. 2007)(quoting <u>United States v. Stewart</u>, 337 F.3d 103, 105 (1st Cir. 2003)) (alteration in original).  Thus, "the inquiry is whether [the omission's] inclusion in an affidavit would have led to a negative finding by the magistrate on probable cause." <u>United States v. Castillo</u>, 287 F.3d 21, 25 n.4 (1st Cir. 2002). The omission still must be intentional or reckless: "even if the facts omitted from the warrant application were material, either individually or in the aggregate, that determination alone does not suffice to show that a <u>Franks</u> violation occurred. 'Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate.'" <u>United States v. Belton</u>, 414 F. Supp. 2d 101, 111 (D.N.H. 2006) (<u>quoting United States v. Colkley</u>, 899 F.2d 297, 301 (4th Cir. 1990))(collecting cases), <u>aff'd</u>, 520 F.3d 80 (1st Cir. 2008).

Here, the defendant asserts three claims in support of his motion for a <u>Franks</u> hearing: 1) Puricelli included facts about an interview of Minor B in the affidavit that were not documented in a report of that interview; 2) Puricelli intentionally misled the clerk magistrate by omitting information about Minor A's knowledge regarding the defendant's access to Minor A's Apple account; and 3) Puricelli intentionally, or with reckless disregard for the truth, omitted a first-hand description of or picture of the State Police report.

The defendant has not made (and cannot make) the requisite substantial preliminary showing required for a hearing (much less prove that a <u>Franks</u> violation occurred) because he has failed to establish the intentionality and materiality of the alleged misstatement.  Furthermore, as

**JA: 43**

a matter of law, the alleged omissions do not rise to the requisite level of materiality (i.e., they cannot eviscerate the finding of probable cause) and there is no basis for concluding that any omission was designed to mislead or made in reckless disregard of whether it would mislead the reviewing clerk magistrate.

The defendant's claim that Puricelli "adds a number of more sinister facts that appear to not have actually been stated by Minor B," [D.Mot. at 6], is baseless.[16]  First, the Massachusetts State Police report indicates, in the first paragraph, that the troopers met with Puricelli and another Norwell Police detective, and that Minor B's mother consented to having all four officers present for the interview.  Def. Exh. C ¶ 1.  The defendant's claim that Puricelli was not present is, plainly, wrong.  Second, the trooper indicated in the report that the interview was recorded and that the report was a "brief summary of the interview."  Id.  The defendant's contention that the trooper "recited the facts as he heard them" is also, plainly, wrong.  The defendant has thus failed to demonstrate that his request to hold an evidentiary hearing "to determine where these additional facts came from" is based on a substantial showing of either intentionality or materiality, and his motion on this ground must fail.

The defendant's second basis similarly fails to justify his request for a Franks hearing.  The defendant speculates that "reasonable diligent police officers would have asked Minor A how the phone account was created" and "Minor A told police that account was created by Sheehan," and concludes that Puricelli must have intentionally omitted that fact from the affidavit.  [D.Mot. at 7.] Speculation is not enough to meet the "clear and exacting standard" required by Franks, and the defendant has proffered no concrete reason to believe that a) Minor A actually made such a

---

[16] As set forth in footnote 2, the government adopts the defendant's naming convention for Minor B purposes of the litigation of this motion.

statement and b) Puricelli either intentionally or recklessly omitted that fact. Furthermore, even if the defendant were able to make a substantial showing that such a statement existed, he would not be able to show that its inclusion was necessary to establish probable cause.[17] Having failed to make a showing on either of the two elements, the defendant's motion on this ground is doomed. Owens, 917 F.3d at 38.

Finally, the defendant claims that if Puricelli had included a first-hand description of the purported Massachusetts State Police report in her affidavit, the clerk magistrate would have concluded that it "looks nothing like an actual Massachusetts State Police Report." [D.Mot. at 8.] Apart from the fact that the defendant's argument is premised on pure speculation as to how the clerk might have judged the defendant's handiwork, this argument is fatally flawed in that it presumes that the civilians who were tricked into believing that the defendant had been "cleared" after an investigation—a ploy designed to divert suspicion from him in the case that any of his minor victims disclosed his bad behavior—would know what a "real" report would look like. The defendant cannot establish a) what a "real" report "looks" like or b) whether the civilians involved would or should know what a "real" report "looks" like. Thus any "omission" in that vein would be completely immaterial to the clerk magistrate's assessment of probable cause. His motion on these grounds, again, fails.

The defendant has made no showing, let alone a substantial one, to necessitate a Franks hearing. As such, the motion should be DENIED.

---

[17] See above at pages 14-15 for discussion of the sufficiency of the affidavit.

**JA: 45**

**CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that this Court DENY the defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants and Motion for a <u>Franks</u> Hearing.

Respectfully Submitted,

ANDREW E. LELLING
United States Attorney

Date: July 24, 2019          By:    /s/ Anne Paruti_____
                                    Anne Paruti
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    One Courthouse Way
                                    Boston, MA 02210
                                    617-748-3310

* * * * * *

<u>**CERTIFICATE OF SERVICE**</u>

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic filing:

Date: July 24, 2019          /s/ Anne Paruti_____
                             Anne Paruti
                             Assistant United States Attorney

```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3     * * * * * * * * * * * * *
       UNITED STATES OF AMERICA    *
 4                                 *    CRIMINAL ACTION
                    v.             *    No. 18-10391-RGS-1
 5                                 *
       DEREK SHEEHAN               *
 6     * * * * * * * * * * * * *

 7

 8

 9              BEFORE THE HONORABLE RICHARD G. STEARNS
                    UNITED STATES DISTRICT JUDGE
10                          MOTION HEARING
                          September 20, 2019
11

12     APPEARANCES:

13          UNITED STATES ATTORNEY'S OFFICE (By AUSA Anne
       Paruti), 1 Courthouse Way, Suite 9200,  Boston,
14     Massachusetts, 02210, on behalf of the United States of
       America
15
            LAW OFFICE OF WILLIAM KEEFE, (By William Keefe,
16     Esq.), 801C Tremont Street, Boston, Massachusetts
       02118, on behalf of the Defendant
17

18

19

20

21                                   Courtroom No. 21
                                     1 Courthouse Way
22                                   Boston, Massachusetts 02210

23
                          James P. Gibbons, RPR, RMR
24                          Official Court Reporter
                          1 Courthouse Way, Suite 7205
25                          Boston, Massachusetts  02210
                            jamesgibbonsrpr@gmail.com
```

**JA: 47**

```
 1                  P R O C E E D I N G S

 2           THE CLERK:  All rise.

 3       (Whereupon, the Court entered the courtroom.)

 4           THE CLERK:  Court is open.  You may be seated.

 5       This is Criminal Action No. 18-10391, United States of

 6   America versus Derek Sheehan.

 7       Would counsel please identify themselves for the

 8   record.

 9           MS. PARUTI:  Good afternoon, your Honor.  Anne

10   Paruti for the government.

11           MR. KEEFE:  Good afternoon, Judge.  For the record,

12   my name is William Keefe, and I'm at counsel table with

13   Mr. Derek Sheehan, my client.

14           THE COURT:    Okay.

15       Let me just give you my view at the moment of the case

16   and why I may, unless you can persuade me I am wrong, ask

17   you to re-brief this issue.

18       The motion to suppress is a motion that seems to me to

19   be addressed to a state court, not to a federal court.  In

20   fact, the word "Commonwealth" is used almost throughout the

21   brief.  Most of the cases cited are Massachusetts cases, and

22   the statutes that are referred to are Massachusetts

23   statutes.

24       As I understand it, the argument is that the affidavit

25   failed to establish a viable violation of Massachusetts law.
```

**JA: 48**

```
1    Therefore, there was no probable cause for the search.
2         It's been true for almost 60 years that evidence
3    gathered by state authorities that is in conformity with
4    federal law is admissible in federal proceedings without
5    regard to state law.
6         That was Elkins v. United States, 364 U.S. 206 (1960),
7    underscored by United States v. Sutherland in the First
8    Circuit, 929 F.2d 756 (1991).  This is true even when the
9    evidence "is obtained pursuant to a state search warrant or
10   in the course of a state investigation," and it is true even
11   if the state court suppresses the evidence.
12        The question is not what the import of state law was on
13   the affidavit.  It is whether -- and the government is
14   trying to use, that is the federal government, the same
15   evidence in federal court -- the warrant complied with
16   federal law.
17        Let me just say, even with respect to some of the
18   Massachusetts statutes, I think you both are kind of missing
19   the fact that this 13B has been amended four or five times
20   in the last 12 years, most recently effective April of 2018.
21   And actually the statute says something far different from
22   the way it was interpreted in the mid 2000s.  I would
23   suggest you look at the more recent Figueroa case from the
24   Supreme Judicial Court for an understanding how the SJC
25   interprets the statute today.
```

**JA: 49**

```
 1        So unless I'm wrong, I think you both have addressed
 2    the wrong issue.  I mean, my issue is, as I understand it,
 3    the offense being pursued in federal court is a child
 4    pornography possession offense.  And it seems to me that
 5    that is the issue, unless I am missing something about what
 6    is happening here.
 7        Ms. Paruti?
 8        MS. PARUTI:  So the offense being prosecuted here
 9    is production of child pornography, not possession.  I don't
10    think that distinction matters for what the Court is saying.
11            THE COURT:  No, it doesn't.
12        So the issue is whether this warrant established
13    probable cause to believe that there would be evidence
14    connected with the federal crime being prosecuted, not
15    whether you could have sustained a state court prosecution,
16    which I have no ultimate opinion on, although I think you
17    probably could have if you were a resourceful prosecutor.
18            MS. PARUTI:  So I think the way that the government
19    interpreted the defendant's motion is that because the
20    evidence that the federal government is relying on for the
21    federal prosecution came as from the fruits of the state
22    search warrant, that the defendant's only -- my
23    understanding of the argument is that the defendant then has
24    a right to challenge whether or not that evidence was
25    lawfully obtained.
```

**JA: 50**

1    And in this case, because there was a search warrant,

2    his only avenue to making that challenge is as he has made

3    it:  One, in challenging the sufficiency of the affidavit to

4    the extent it establishes probable cause to believe that

5    evidence of X crime would be found in Y location.

6    And the government agrees with everything that the

7    Court said as far as how this Court would -- assuming that

8    it was proper for this Court to evaluate the validity of

9    that search warrant, given that the evidence for this

10   federal crime came from that state search warrant, that the

11   government need only -- or the Court need only find that the

12   search warrant itself comported with federal law.  And that

13   is the analysis that the government has undertaken in its

14   response to the argument the defendant has set forth.

15   THE COURT:  Okay.  But I think the premise is

16   faulty.

17   Going back again to *Elkins*, it's sometimes called the

18   "reverse silver platter doctrine."

19   And the case you want to look at in the First Circuit

20   is *United States v. Soule*, 908 F.2d 1032 (1990), which

21   basically holds that evidence gathered under a state warrant

22   need not even be compliant with Federal Rule of Criminal

23   Procedure 41(a).  It just has to be substantially within

24   conformity of what federal law requires to be admissible.

25   The only exception that some courts have recognized is

```
1    that where the federal government instigates and
2    participates in the state investigation and the state
3    seizure of evidence, and, therefore, becomes jointly liable
4    from mistakes made in the state court, some courts would
5    say, Well, then there might be an issue of suppression.
6         Most actually wouldn't under current doctrine.  We are
7    a separate sovereign court, and while we respect state law
8    and state decisions, they do not control what we do here.
9         So, Mr. Keefe, I do not want to put your client at a
10   disadvantage, so I would like to give you a chance to go
11   back and relook at the issue in terms of whether you think
12   under federal law there was probable cause.
13        I'm not offering an opinion on that.
14        MR. KEEFE:  Yes.
15        So, your Honor, just to reiterate, what had been said
16   earlier was it's a child pornography production-related case
17   here in federal court.
18        It was not a child pornography investigation, and the
19   investigation focused on these four state court crimes.  And
20   that was what the issuing Hingham District Court judge
21   reviewed and based his authorization for the warrant to be
22   issued on.  And that's the argument that I made, and I think
23   it's a good argument, that it lacks probable cause for each
24   of the four offenses.
25        THE COURT:  That would be a great argument in the
```

1    state court, and it might be a great argument here, but not

2    because Massachusetts law was not implicated.

3        I think what I can do that would be most helpful to

4    both of you is I will give you, even by the end of today or

5    maybe Monday at the latest, just a quick memorandum

6    explaining my understanding of the relationship between

7    federal and state law as it affects search warrants and

8    whether evidence is or is not admissible in federal court.

9        Then you do not have to worry about having written down

10    these citations, because this is actually from a rough draft

11    of what I would have otherwise started to write, and then I

12    realized that we are talking about the wrong issue almost

13    all the way through the brief.

14        MR. KEEFE:  And is the Court contemplating further

15    filings?

16        THE COURT:  Yes.  I want to give you a chance.

17    Your client ought to have an opportunity.  Originally, this

18    was all, I assume, gathered with the thought of a state

19    prosecution.  The federal government then stepped in --

20        MR. KEEFE:  Correct.

21        THE COURT:  -- and took over the prosecution.

22        And I can see lot of the work you did was thinking of

23    the state court prosecution.

24        I want to give you a chance to address the federal

25    prosecution, which doesn't really relate to any of the state

```
 1    offenses that are otherwise alleged in the affidavit.

 2        But let me give a quick memorandum of guidance as to

 3    the cases that I am relying on.  And then I think it would

 4    be more productive if I have Tim set out a new briefing

 5    schedule to give you a chance to refile.

 6        Okay?

 7            MR. KEEFE:  Very good.

 8            MS. PARUTI:  Yes.  That would be great.

 9            MR. KEEFE:  Thank you, your Honor.

10            MS. PARUTI:  Thank you.

11            THE COURT:  Thank you, and I will try to have

12    something by today or Monday morning at the latest.

13            THE CLERK:  All rise.

14        Court is in recess.

15        (Proceedings adjourned.)
```

## C E R T I F I C A T E


    I, James P. Gibbons, Official Court Reporter for the

United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.


    /s/James P. Gibbons        October 7, 2022
       James P. Gibbons



      JAMES P. GIBBONS, CSR, RPR, RMR
        Official Court Reporter
     1 Courthouse Way, Suite 7205
     Boston, Massachusetts 02210
      jamesgibbonsrpr@gmail.com

**JA: 55**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 18-10391-RGS

UNITED STATES OF AMERICA

v.

DEREK SHEEHAN

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO SUPPRESS

September 20, 2019

STEARNS, D.J.

As the court noted at this afternoon's hearing, both parties have briefed the motion to suppress on the issue of whether the warrant issued by the Massachusetts state court complied with Massachusetts law, particularly with respect to identifying a viable prosecution under Massachusetts law. The court believes that the fundamental premise is mistaken for the following reasons. It has long been established that evidence gathered by state or federal authorities in conformity with federal law is admissible in federal proceedings without regard to state law. *Elkins v. United States*, 364 U.S. 206, 224 (1960); *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991). This is true even when the evidence "is obtained pursuant to a state search warrant or in the course of a state investigation." *United States*

**JA: 56**

*v. Mitro*, 880 F.2d 1480, 1485 n.7 (1st Cir. 1989). This is true even in instances where a state court has issued a motion to suppress involving the same warrant based either on state law or the state court's interpretation of federal law. *Virginia v. Moore*, 553 U.S. 164, 171-176 (2008); *United States v. Charles*, 213 F.3d 10, 19 (1st Cir. 2000). *See Olmstead v. United States*, 277 U.S. 438 (1928) (evidence gathered by federal agents in contravention of a state statute); *United States v. Quinones*, 758 F.2d 40, 43 (1st Cir. 1985) (same); *United States v. Aiudi*, 835 F.2d 943, 946 (1st Cir. 1987) (evidence gathered in contravention of state law by state authorities acting in concert with federal agents); *United States v. Kovac*, 795 F.2d 1509, 1511-1512 (9th Cir. 1986) (same). *See also United States v. Pforzheimer*, 826 F.2d 200, 202-204 (2d Cir. 1987) (evidence gathered illegally under state law by state officials without federal participation); *United States v. One Parcel of Real Property*, 873 F.2d 7, 8 (1st Cir. 1989) (same); *United States v. Jarabek*, 726 F.2d 889, 900 (1st Cir. 1984) (same).

Moreover, evidence gathered under a state warrant is admitted in federal proceedings if the warrant substantially complies with federal law; strict adherence to Fed. R. Crim. P. 41(a) is not required so long as the state

**JA: 57**

warrant process comports with federal due process requirements.  *United States v. Soule*, 908 F.2d 1032, 1038-1039 (1st Cir. 1990).[1]

In that this case was undertaken by state authorities with a state prosecution in mind and then, for whatever reason, ceded to the federal government for prosecution under a federal crime, in fairness to the defendant the court believes that he (and the government) should have the opportunity to address the relevant issue: whether the affidavit supporting the warrant established probable cause under federal law for the search(es). The court offers no opinion on other issues raised by the defendant as, for example, overbreadth, and will leave those for the new round of briefing which the court now instructs the Clerk to schedule.

SO ORDERED.
/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[1] As an aside, while the Supreme Judicial Court has not definitively stated whether it endorses the so-called "reverse silver platter" doctrine, it implicitly has.  See *Commonwealth v. Gonzalez*, 426 Mass. 313, 317 (1997) (evidence lawfully gathered by federal authorities for federal purposes without any significant participation by state officers held admissible in Massachusetts courts even though the same evidence gathering, if engaged in by state officials, would violate art. 14 of the Declaration of Rights).

1              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
2

3    *  *  *  *  *  *  *  *  *  *  *  *  *
     UNITED STATES OF AMERICA    *
4                                *    CRIMINAL ACTION
              v.                 *    No. 18-10391-RGS-1
5                                *
     DEREK SHEEHAN               *
6    *  *  *  *  *  *  *  *  *  *  *  *  *

7

8

9            BEFORE THE HONORABLE RICHARD G. STEARNS
                 UNITED STATES DISTRICT JUDGE
10                     MOTION HEARING
                    November 15, 2019
11

12   APPEARANCES:

13        UNITED STATES ATTORNEY'S OFFICE (By AUSA Anne
     Paruti), 1 Courthouse Way, Suite 9200, Boston,
14   Massachusetts, 02210, on behalf of the United States of
     America
15
          LAW OFFICE OF WILLIAM KEEFE, (By William Keefe,
16   Esq.), 801C Tremont Street, Boston, Massachusetts
     02118, on behalf of the Defendant
17

18

19

20

21                             Courtroom No. 21
                               1 Courthouse Way
22                             Boston, Massachusetts 02210

23
                    James P. Gibbons, RPR, RMR
24                    Official Court Reporter
                 1 Courthouse Way, Suite 7205
25                Boston, Massachusetts  02210
                   jamesgibbonsrpr@gmail.com

**JA: 59**

```
 1                      P R O C E E D I N G S
 2            THE CLERK:  All rise.
 3       (Whereupon, the Court entered the courtroom.)
 4            THE CLERK:  Court is open.  You may be seated.
 5       This is Criminal Action No. 18-10391, United States of
 6  America versus Derek Sheehan.
 7            Will counsel please identify themselves for the record.
 8            MS. PARUTI:  Good morning, your Honor.  Anne Paruti
 9  for the government.
10            MR. KEEFE:  Good morning, your Honor.  William
11  Keefe for Mr. Sheehan.
12            THE COURT:  Let me apologize to all of you,
13  including the defendant, for the delay.  I should know by
14  now that whatever my powers are, they do not extend to
15  doctors' schedules.  So I just got back from a doctor's
16  appointment, which should have happened a long time ago, but
17  a lesson learned.
18       All right, I think, thanks to the supplemental
19  pleadings, we're now actually on the same page.
20       It seems to me the issues, though pretty much, with a
21  couple of permutations I suppose, remain the same; that is,
22  the probable cause issue is still before us.  And I am not
23  suggesting that state law and federal law are significantly
24  different the way "probable cause" is defined, but it is a
25  live issue.
```

```
 1          I think what is off the table are any deficiencies of a
 2   material nature with respect to the state procedures with
 3   respect to search warrants.  And I do not see that any
 4   material deviations with respect to Rule 41 are being
 5   alleged.
 6          It is still true though that state law and federal law
 7   are aligned on the issue of nexus between the object of the
 8   search and the evidence to be found.  I would be interested
 9   in counsels' view of that issue; that is, what was the
10   probable cause to believe that the searches conducted in
11   this case were actually going to yield evidence of, yes, the
12   state crimes that the police were investigating.
13          Perhaps the Franks issue -- again, it is a federal
14   issue that may be on the table.  I do not think the case for
15   a Franks hearing appears to me to be very strong, but I am
16   not precluding argument from counsel on the arrest issue.
17          So, Mr, Keefe, since it is a warranted search, I think
18   the burden is with you to go forward.
19          MR. KEEFE:  Thank you, your Honor.
20          Your Honor, the timeline of what happened here is that,
21   according to the search warrant affidavit, in the end of
22   June, June 28, a complaint is made to the Norwell Police
23   Department of an incident of an indecent touching of a
24   person described as "Minor A" in the search warrant
25   affidavit.  And the indecent touching took place some ten
```

1    months, ten months, beforehand, around the time of Labor Day

2    in 2017.  And the touching, the indecent assault on the

3    minor, took place on Cape Cod on a weekend trip between the

4    defendant's family and the minor.

5        The affidavit alleges further that in July and August

6    of 2018, when the Norwell Police and Massachusetts State

7    Police were investigating the indecent assault from almost a

8    year beforehand, they learned of -- I think what could be

9    described as some unusual behavior attributed to the

10   defendant.  And specifically they learned from the parents

11   of some other minors that the defendant was the subject of

12   rumors or chatter between some minor boys at the local

13   school.  And specifically there was a claim by one of the

14   minors that the defendant was a pedophile.

15       The police learned from these various parents that the

16   defendant created what he described as a "police report," a

17   State Police report, and it is described in the search

18   warrant affidavit as a document with the State Police logo

19   on it, and the contents of it are maybe 50-60 pages.  And

20   the contents of it contain text messages.

21       The defendant is also alleged to have shown the parents

22   of these various minors, not the parents of Minor A, not the

23   parents of the victim of the indecent assault and battery,

24   but the parents of other minors, he is alleged to have shown

25   them emails between a person named R. Phelps and himself.

1          The subject of the emails -- the substance of the

2     emails -- I don't know that it's alleged that the parents

3     ever read the actual content of the emails.  Likewise, I

4     don't know that the search warrant alleges that the parents

5     of these three minors actually read the contents of this

6     bogus State Police report.

7          But, at any rate, the parents do say, and it's the

8     parents of Minor B, C, and D, say a variety of things; that

9     they were shown a screenshot; that one of them met the

10     defendant at a Dunkin' Donuts one evening and was shown the

11     report.  It doesn't allege that he actually read any of the

12     contents of the report.

13          So based on that, the affiant and state troopers

14     investigate further.  They subpoena the records for an email

15     account of rphelps21@gmail.  They receive a reply from gmail

16     which provides the information of the account being created

17     sometime in April.  The name "R. Phelps" has some

18     significance.  According to the government, there is a

19     Norwell school police officer by the name of Rick Phelps.

20          So based on that information, the police are seeking in

21     the search warrant evidence of the emails between

22     R. Phelps and the defendant.

23          They're seeking -- I think they're seeking evidence of

24     maybe the downloading or the defendant's production or

25     printing of the supposed State Police report.

**JA: 63**

1          I suggest that the only thing they could be looking

2     for -- and it is an attachment.  I will hand it up in a

3     moment, your Honor, but the front page of the supposed

4     police report is this color-coated copy that I would hand up

5     to the Court, if I may?

6               THE COURT:  You may, of course.

7               MR. KEEFE:  It is already an attachment, but a

8     black-and-white attachment.

9          So the police are looking for really three things.

10         The other thing I neglected to say was that the

11    affidavit has information from one of the minor children

12    that the defendant is spying on Minor A, and that the

13    defendant at his residence on his home computer is able to

14    watch and read Minor A's text messages.

15         The affidavit also goes on to say that the defendant

16    actually created the account.  He created the Apple account.

17    He created the iPhone account of Minor A, created it and

18    created the password for Minor A.

19         So again, back to what the police are looking for and

20    this nexus issue.  The police are looking for evidence of

21    the email exchange between rphelps@gmail.com and the

22    defendant.  They're looking for, presumably, maybe the

23    downloading of the State Police logo, which is a public

24    domain item which anybody can download and print out.  But

25    that would appear the second thing that they're looking for.

**JA: 64**

```
 1    And they're looking for evidence of the defendant's
 2    unauthorized access to Minor A's computer, which they've, by
 3    the way, interviewed Minor A on multiple occasions.  They've
 4    done the SANE interview with him.  They've talked to the
 5    other minor who they learned maybe he is watching the kids'
 6    text message activity, but they also know that he is the one
 7    that created the account, created the password, and thus
 8    would be one who has authorized access to the account.
 9         So, your Honor, I do think on the nexus issue there is
10    no evidence in the affidavit as to when he possibly
11    downloaded the State Police logo, where he printed it out,
12    off of what device he may have printed it out.
13         The police know already that the gmail account was
14    created on a certain date in April, and they have the emails
15    and the email exchange already.
16         And then again on that last issue, the unauthorized
17    access to a computer, it states in the search warrant
18    affidavit that the defendant created the account.
19              THE COURT:  So I'm absolutely clear, created the
20    account for Minor A?
21              MR. KEEFE:  For Minor A, for the telephone account
22    that the other minor says that he's spying on this kids's
23    text messages.
24              THE COURT:  So you have the Minor A account and
25    then the Phelps account, the supposed Phelps account?
```

```
1              MR. KEEFE:  Correct.
2              THE COURT:  Okay.
3              MR. KEEFE:  So that's essentially the timeline,
4    your Honor.
5         Just arguing, not under state law or just federal law,
6    the thrust of the defendant's argument is that there is,
7    evaluating the affidavit under federal search warrant law,
8    no reasonable magistrate could make a substantial basis for
9    probable cause that any of the four crimes -- and the four
10   crimes are:  Witness intimidation, unauthorized access to a
11   computer, identity fraud, and impersonating a police
12   officer -- no reasonable magistrate could make a probable
13   cause finding that the conduct set forth in the four corners
14   of the search warrant affidavit satisfies a probable cause
15   standard that the defendant committed any of these crimes.
16        With respect to witness intimidation, your Honor,
17   whether it's a federal statute or a state statute, the
18   person --
19              THE COURT:  Here I think you are right.  It would
20   be the state statute we would look at because the police
21   were not thinking of federal crimes at the time.
22              MR. KEEFE:  Well, under that state statute and even
23   the federal statute, the person who is the subject of the
24   supposed intimidation has to be a witness, and there --
25   under state law there has to be a pending investigation or a
```

**JA: 66**

1    pending criminal case.  And there was neither here.

2        And the three witnesses that are possibly intimidated

3    are the parents of Minor B, the parents of Minor C, and the

4    parents of Minor D.  And each one of these parents -- Minor

5    B is shown the report several times.  There's no evidence

6    the parents of Minor -- the father of Minor B ever read the

7    report.  He's just told by the defendant that the defendant

8    was cleared of wrongdoing.

9        Minor C -- the parent of Minor C saw the report.

10   There's no allegation that Minor C attributes a statement to

11   the defendant that he was cleared of an investigation.  He's

12   just shown the report.

13       And then Minor D only sees a picture of it.  I think

14   Minor D's father saw a screenshot of the report.

15       And likewise with the R. Phelps emails, it is the

16   father of Minor A that receives a copy of the email

17   exchange.  No allegation that he read it.

18       And it's Minor C's mother that claims to see a

19   screenshot of the Rick Phelps email, no allegation that she

20   read or learned of what the content of what these emails

21   were.

22       At any rate, your Honor, there's no pending criminal

23   investigation.

24           THE COURT:  That isn't the law, though, is it, in

25   Massachusetts?

**JA: 67**

```
 1                MR. KEEFE:  It is.

 2                THE COURT:  Timing matters because the law changed

 3      in 2018.

 4                MR. KEEFE:  So the government cites the Zapatta

 5      [sic] case.

 6                THE COURT:  Zapatta or Fregatta [ph.]?

 7                MR. KEEFE:  Fregatta, yes, your Honor, where the

 8      defendant prevents his girlfriend in a domestic squabble

 9      from making a 911 call.

10          I think the distinction here is that there is not even

11      an allegation or scuttlebutt or a suspicion that the

12      defendant has committed a crime.  He is hearing through the

13      grapevine that a kid at the local school has made a

14      statement that he was a pedophile.

15          Now, with respect to either that or the indecent

16      assault and battery that took place on Cape Cod ten months

17      before on Labor Day weekend, the parents of Minor A, B, and

18      C are not witnesses to any of these events.  It might be a

19      little bit of a different story if there was actually an

20      allegation that the defendant had committed some kind of

21      crime and that the parents of these three minors were in

22      some way possibly witnesses to the crime that he was accused

23      of doing.  And that's not the case here, your Honor.

24          I spoke earlier, and I'm not going to repeat myself

25      about the unauthorized access to a computer, but it is
```

**JA: 68**

1    crystal clear from the affidavit that he created the

2    account.  And the inference from that is that when you

3    create an account you are an authorized user of the account.

4        The minor never made any attempt to change the login

5    password or user name.  The defendant remained an authorized

6    user or having authorized access to that account from the

7    date that he actually created it.  I did cite a case --

8            THE COURT:  When you say he created the account,

9    was it created in Minors A's name or in the defendant's

10   name?

11           MR. KEEFE:  I'm not sure that a --

12           THE COURT:  Or a generic name?

13           MR. KEEFE:  I am not sure that the affidavit

14   specifies as to what person's name the account was created

15   in.

16       "Mr. Sheehan had access to Minor A's Apple ID as

17   Mr. Sheehan helped create it a while ago.  Blank said that

18   Mr. Sheehan had access to Minor A's text, pictures, video,

19   through his Apple ID."

20       So it's not specific.

21       I think there's language in here that the account was

22   created with an email that is attributed to the defendant

23   and from his computer.

24       So I did cite a case, your Honor, *Shamrock Foods v.*

25   *Gast*, which says that Apple ID information stored in the

```
1    Cloud and not alleged to have accessed the actual cell phone
2    device doesn't violate the federal unauthorized access to a
3    computer statute.
4         This state court statute is a misdemeanor, and I think
5    the penalty for it carries a fine.  There's no --
6              THE COURT:  I think the elements would be pretty
7    much the same as the federal statute because that is what
8    the legislation was responding to is the --
9              MR. KEEFE:  They are similar, your Honor.
10             THE COURT:  -- federal statute.
11             MR. KEEFE:  So, your Honor, the identity fraud --
12   you know, the state court statute does require that the
13   defendant take the personal identification information of
14   someone else and use it to obtain something of value.
15             THE COURT:  I think the government more or less
16   concedes that point to you.
17             MR. KEEFE:  Yes.
18        And finally, the impersonation of a police officer,
19   your Honor, factually similar to what I just mentioned to
20   the Court in regards to the witness intimidation.  It's two
21   different things.  It's the State Police report that I have
22   handed up.  It is the creation of the Rick Phelps --
23   R. Phelps email and showing it to the parents of a couple of
24   these minors.
25        And the state court statute does require that as an
```

**JA: 70**

1  element of the offense that the person impersonating a

2  police officer use the title to take action consistent with

3  it.  And that typically has been factually a situation where

4  someone dressed as a police officer or someone with a police

5  badge asks a civilian to do something, like stop their motor

6  vehicle, pull somebody over, have a pedestrian on the street

7  stop and submit to maybe questioning.  So that is noticeably

8  absent from the facts in the affidavit in support of this

9  search warrant.

10     Anybody can dress up as a police officer and march up

11  and down the street proclaiming they're a police officer,

12  and that's not a crime.  It becomes a crime when you ask

13  someone to do something posing as a police officer.

14     And I think it's clear from the affidavit that the

15  defendant, when he met with the parents of these couple of

16  minors and showed them this supposed police report and maybe

17  showed them a screenshot or a copy of an email, that he

18  wasn't asking them to do anything.  He was simply, in a

19  bizarre way, trying to maybe clear his name or --

20         THE COURT:  It is a little bit bizarre, but you

21  might also, I suppose, make the argument that he wasn't

22  pretending to be a police officer.  He had created a

23  fictitious third-party persona; am I right?

24         MR. KEEFE:  Which I think further complicates the

25  issue for the affiant in trying to pigeonhole this conduct

1 into something that it's not, which is this state court

2 statute of impersonating a police officer.

3   THE COURT:  But the nexus theory would be, what,

4 that the cell phone would have evidence of the State Police

5 screenshot, which would corroborate -- I think I see what

6 the argument would be.

7   MR. KEEFE:  The nexus here -- there is no nexus

8 because the affidavit doesn't establish in any way, shape,

9 or form that the defendant downloaded this off of a

10 particular computer at his home and printed it out.  And

11 again it's a logo that is -- we can Google it up on any

12 computer, and you'll see the picture, and it can be

13 downloaded and printed.  That's not a crime.

14  And again, creating this ridiculous -- and you can see

15 how absurd -- this was part of the *Franks* arguments, that

16 the police were trying to improperly influence the

17 magistrate by not attaching a copy of the police report that

18 I handed the Court.  Any reasonable assistant clerk or state

19 court judge looking at that absurd document would know that

20 it is not a police report.

21  So I do make some other arguments, your Honor, that the

22 search warrant in both its substance and in its execution

23 was overly broad.  The affiant asks for literally every

24 single electronic device under the sun, multiple, multiple

25 electronic devices which would have no capacity to have the

**JA: 72**

```
1    evidence of the email account, the gmail account, the Apple
2    account, or the printing of the publicly available State
3    Police logo.  They include mp3 players, video cameras, video
4    devices.  None of these things that are asked for by the
5    affiant could possibly contain the information that they
6    were --
7              THE COURT:  I think you're probably right on that
8    point, but isn't the usual remedy then to simply suppress
9    things that are seized that are clearly outside of the
10   reasonable --
11             MR. KEEFE:  Yes, it is --
12             THE COURT:  -- request?
13             MR. KEEFE:  -- but it's further an egregious
14   violation, turning this into a general warrant, an
15   unconstitutional general warrant, where they ask for every
16   single file, every single login information in every single
17   account on every one of these devices.  They sought all of
18   these electronic devices regardless of ownership.
19        The Court can see from the search warrant return that
20   multiple devices belonging to the defendant's minor children
21   were seized during the execution of the search warrant, for
22   which there should never have been authorization given for
23   that.
24        And, likewise, there was no time limitation, your
25   Honor, on the warrant, no temporal limitation.
```

**JA: 73**

1          The affiant knew that the gmail account was created in

2     April of 2018.

3          The parents of Minor B, C, and D, were shown the bogus

4     State Police report sometime in the springtime of 2018, and

5     the lack of limitation allowed the officers to search

6     everything from the inception or creation of the account of

7     every single account in the household.

8          The other violation with respect to the manner in which

9     the search warrant was executed, it's crystal clear from the

10    government's own documents that the iPhone which is searched

11    and becomes the predicate, the basis, for the second search

12    warrant, which reveals the items for which the defendant is

13    now charged, is seized from Nicole Sheehan.  She is the wife

14    of the defendant.  And there's a clear restriction that

15    this -- these police do not have authority to search any

16    person present.  That information is from the search warrant

17    return.

18          If your Honor thought -- and I do think it's a valid

19    basis to allow the suppression of the telephone.  If the

20    court thought necessary that some evidence should be taken

21    on that, I don't think that's inappropriate.

22          THE COURT:  We might get to that point.

23          I suppose the question that just occurs to me is what

24    is the defendant's, if it's Nicole's phone, what is his

25    standing with respect to the search?

**JA: 74**

1          MR. KEEFE:  I think the government is saying it's

2     the defendant's phone.

3          THE COURT:  That may be an evidentiary point that

4     needs to be resolved.

5          MR. KEEFE:  Yeah, and I think that's clear from the

6     reading of the two affidavits that the telephone, the iPhone

7     seized from Nicole Sheehan, belongs to the defendant.

8       So on the *Franks* issue, your Honor, I will be very

9     brief.  They're threefold.  The affiant omitted information

10    from the magistrate that Minor A authorized Sheehan's access

11    to his Apple account.  And what the defendant is arguing

12    here -- I mean, it's in the affidavit that the defendant

13    created the account.  But these detectives interviewed

14    Minor A on multiple occasions, including a SANE interview.

15    And it just defies logic that they didn't ask the kid, Who

16    created the account for you?  How did you come up with the

17    password and the user name?

18       The answer to that obviously would be that the

19    defendant created it and created the password.

20       Including false information that Minor B was spying on

21    Minor A, that argument is essentially that if the defendant

22    had access -- the defendant had access to Minor A's phone

23    and Minor A knows it, then he's not spying on him.

24       And the last argument is the one I mentioned already,

25    your Honor, that omitting the State Police report that I

**JA: 75**

```
 1    just handed up, the front page was misleading to the
 2    magistrate.
 3         And again, your Honor, the affidavit's allegation that
 4    the defendant committed these crimes lacks -- is completely
 5    void of probable cause on each of the four crimes alleged,
 6    bordering on the absurd.  So again I would suggest that no
 7    reasonable magistrate could find a substantial basis for a
 8    probable cause finding.
 9         And I hope I have addressed the nexus issue that your
10    Honor asked about.
11              THE COURT:  No, you did very well.
12              MR. KEEFE:  Thank you.
13              THE COURT:  Ms. Paruti.
14              MS. PARUTI:  Thank you, your Honor.
15         So just from the outset, I would like to say that I
16    think with regard to the probable cause issue, I would like
17    the Court to consider the written submission that the
18    government filed both before -- or discussion on the
19    record --
20              THE COURT:  I have both.
21              MS. PARUTI:  -- and after.
22              THE COURT:  There was nothing wrong with the
23    original submissions.  It's just that you were both arguing
24    deficiencies under state law --
25              MS. PARUTI:  Right.
```

**JA: 76**

```
1            THE COURT:  -- that led me astray for a few
2    minutes.
3            MS. PARUTI:  No.  I understand.  And I only raise
4    that because in the -- first of all, the Court is right,
5    obviously.  We're analyzing the constitutional realm, which
6    is whether or not probable cause supported the affidavit, or
7    was contained in the affidavit, to support the issuance of
8    the search warrant.  But we're using the federal standard,
9    which is very deferential to the magistrate who issued the
10   search warrant, which is based on a totality of the
11   circumstances review and which is based primarily in a
12   common-sense understanding.
13        And so as the Court is suggesting, the written
14   submissions from the second round of briefing on that point
15   you'll notice that the government did not address the
16   elements step by step for each of the four state crimes that
17   were alleged -- that were alleged or addressed in the state
18   warrant.  Those issues are, however, taken up and I think
19   address everything the defendant said here today.
20           THE COURT:  No, I understand your arguments.  I
21   mean, where state law is relevant is we have to put
22   ourselves in the mind of the state officer who is making the
23   application for the search.  I know it sounds -- it's just
24   the way our system works given dual sovereignties, but then
25   we have to the look at the issuance of the warrant as if a
```

**JA: 77**

1    reasonable federal magistrate were actually sitting there --

2         MS. PARUTI:  Absolutely.

3         THE COURT:  -- acting on that same information.

4         MS. PARUTI:  And so I think, your Honor, that -- I

5    guess my question is would you like me to -- I just want to

6    focus my argument to where it will be helpful to the Court.

7         THE COURT:  What is most helpful is the issue I

8    directed to Mr, Keefe.

9      I mean, I can see lots of arguments the government can

10   make.  Once you have legitimate access to the phone,

11   whatever the warrant says, the argument would be that

12   inadvertence, or inevitable discovery, or even plain view,

13   that looking for a legitimate thing one sees an

14   unanticipated illegitimate item, of course police can seize

15   it at that point lawfully.

16        MS. PARUTI:  Right.

17        THE COURT:  But the question is, What is the nexus?

18     We have the three crimes now.  I think one we all

19   concede is off the table.  What is it that lead police to

20   believe that there is going to be relevant evidence for the

21   magistrate to believe that somehow this phone is going to

22   tell us something that is corroborative of a crime?

23        MS. PARUTI:  So I think that the way the government

24   has organized the facts or sort of reinterpreted the

25   affidavit -- so there's a lot of information that we're

**JA: 78**

1    talking about.  We're talking about witness interviews.

2    We're talking -- so witness interviews with Minors B, C, and

3    D.  We're talking about witness interviews or information

4    that comes from Minor A.  We're talking about information

5    that comes from the parents of some of those minors, and

6    we're talking about other information that was gleaned

7    through other avenues of police investigation.

8        I think that in the way that the affidavit may be

9    organized it's a little harder to sort of conceptualize

10   that.  And I believe that the way that the government has

11   sort of reorganized and refocused the Court's view of the

12   facts that are all contained in the affidavit in my initial

13   submission I think is a little bit clearer, and I think it

14   organizes all of the facts that are contained therein so

15   that the Court can more easily understand each of those

16   different pieces of the puzzle.

17       So the witness intimidation piece, where we're talking

18   about the defendant using -- so, one, using emails as part

19   of his scheme to try to convince the parents of these kids

20   that he was investigated for some sort of wrongdoing

21   regarding kids and he was, in fact, cleared.

22       And that sort of bleeds into or is tied into the whole

23   piece about the creation of the Rick Phelps email, who is a

24   police officer at the school.  And the whole purpose of him

25   creating that, for the defendant creating that, bogus

```
 1   account in the name of the school resource officer was to
 2   bolster or corroborate his story to these parents that he's
 3   perpetrating through the creation of this apparent State
 4   Police report that documents the investigation of him, that
 5   he has been cleared, there is nothing that they have to
 6   worry about.  Even if you do hear chatter, for example,
 7   about the -- or by your kids or your kid's friends that I'm
 8   a pedophile or -- I think one of the messages that was
 9   observed was that he was a literal rapist out of the mouth
10   of one of the kids.
11       And that all ties into, again, when we're talking about
12   a 30,000-foot view of the scheme and the criminal behavior
13   that was under investigation for months leading up to the
14   issuance of this search warrant, that the defendant was
15   somehow gaining access to Minor A and had inappropriate
16   attention drawn to Minor A, which ties into the unauthorized
17   use of a computer.
18       So we're talking about again, just from a factual
19   standpoint, the facts in the affidavit establish that the
20   defendant assisted Minor A in creating his Apple ID and that
21   Minor A's friends knew that the defendant was using that
22   access later to spy on Minor A, which, in and of itself,
23   shows that it was an unlawful use of the account access.
24       All of that together paints a picture of a person, the
25   defendant here, who was using email, other sorts of computer
```

**JA: 80**

```
 1    resources or digital resources, to both set up the scheme,

 2    so in the creation of the police report, the false State

 3    Police report, the Rick Phelps email, and his spying on

 4    Minor A as part of the sort of ongoing involvement in

 5    criminal activity that involves Minor A, all of that

 6    suggests that there is information that would be found in

 7    the very particularized list of items that Detective --

 8    then-Officer, now-Detective -- Puricelli submitted to the

 9    magistrate.

10        This is not a general warrant.  She specifically ties

11    the individual items that she's asking for permission to

12    search to the particular crimes that she's giving evidence

13    of to the magistrate judge.

14        Here the phone, just like any other computer device,

15    would clearly be a receptacle.

16        And this again, talking about a common-sense totality

17    of the circumstances review, is deferential to the

18    magistrate who issued the warrant.  And through that lens

19    it's clear that the magistrate had a basis to find that

20    nexus between all of that information that was posed to him,

21    would be potentially found in any one of those digital

22    devices.

23            THE COURT:  The bottom line is that the evidence

24    that you want to preserve was what was found on phone,

25    right?
```

**JA: 81**

```
 1              MS. PARUTI:  So there's some -- I don't want to
 2    limit myself here today.  I will say that the phone is an
 3    important piece of the evidence, absolutely.
 4              THE COURT:  That's the basis --
 5              MS. PARUTI:  I think that if this case were to go
 6    to trial there would be -- so obviously the defendant is
 7    charged with producing child pornography.  And there was
 8    evidence that came from that phone that obviously the
 9    government would use in its case-in-chief.
10         Some of the other evidence that was found, so, for
11    example, looking at defendant's unauthorized use or access
12    to Minor A's Apple account, that sort of falls into the
13    relevant conduct realm I would say.
14              THE COURT:  That would show a suspicious
15    overinvolvement with minors, but here the puzzle for me in
16    this case, and maybe I'm just missing something that's
17    terribly obvious, why didn't the police just investigate the
18    indecent assault and battery?  It would make so much sense
19    that --
20              MS. PARUTI:  So I understand that question, and I
21    don't know that I can answer it, but I can tell you that you
22    don't need to answer that question because --
23              THE COURT:  I agree, but it's just one of those
24    great elephants in the room that I can't --
25              MS. PARUTI:  I don't have an answer to that.
```

**JA: 82**

```
 1          As the Court noted, you know, this became -- this is a
 2     case that the federal government adopted after this stage of
 3     the investigation had passed.  So I don't know the answer to
 4     that.
 5          Would that have added to this warrant?  Absolutely.  No
 6     question.  I share -- again, I share in the question that
 7     the Court is asking, but I think the important thing for us
 8     here today, for why we are here today, is whether or not
 9     even without that information this warrant was sufficient
10     for the magistrate to issue it; that is, it was
11     sufficiently -- it showed a substantial basis to believe
12     that evidence of a crime would be found in the places
13     designated in the warrant.  And that standard has been met.
14     There is no question.
15               THE COURT:  Going back to the phone.
16               MS. PARUTI:  Yes.
17               THE COURT:  The government's contention is that the
18     phone was the defendant's.
19               MS. PARUTI:  Hm-hmm.
20               THE COURT:  So we are not putting forward a
21     standing issue?
22               MS. PARUTI:  No, no.  That's was the defendant's
23     phone.
24          One thing -- I will call it maybe a "misapprehension"
25     rather than a "misstatement."  But one point of confusion is
```

```
 1    where -- or how defense counsel has a basis to say that the
 2    phone was taken from Mrs. Sheehan.  That is not in the
 3    paperwork.  The paperwork that was submitted connected to
 4    the warrant, so the return, says that it was with Nicole
 5    Sheehan.  A plain reading of that supports an inference that
 6    the police abided by the constricts of the warrants; that
 7    is, that they couldn't search other people present at the
 8    house.  It does not say it was taken from her.  It says it
 9    was with her.  I have no further information to believe that
10    the police took Mr. Sheehan's phone off of or away from
11    Mrs. Sheehan besides the defendant's speculation.  And I
12    don't think that's proper for the Court to rely upon or
13    engage in, frankly.
14          THE COURT:  Well, it makes it easier if I do not
15    have to address the standing issue, if we all agree.
16          MS. PARUTI:  It's definitely his phone.  I can tell
17    you that.
18          THE COURT:  Okay.
19          MS. PARUTI:  But I think even if it -- but I will
20    say that truly whether it was his phone or her phone -- I
21    think this goes to one of the other arguments that counsel
22    was weaving into his presentation to the Court today when he
23    was talking about the overbreadth of the warrant and
24    faulting the government or the detectives in this case for
25    not limiting their seeking of objects that belonged to the
```

```
1    defendant.

2         Clearly when we are talking about this type of

3    materials, so digital material that could be stored or

4    accessed with any type of digital device, as outlined in the

5    attachment to the warrant and in the body of the warrant

6    itself, ownership -- as long as the defendant has access to

7    it, to have used it as an instrumentality of his crime or a

8    as a place where evidence of his crimes might be found, it

9    doesn't matter whether it was him who owned it or his son

10   who owned it, or, for example, Nicole Sheehan, his wife, who

11   owned it.

12        That's an aside, but I wanted -- I think --

13            THE COURT:  No, I agree --

14            MS. PARUTI:  I wanted to address the record on that

15   piece.

16            THE COURT:  I agree with that, although the

17   possessory interest is one of the elements of standing.

18            MS. PARUTI:  Right.

19            THE COURT:  But we're not talking about that.

20            MS. PARUTI:  No, not for these purposes.

21        So I don't know if the Court has any other questions

22   about the probable cause aspect.

23            THE COURT:  No.  As I said, I wasn't being critical

24   of counsel the first time.

25            MS. PARUTI:  Right.
```

**JA: 85**

```
 1              THE COURT:  You were very thorough.

 2              MS. PARUTI:  Right.

 3              THE COURT:  I have all the facts I need, and I

 4     agree that a lot of what happened in the state is relevant.

 5     I wanted to make sure we were arguing the right standard.

 6              MS. PARUTI:  I understand.

 7              THE COURT:  As much as I admire the state court and

 8     enjoyed my days there, I wear a different hat now.

 9         Okay, so unless you have something else, I would

10     propose to take it under advisement.  This is going to

11     take -- I can't do this in a day.  This is going to --

12              MS. PARUTI:  I wouldn't -- I don't think anybody

13     would expect you to, your Honor.

14              THE COURT:  I'm going to have to go through this

15     pretty carefully because there is a lot of material.

16              MS. PARUTI:  That's fine.  That's fine.

17         And I don't have anything outside of what was presented

18     in writing to you.

19         If I could have a second just to check my notes to see

20     if there is anything?

21              THE COURT:  Of course.

22              MS. PARUTI:  Oh, one thing I did want to say is at

23     one point during the defendant's argument he mentioned, when

24     we were talking about overbreadth of the warrant, he

25     mentioned something about a lack of a temporal limitation on
```

**JA: 86**

```
 1    the information to be seized or sought within the specific

 2    items that were seized.

 3        I may be mistaken, but I don't believe that that was

 4    raised in the filings.  So to the extent that that actually

 5    does become a concern for the Court, which I don't think it

 6    should be, but to the extent it does, if the Court believes

 7    that it needs more information from the government in the

 8    way of argument on that point, I would just ask for leave to

 9    file something about that later.

10        Again, I don't think I need to.  I don't think it was

11    addressed in the defendant's filings.  I think it wasn't

12    addressed because it's not truly an issue here, so I don't

13    believe that the Court needs to spend any time on that.  But

14    I just wanted to flag that in case it does for some reason

15    play a part in the Court's decision-making.

16            THE COURT:  Understood, but I doubt that it will.

17        (Pause in proceedings.)

18            MS. PARUTI:  And I think -- I don't think that I

19    need to say anything beyond what I have written with regards

20    to the Franks issue, but again I'm happy to answer any

21    questions on that point.

22            THE COURT:  No.  It's not an issue that I find

23    compelling.

24        Mr. Keefe, would you like the last word?

25            MR. KEEFE:  Your Honor, briefly.
```

**JA: 87**

```
1          So the cell phone at issue was taken from the person of

2     Nicole Sheehan.  That comes from the search warrant return,

3     your Honor, and if the United States is stating that that's

4     not accurate or not true, I don't know if the Court --

5          THE COURT:  I think they're saying that's true, or

6     they're not contesting that, but, nonetheless, the phone was

7     the defendant's regardless of where it was --

8          MR. KEEFE:  Yes, but I thought I heard them argue

9     that there's no evidence it was taken from her.  And if

10    that's the case, I don't know if the Court would be inclined

11    to have a short evidentiary hearing to find out where the

12    phone was recovered.

13         THE COURT:  If for some reason I start focusing on

14    that -- in fact, there may be other issues.  If I think

15    evidence is necessary, I will identify those for counsel.

16         MR. KEEFE:  Thank you, your Honor.

17    I didn't mention the good-faith exception, but I will

18    rely on what I argued on the papers.

19    Thank you.

20         THE COURT:  Thank you.

21    Counsel, again, I'm very apologetic about the delay.

22         MS. PARUTI:  It's no problem.

23         THE COURT:  I was sitting in the doctor's office,

24    and he's running around, and there's nothing I can do.

25         MS. PARUTI:  It's stressful enough.
```

**JA: 88**

```
 1            THE COURT:  No.  It's just judges get to tell
 2     lawyers when to be someplace, but doctors get to tell
 3     everybody where to be.
 4         I will take the matter under advisement.
 5            MS. PARUTI:  That you, Judge.
 6            THE CLERK:  All rise.
 7         (Proceedings adjourned.)
 8
 9                 C E R T I F I C A T E
10
11      I, James P. Gibbons, Official Court Reporter for the
12     United States District Court for the District of
13     Massachusetts, do hereby certify that the foregoing pages
14     are a true and accurate transcription of my shorthand notes
15     taken in the aforementioned matter to the best of my skill
16     and ability.
17
           /s/James P. Gibbons          April 25, 2022
18            James P. Gibbons
19
20
21
                JAMES P. GIBBONS, CSR, RPR, RMR
22                 Official Court Reporter
                 1 Courthouse Way, Suite 7205
23                Boston, Massachusetts 02210
                  jamesgibbonsrpr@gmail.com
24
25
```

**JA: 89**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETT

UNITED STATES OF AMERICA

v.                                    DOCKET NO: 1:18-CR-10391-RGS

DEREK SHEEHAN

**DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL ARGUMENTS RELATED TO A PREVIOUSLY FILED MOTION TO SUPPRESS AND MOTION TO RECONSIDER**

The defendant asks that the Court consider additional evidence related to issues presented in a previously ruled upon Motion to Suppress.  Specifically, the defendant asks that the Court reconsider additional arguments that the seizure of the iPhone from the person of Nicole Sheehan (Derek Sheehan's iPhone - iPhone IMEI on SIM tray: 353002093386885) was not authorized by the first search warrant (Search Warrant 1858SW0035) and that the search of the same iPhone pursuant to the second search warrant (Search Warrant 1858SW0036) should be suppressed as fruits of the poisonous tree.  The defendant submits as additional evidence his accompanying affidavit wherein he gives personal knowledge that police seized the iPhone from the person of Nicole Sheehan and that said seizure was beyond the scope of the first search warrant and that police appear to have searched his residence beyond the scope of the first search warrant.  As part of this request the defendant respectfully asks for a hearing.

**The Defendant's Affidavit**

The defendant's accompanying affidavit states that on the morning of August 12, 2018 he was present in his house and asleep in his bedroom.  The affidavit states further that the defendant's wife answered the front door of the residence early in the morning of August 12,

**JA: 90**

2018, when police arrived with the first search warrant.  The defendant states that police entered his bedroom and placed him under arrest.  He states further that his wife was in possession of the black iPhone in question, and she re-entered their bedroom.  The defendant observed a police officer forcibly take the black iPhone from Nicole Sheehan.

The defendant makes additional assertions of fact relevant to the requests made in this supplemental pleading.  Specifically, he made observations of police searching his boat, his car and his wife's car.  Upon his return to his residence after he was released from court and after the police searched his house, he observed that police appeared to have watched his personal family home videos during the time they searched his house on August 12, 2018.  Specifically, in his office the defendant observed that his family home videos that were stored in a safe had been removed and were strewn about the floor.  He observed that the videos had been viewed.  He also observed his camcorder on the floor that had one of the videos cassettes inside the camcorder with the screen viewer open and in the playback mode.

The Defendant asks that the Court reconsider arguments made in his previously filed Motion to Suppress.  The defendant asks that the Court consider the additional information set forth in the defendant's accompanying affidavit in reconsidering two previous arguments made in the defendant's motion to suppress (Document 57) that was denied by the Court.

## I.    The Search Executed Pursuant to the First Warrant was Executed Overbroadly and Exceeded the Scope of the Warrant

a.    The iPhone that is the Subject of the Second Warrant Must be Suppressed Because it was Seized from the Person of Nichole Sheehan and Such Search Was Not Authorized

The Court should reconsider its prior order that the seizure of the iPhone from the defendant's wife did not exceed the scope of the warrant.  This Massachusetts state court search

2

**JA: 91**

warrant expressly did not authorize the search of persons present. See, Search warrant 1854SW00035.. The evidence that police seized the black iPhone (IMEI on SIM tray: 353002093386885) from the person of Nichole Sheehan is the officer's search warrant return and the defendant's affidavit attached hereto stating that he witnessed the seizure of this iPhone.. Because the search of Nichole Sheehan was not authorized by the warrant, this iPhone and the fruits of the search of the iPhone must be suppressed. United States v. Abrams, 615 F.2d 541, 550 (1980) (Campbell, J., concurring) ("It is clear that overzealous execution [of a search, as opposed to insufficient particularity in the warrant,] requires suppression only of any materials seized outside of the warrant's authority (and the fruits of any such improperly seized material)."). See United States v. Medlin, 842 F.2d 1194, 1198-99 (10th Cir.1988) (officers' "flagrant disregard" for terms of warrant renders entire search illegal).

Here, the Court should reconsider its prior decision denying the defendant's motion to suppress because Mr. Sheehan's affidavit shows that a police officer obtained the iPhone at issue by searching the defendant's wife and seizing it from her.  The Court's ruling on this issue was that the "execution of the warrant did not exceed its authorized scope as demonstrated by the items listed in the warrant return filed with the issuing court." And adding that:  "Sheehan has no standing to object to the seizure of an iPhone from his wife's personal possession, if such a thing happened. See Rawlings v. Kentucky, 448 U.S. 98, 105 (1980)".

Leaving aside the issue of the defendant's standing to object to the seizure of the iPhone from his wife, the search and seizure of his wife was contravened by the specific dictates and restrictions of this Massachusetts state court issued search warrant.  And specifically, the warrant's restrictions precluded the police from searching "any persons present".

3

**JA: 92**

The defendant reiterates arguments made on this issue in its previously filled motion to suppress and memorandum.

A warrantless search is per se unreasonable under the Fourth Amendment, unless one of "a few specifically established and well-delineated exceptions" applies. Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)) (internal quotation marks omitted). The warrantless search of Nicole Sheehan and ensuing seizure of the black iPhone from her person (alleged by the Government to be Derek Sheehan's phone) was not supported by probable cause, nor was it supported by an exception to the warrant requirement.

The warrantless seizure of the black iPhone requires suppression of the iPhone and its fruits. Because the second warrant is based upon the warrantless search of the iPhone, all fruits of the second warrant, too, must be suppressed. See Wong Sun v. United States, 371 U.S. 471 (1963).

No good faith exception applies where these trained officers sought and were denied permission to conduct this exact search on the face of the warrant. The warrant expressly told these officers that they could not search persons present. Officers acting in good faith would have recognized the limits of the warrant and the lack of probable cause to conduct the search that was conducted. United States v. Crespo-Rios, 623 F. Supp. 2d 198 (D. P.R. 2009) ("reasonably well-trained officer" in the field, upon looking at this warrant, would have realized that the search for evidence of the crime of child pornography did not match the probable cause described).

The defendant asks that the Court reconsider its prior ruling concerning the seizure of the iPhone at issue in light of the evidence set forth in the accompanying affidavit of the defendant.

4

**JA: 93**

b.    The Court should Reconsider its Order because Officers Seized Items From the Sheehan Home that Were Not Authorized by the Warrant

The defendant asks also that the Court reconsider its decision that the police executed the warrant in an overly broad fashion and seized or searched items for which they had no authority. Specifically, the defendant states that police searched his home office and watched his family home videos on his camcorder device. The defendant reiterates his prior argument that the police went beyond the scope of the search warrant. "When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity." United States v. Woodbury, 511 F.3d 93, 97 (1st Cir.2007). Despite the specificity of the search warrant regarding the crimes that officers were investigating, files not pertaining to those crimes were opened and searched and should be suppressed. Additionally, police seized items that were not referenced at all in the application or warrant.

In United States v. Crespo-Rios, 623 F.Supp. 2d 198 (D.P.R. 2009), the Court confronted a factually similar case. The defendant communicated with an undercover agent pretending to be a twelve year old, and sent her "obscene material via his web cam." Id. at 200. The officers obtained a broad search warrant to seize all of the defendant's electronic media. This warrant permitted officers to look for evidence of possession of child pornography. During this search the police found child pornography, and the defendant was charged with possessing it. Id. The court suppressed the child pornography found and held as follows:

> [I]n the affidavit, the Agent established probable cause to search for evidence of seduction of children and/or transfer of obscene material to minors but also designed and requested a search for evidence of an entirely different crime (child pornography). Since the affidavit contained no allegation or suggestion of child pornography, there was no probable cause for the parameters of the search to include

5

**JA: 94**

such evidence. Thus, the search of Defendant's digital media was unreasonable and in violation of the Fourth Amendment because the warrant did not authorize the forensic examination of Defendant's digital media for evidence of child pornography.

Id. at 203-04; see also United States v. Hodson, 543 F.3d286 (6th Cir. 2008).

Because the first warrant affidavit provided no reason to believe that there would be pornography, whether adult or child, on Sheehan's electronic media, evidence seized pursuant to these warrants, including all products of the second warrant which were found during the execution of the first warrant, must be suppressed. See Wong Sun v. United States, 371 U.S. 471 (1963). Here, officers knew that there was no probable cause to search video files because none of the facts contained in the affidavit suggested that video files were a fruit or instrumentality of the crimes enumerated in the warrant application.

The defendant's affidavit provides additional evidence that the police went far beyond the scope of the search warrant issued to search Sheehan's house. It appears that the police in their zeal to find evidence of child pornography, viewed multiple mini DV cassette tapes on the defendant's camcorder device that turned out to be family home videos. This fact, if true should be compelling evidence for the Court to conclude after reviewing all of the search warrant material that the police went far beyond the scope of the search warrants dictates.

As noted previously the police seized objects that were not objects of the search. The police seized three unopened bottles of Not Your Father's Root Beer alcoholic beverages, one Stoker's Wintergreen tobacco container, three cool cucumber JUUL cartridges, two cool mint JUUL cartridges, two JUUL devices, three and one quarter orange oval tablets in a prescription bottle with no label, one Samsung Galaxy cell phone, one label maker kit, and one black iPhone

6

**JA: 95**

case, and assorted paperwork (containing passwords, moving documents, assorted written notes). As argued previously these items were not the subject of the search warrant.

As such, the execution of this warrant was overbroad and suppression of items seized pursuant to this warrant and its fruits is required, the defendant asks that the Court reconsider it prior decision denying his motion to suppress.


                                    Respectfully submitted,
                                    **Derek Sheehan,**
                                    by his lawyer,

Date July 2, 2021                   *William Keefe*
                                    **William Keefe**
                                    **BBO # 556817**
                                    801C Tremont Street
                                    Boston, MA 02118
                                    Telephone: (617) 947-8483
                                    Facsimile: (617) 445-8002


## CERTIFICATE OF SERVICE

I, William Keefe, counsel for the plaintiff, hereby certify that on July 2, 2021, I did serve this document through the Court's electronic filing system (ECF) on all persons so registered.

Dated: July 2, 2021              */s/ William Keefe*


## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)

Counsel states that he has conferred with opposing counsel about this motion and Assistant United States Attorney Paruti opposes this request.

                          */s/W. Keefe*
                          William Keefe


7

**JA: 96**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETT

UNITED STATES OF AMERICA

v.                              DOCKET NO: 1:18-CR-10391-RGS

DEREK SHEEHAN

**AFFIDAVIT OF DEFENDANT**

I, Derek Sheehan, on oath and affirmation state the following:

1.  I am the defendant in this case.
2.  On August 12, 2018, I lived at 1 Spring Brook Drive in Norwell, Massachusetts.  I lived at this address with my wife Nichole and our three children.
3.  At approximately 6:00 A.M. on this date I was asleep in my bedroom on the second floor when I was awakened by my wife who told me that police are here.  She then returned downstairs and soon two police officers were in our bedroom and placed me under arrest. My wife was present when I was being placed under arrest in our bedroom.  I had asked a police officer whether my wife could take our children out of the house and allow the police to search the house.  A trooper told me no.
4.   At this time, she was in possession of my iPhone.  I asked my wife to call my lawyer.  I saw a police officer physically remove this iPhone from my wife's person.  This officer grabbed my wife by the arm, twisted her arm and removed the phone from her hand.
5.  I was being escorted from my house I overheard police officers questioning my children about whether they had phones or other electronic devices.
6.  I was escorted out of the house and placed in a police car.  I remained in the police car parked in front of my house for 20 to 30 minutes.  During this time, I observed several plain clothes police officers searching my boat that was parked in the yard next to my driveway.  I observed police officers searching my car and my wife's car.
7.  I was taken to the Norwell police station.  After I was driven to Barnstable District Court in Barnstable.  On the ride to the Barnstable District Court, I overheard a State Police trooper say talk about the search warrant application process.  I understood that the police had gone to a Judge or Magistrate with the search warrant application and that this first Judge or Magistrate had denied the search warrant; and that the police made changes to the search warrant and brought it to a different judge or magistrate.  At some point I overheard the trooper state "The kid's friend told us that there were security cameras at my house and a server downstairs".

1

**JA: 97**

8. I was released from the Barnstable Court late in the afternoon of August 12, 2018. I returned home at approximately 6:00 P.M. At my house in the first-floor office, I observed a safe that I owned was opened. The safe had contained approximately 20 mini-dv cassette tapes that contained home videos of my family. The mini-dv cassette tapes were strewn about the floor of the office. I looked at the mini dv cassette tapes and observed that everyone of them had been played and viewed. I know that prior to this morning, each mini dv cassette tape had been rewound to the beginning. In addition, a Canon HD camcorder I owned was also on the floor of the office with the screen viewer open and in the playback mode with one of the mini DV cassette tape inside the camcorder. It was clear that each of the mini DV cassette tapes had been viewed to some extent by police who searched my house on this date.

Signed under the penalty of perjury on July 1, 2021.


_/s/ Derek Sheehan_
Derek Sheehan

2

**JA: 98**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 18-CR-10391-RGS |
| | ) | |
| DEREK SHEEHAN, | ) | |
| | ) | |
| Defendant. | ) | |

---

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER

---

Now comes the United States of America, by and through Assistant U.S. Attorneys Anne Paruti and Charles Dell'Anno, and respectfully requests that this Court DENY the defendant's Motion for Leave to File Additional Arguments Related to a Previously Filed Motion to Suppress and Motion to Reconsider (Doc. 115).

The defendant has not offered any valid basis for the Court to reconsider its prior order denying the defendant's Motion to Suppress. It is well-settled that "motions for reconsideration are appropriate only in a number of circumstances," such as where there is newly-discovered evidence, an intervening change in the law, a manifest error in law, or a clearly unjust ruling. *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). "A court will deny a motion for reconsideration based on the 'new evidence' exception if that evidence in the exercise of due diligence could have been presented earlier." *Id.* (internal citations omitted). Motions for reconsideration are not to be used to "allow a party to advance arguments that could and should have been presented" the first time around. *Id.* Here, the defendant relies on a combination of certain arguments that he actually *did* present the first time around and certain additional facts concerning observations that he made at or around the time the warrant was executed – *i.e.,* "evidence" that could have been presented earlier.

**JA: 99**

The defendant's original motion to suppress was well-briefed and well-argued; that does not change the fact that the defendant's arguments were meritless.  This Court assessed those arguments over two rounds of briefing and oral argument, denying the motion in a 20-page Memorandum and Order (Doc. 90).[1]  Nothing in the defendant's affidavit (Doc. 117) or Motion to Reconsider (Doc. 115) change the calculus.  To the contrary, this Court already expressly rejected the defendant's claim that the seizure of the iPhone was not authorized by the warrant, holding that "[t]he execution of the warrant did not exceed its authorized scope as demonstrated by the items listed in the warrant return filed with the issuing court." Mem. and Order at 17.  As such, the Motion for Leave to File Additional Arguments Related to a Previously Filed Motion to Suppress and Motion to Reconsider should be DENIED.

Respectfully Submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

Dated: July 6, 2021                    By:    */s/ Anne Paruti*_____
                                              Anne Paruti
                                              Charles Dell'Anno
                                              Assistant U.S. Attorneys
                                              United States Attorney's Office
                                              One Courthouse Way
                                              Boston, MA 02210
                                              (617) 748-3100

---

[1] Fewer than three pages were dedicated to the assessment of the defendant's motion for a *Franks* hearing, which is not at issue here.

**JA: 100**

<u>**CERTIFICATE OF SERVICE**</u>

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic filing:


Dated: July 6, 2021                                    _/s/ Anne Paruti_____
                                                        Anne Paruti
                                                        Assistant United States Attorney

| 07/08/2021 | 120 | Judge Richard G. Stearns: ELECTRONIC ORDER entered denying 115 MOTION to Suppress Motion to File Additional Arguments Related to a Previously Filed Motion to Suppress and Motion to Reconsider as to Derek Sheehan. (Maynard, Timothy) (Entered: 07/08/2021) |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETT

UNITED STATES OF AMERICA


v.                                    DOCKET NO: 1:18-CR-10391-RGS


DEREK SHEEHAN


**<u>NOTICE OF APPEAL OF DEREK SHEEHAN</u>**


Notice is hereby given that Derek Sheehan, the defendant in this case, hereby appeals to

the United States Court of Appeals for the First Circuit from the denial of his Motion to Suppress

Evidence Seized Pursuant to Search Warrants and Motion for a Franks Hearing; and from the

judgment of conviction. These motions, and memoranda are docket entry numbers 57, 58, 82,

and 115.  The orders of the Court that the defendant appeals are dated January 28, 2020 and July

8, 2021.

                              Respectfully Submitted,
                              Derek Sheehan,
                              By His lawyer,

                              <u>/s/William Keefe</u>
                              William Keefe
                              BBO#: 556817
                              801 C Tremont Street
                              Boston, MA 02118
                              Telephone (617) 947-8483
                              Facsimile (617) 445-8002
                              wkeefelaw@gmail.com

1

**JA: 103**

### CERTIFICATE OF SERVICE

      I, William Keefe, lawyer for the defendant certify that on November 26, 2021, I served this document through the Court's electronic filing system (ECF) on all persons so registered.


Dated: November 26, 2021      Signed: <u>/s/ William Keefe</u>
                                William Keefe

2

**JA: 104**

**<u>Certificate of Service</u>**

I hereby certify that on October 11, 2022, I served a copy of the joint appendix, by first-class mail on the registered participants of the CM/ECF system.

/s/ *Robert L. Sheketoff*
ROBERT L. SHEKETOFF
*Counsel for Derek Sheehan*