No. 21-1983

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

UNITED STATES OF AMERICA,
Appellee

V.

DEREK SHEEHAN,
Defendant-Appellant.

_____

ON APPEAL FROM A JUDGMENT OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

BRIEF OF DEFENDANT-APPELLANT
DEREK SHEEHAN

_____

Robert L. Sheketoff
Sheketoff & O'Brien
BBO No. 457340
One McKinley Square
Boston, MA 02109
(617) 367-3449
sheketoffr@aol.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................i

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE ................................................................1

STATEMENT OF THE FACTS ..............................................................3

SUMMARY OF THE ARGUMENT .........................................................7

ARGUMENT .....................................................................................10

I. THERE WAS NO PROBABLE CAUSE ESTABLISHED
IN THE SECOND WARRANT AFFIDAVIT FOR THE
ENUMERATED STATE CRIME OF POSSESSION
OF CHILD PORNOGRAPHY. ..............................................................10

II. THE MANNER OF EXECUTION OF THE FIRST
WARRANT VIOLATED THE FOURTH AMENDMENT
BECAUSE IT EXTENDED TO THE PERSON OF THE
DEFENDANT'S WIFE IN THE CIRCUMSTANCES HERE ...........................14

III. THERE WAS NO GOOD FAITH EXCEPTION
IN THE CIRCUMSTANCES HERE .......................................................17

CONCLUSION ...................................................................................20

CERTIFICATE OF COMPLIANCE .........................................................21

CERTIFICATE OF SERVICE .................................................................22

ADDENDUM A .................................................................................23

ADDENDUM B .................................................................................B-1

# TABLE OF AUTHORITIES

**CASES**                                                        **Page(s)**

*Commonwealth v. Bean*, 435 Mass. 708, 761N.E.2d 501
    (2002)                                        13, 18

*Commonwealth v. McCarthy,* 385 Mass. 160, 430 N.E.2d
    1195 (1982)                                   19

*Commonwealth v. Provost*, 418 Mass. 416, 636 N.E.2d
    1312 (1994)                                   13

*Commonwealth v. Rex*, 469 Mass. 36, 11 N.E.3d 1060
    (2014)                                        19

*Commonwealth v. Sullivan*, 82 Mass. App. Ct. 293, 972
    N.E.2d 476 (2012)                             14

*Illinois v. Gates*, 462 U.S. 213 (1983)                         11

*Osborne v. Ohio*, 495 U.S. 103 (1990)                          13, 18

*Rawlings v. Kentucky*, 448 U.S. 98 (1980)                       15

*Riley v. California*, 573 U. S. 373 (2014)                      17

*United States v. Amirault*, 173 F.3d 28 (1st Cir. 1999)         13

*United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001)         11-12, 14

*United States v. Burdulis*, 753 F.3d 255 (1st Cir. 2014)        14

*United States v. Cordero-Rosario*, 786 F.3d 64 (1st Cir.
    2015)                                         13

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986),
    aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239
    (9th Cir.), cert. denied, 484 U.S. 856 (1987)   13

*United States v. Feliz*, 182 F.3d 82 (1st Cir. 1999)    10

*United States v. Fuccillo*, 808 F.2d 173 (1st Cir. 1987)    19, 20

*United States v. Mancini*, 8 F.3d 104 (1st Cir. 1993)    16

*United States v. Morel*, 922 F.3d 1 (1st Cir. 2019)    12

*United States v. Owens*, 167 F.3d 739 (1st Cir.1999)    20

*United States v. Rodriguez-Ramos*, 704 F.2d 17 (1st Cir.),
    cert. denied, 463 U.S. 1209 (1983)    16

*United States v. Syphers*, 426 F.3d 461 (1st Cir.2005)    18

*United States v. Tanguay*, 787 F.3d 44 (1st Cir. 2015)    10

## STATUTES

M.G.L. c. 272, § 29C    13

## JURISDICTIONAL STATEMENT

This is a direct appeal arising from the defendant's conviction and sentence after a conditional guilty plea, preserving his rights to appeal the denial of his motion to suppress, in the district court for the District of Massachusetts, upon which jurisdiction is conferred by 18 U.S.C. §3231.  Sentencing occurred on November 23, 2021.  The defendant timely filed a notice of appeal on November 26, 2021. Jurisdiction of this appeal is conferred upon this Court by 28 U.S.C. §1291.  A judgment of conviction in a criminal case is a final judgment.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Did the district court, in the circumstances here, erroneously deny the defendant's motion to suppress the fruits of the second state search warrant since the affidavit failed to establish probable cause and the good faith exception is not appropriate?

2.  Did the district court, in the circumstances here, erroneously deny the defendant's motion to suppress the seizure of the his phone from his wife when the first state warrant did not authorize the search of any person present other than the defendant?

## STATEMENT OF THE CASE

The defendant, Derek Sheehan, was indicted in the District of Massachusetts on three counts of sexual exploitation of children in violation of 18 U.S.C. §§2251

(a) and (e).   The government's case rested on an investigation begun by the Norwell police department which led to the execution of two search warrants issued by the Hingham District Court.   The first, 1858SW0035, issued on August 17, 2018 resulted in the seizure of the defendant's cell phone and other electronic devices.[1]   As a result of the examination of that cell phone, a second warrant, 1858SW0036, issued permitting the police to search the items seized pursuant to the first warrant for evidence of child pornography violations.[2]   The fruits of this second search revealed the videos that formed the basis of these federal charges.

The defendant filed a motion to suppress evidence seized pursuant to a search warrant on June 15, 2019. See SJA:31-38.   The defendant's motion raised several issues with the search warrants, only two of which will be addressed below. The government filed it's Omnibus Response on July 24, 2019. See JA:20-46.   On September 30, 2019 the district court issued a Memorandum And Order directing the parties to address the issue of "whether the affidavit supporting the warrant established probable cause under federal law for the search(es)."   On October 9, 2019 the defendant filed Defendant's Supplemental Memorandum And Reply To This Court's September 29, 2019 Order; and, on October 22, 2019 the government filed it's Response.   On November 15, 2019 the district court heard oral arguments

---

[1] This warrant was authorized by assistant clerk Lucy Caravon.
[2] This warrant was authorized by assistant clerk Paul Fullam.

by the parties. See Tr.1/15/29:1-31.

On January 28, 2020 the district court issued a Memorandum And Order denying the defendant's motion to suppress and request for a Franks hearing. See Addendum at 10-29. On July 2, 2021 the defendant moved to supplement his motion to suppress. The government filed an opposition on July 6, 2021; and, on July 8, 2021 the district court denied said motion.

The defendant conditionally pled guilty before the Honorable Judge Stearns on July 20, 2021. At the sentencing hearing on November 23, 2021, the district court accepted the plea agreement, and then imposed a sentence of 540 months to be served, with a five year term of supervised release. See Addendum at 1-9. The defendant timely filed his notice of appeal on November 26, 2021.

## STATEMENT OF THE FACTS

"The facts" on which this appeal is based are the averments in the two search warrant affidavits, the warrants, and the returns. Said affidavits, warrants, and returns appear in the SJA: 51-86 and are incorporated herein by reference. The defendant does not quarrel with Judge Stearns recitation of the facts (gleaned from the search warrant materials) in his Memorandum And Order, but rather with his legal conclusions. The pertinent facts that the district court recited in its Order are as follows:

On June 28, 2018, Officer Puricelli (the Affiant) interviewed a woman who

had presented herself at the Norwell police station to report a sexual assault on her younger brother, allegedly committed by the defendant. In looking through her brother's iPhone (which she had brought with her), she stated that she had seen references to a Massachusetts State Police file and a purported email exchange between the defendant and Rick Phelps, the Norwell police school resources officer. Later that day, Puricelli spoke to the mother of a second boy who reported that she had seen a reference to the same exchange of emails between Sheehan and "Phelps" on her son's phone. On June 30, 2018, Puricelli spoke to the father of the first child who told her that Sheehan had given him a copy of the supposed email exchange with Phelps. Sheehan told the father that Phelps had contacted him regarding the investigation of a gossipy exchange of texts between his son and the second boy accusing Sheehan of being a pedophile. In the email exchange, Phelps purports to tell Sheehan that the matter had been resolved and that he had been exonerated.

On July 9, 2018, a SAIN interview was held with the first boy at the Plymouth Children's Advocacy Center. Based on what was learned in that interview, Puricelli and three other officers spoke again to the second boy's mother. She stated that the defendant had told her that he had been investigated by the State Police "because a kid made up an untrue accusation of him being a pedophile, but that he was cleared be the State Police of any wrong doing (sic)."

The defendant had also shown her a file with a State Police logo on its cover which contained copies of the accusatory text messages exchanged by the two boys. On August 1, 2018, Puricelli, accompanied by the other three officers, interviewed the father of a third boy whose name had also come up during the SAIN interview. The father stated that Sheehan had told him that he had been falsely accused, but later cleared after an investigation conducted by Phelps and the State Police. Sheehan had shown him a photo of the file displaying the logo of the State Police on its cover.

On August 14, 2018, the officers met again with the mother of the second boy. She stated that her husband had been contacted earlier in the spring by the defendant who had told him that he had "to inform him of something that could not wait."  According to the mother, the defendant had shown her husband a copy of a "State Police Report" containing the texts between the two boys. The officers then spoke with her son who told them that the defendant had created the iPhone account that the boys had used for texting. In one of the text messages the boys referred to the defendant as a "literal child rpst (sic)."

On August 17, 2018, the officers spoke with the second boy in presence of his mother. He confirmed that the defendant had created the iPhone account for his friend (the first boy), and that the defendant regularly "spied" on his friend's text messages. He also stated that [sic] Mac desktop computer in his home office, "a

bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement." The boy's mother had also told the police that she had spoken by telephone earlier that week with the defendant's wife (at her request). The defendant's wife told her that the police were investigating the defendant and "trying to turn her . . . against her husband." The defendant's wife also stated that the first boy's accusation of having been assaulted by the defendant the summer before was a lie. The defendant then joined the conversation and urged her to tell the police that he had done nothing wrong.

According to Puricelli, the State Police was able to corroborate, by way of administrative subpoenas served on Google, that Sheehan had had created the account used by the first boy for texting and that he had also created the rickphelps21 Gmail account purportedly owned by Officer Phelps.

Based on the facts summarized above, Puricelli concluded that probable cause existed to search Sheehan's home for evidence related to the state crimes of Impersonation of a Police Officer, Witness Interference & Obstruction, Unauthorized Access to a Computer, and Identity Fraud. The warrant application specifically asked for permission to seize computers, tablets, cellular telephones, and media storage devices.

The second warrant was issued on Puricelli's application. Puricelli sought permission, which was granted, to search the contents of the fifteen electronic

storage devices that had been seized from the defendant's home. The stated purpose of the search was to seize evidence of possession by the defendant of child pornography in violation of Mass. Gen. Laws, ch. 272, § 29C. After relating information regarding the execution of the first search warrant and the arrest of the defendant at his home, Puricelli stated that she had been told by the State Trooper, who had been tasked with downloading files from the defendant's iPhone, that he had encountered pictures that he believed to be child pornography. Specifically, the Trooper stated that he had observed "images of prepubescent penises that lacked pubic hair."

## SUMMARY OF THE ARGUMENT

A.  The district court erroneously denied the defendant's motion to suppress the fruits of the second state search warrant because the affidavit supporting it failed to establish probable cause that the state crime enumerated, possession of child pornography, had been committed.  This Court's review of probable cause determinations is de novo. See *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015).  The defendant's claim of error is centered on the analysis of this Court in *United States v. Brunette*, 256 F.3d 14, 18 (1st Cir. 2001).  Absent either the attachment to the affidavit of the allegedly obscene images or a detailed, factual description of them, in many circumstances, the magistrate will not be able to perform the judicial function and independently find a substantial basis for

probable cause.

The inadequate description here and in *Brunette* are virtually indistinguishable, and there is nothing "substantial" in the remainder of the affidavit in the case at bar. In order to violate Mass. Gen. Laws, ch. 272, § 29C, as relevant here, the defendant must possess an image of a person under the age of eighteen who is: "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, or buttocks..." Depiction of nudity is not enough to support a conviction. This second warrant should not have been issued.

The government bears the heavy burden of proving that the good-faith exception applies, *United States v. Syphers*, 426 F.3d 461, 468 (1st Cir.2005). In *Commonwealth v. Rex*, 469 Mass. 36, 11 N.E.3d 1060 (2014), the Supreme Judicial Court was confronted with the issue of whether the evidence before the grand jury provided probable cause to arrest the defendant for possession of child pornography under G.L. c. 272, § 29C (vii), the crime at issue in the case at bar. The photos presented to the grand jury there depicted naked young children with their genitals exposed, and while the Commonwealth contended that was enough to meet the probable cause standard as to lewdness, the Supreme Judicial Court disagreed and reaffirmed that nudity alone is not enough. The requirement for demonstrating probable cause in Massachusetts in possession of child pornography

cases was thus well established years before the warrant application in this case. There was no good faith here.

B.  The district court erroneously denied the defendant's motion to suppress the seizure of his cell phone from the person of his wife during the execution of the first state search warrant.  That warrant specifically permitted the police the right to search Derek Sheehan and did not authorize the search of any person present at the residence. The district court side stepped this issue by finding a lack of standing.

In order to have standing the defendant must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable. *United States v. Mancini*, 8 F.3d 104, 107 (1st Cir. 1993).  The factors to be considered are ownership, possession and/or control; historical use of the property searched or the thing seized, ability to regulate access, the totality of the surrounding circumstances, the existence or nonexistence of a subjective anticipation of privacy, and the objective reasonableness of such an expectancy under the facts of a given case. Id., at 109.  Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life. *Riley v. California*, 573 U. S. 373, 403 (2014).  The defendant here did have a legitimate expectation of privacy in his cell phone on his wife's person while the two of them were in their home.

The good faith exception could not apply to the initial seizure of the phone since the exception assumes that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant. *United States v. Fuccillo*, 808 F.2d 173, 178 (1st Cir. 1987).

## ARGUMENT

As addressed below, the defendant's contentions here are that the search of his cell phone pursuant to the second state warrant was without probable cause; that the seizure of said cell phone allegedly pursuant to the first warrant was outside the direct requirements of said warrant; and, that neither the search nor seizure fits within the good faith exception.

## I. THERE WAS NO PROBABLE CAUSE ESTABLISHED IN THE SECOND WARRANT AFFIDAVIT FOR THE ENUMERATED STATE CRIME OF POSSESSION OF CHILD PORNOGRAPHY.

**This Court's review of** probable cause determinations is de novo. See *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015). A warrant application must demonstrate probable cause to believe that (1) a crime has been committed (the commission element), and (2) enumerated evidence of the offense will be found at the place to be searched (the nexus element). *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999). The task for the magistrate, the district court, and on the appellate level is to make a practical, common-sense decision whether, given

all the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The district court correctly described the defendant's contentions with respect to the second warrant as based on *United States v. Brunette*, 256 F.3d 14, 18 (1st Cir. 2001). The defendant contends now, as he did below, that absent either the attachment to the affidavit of the allegedly obscene images or a detailed, factual description of them, the magistrate charged with making a judicial assessment of probable cause is in a very difficult position. The district court described the *Brunette* requirement as a best practice suggestion, and not a constitutional mandate that could be imposed on a state court. See Memorandum And Order, p.16; Addendum at 25. The defendant disagrees that the *Brunette* case should be read as a mere suggestion of best practice. The *Brunette* decision provides the analysis of why this "best practice" is constitutionally required in most circumstances.

> "As the district court recognized, 'the identification of images that are lascivious will almost always involve, to some degree, a subjective and conclusory determination on the part of the viewer.' *Brunette*, 76 F. Supp. 2d at 39. That inherent subjectivity is precisely why the determination should be made by a judge,

not an agent. The Fourth Amendment requires no less. See *Gates*, 462 U.S. at 239 ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and [a] wholly conclusory statement . . . fail[s] to meet this requirement."). Moreover, Jereski had less than two years' experience investigating child pornography crimes, and in that brief tenure he had testified only twice before in support of warrant applications, one of which included copies of the images at issue." *United States v. Brunette*, supra, at 18.

Of course, the touchstone remains probable cause and there may be instances, as this Court said in *United States v. Morel*, 922 F.3d 1, 11 (1st Cir. 2019), where the magistrate can find a substantial basis for reaching the conclusion of probable cause without viewing the images or having an appropriate description of them.  Omission does not create a certainty that there is no probable cause; but, there must be a substantial basis somewhere in the affidavit for the independent judicial determination that there was probable cause.  The case at bar is not *Morel*; there was no substantial basis here.

The district court claimed that the description in *Brunette* was sufficiently distinct from the description in the affidavit here to distinguish the two cases.  "A prepubescent boy lasciviously displaying his genitals" (*Brunette*) compared to

"images of prepubescent penises that lacked pubic hair" (affidavit). If there is a difference, the description in *Brunette* was constitutionally more appropriate because it at least it made an attempt, although conclusory, to go beyond mere nudity.

A federal court evaluating the admissibility of evidence seized pursuant to a state search warrant will look to whether the supporting affidavits provided a "substantial basis" for concluding that probable cause existed that evidence related to the state crimes under investigation would be found. *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015). In order to violate Mass. Gen. Laws, ch. 272, § 29C, as relevant here, the defendant must possess an image of a person under the age of eighteen who is: "depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, or buttocks..." Depiction of nudity is not enough to support a conviction. Nudity, without more, does not establish lewdness. *Commonwealth v. Bean*, 435 Mass. 708, 715 n.17, 761N.E.2d 501 (2002); *Commonwealth v. Provost*, 418 Mass. 416, 423-24, 636 N.E.2d 1312 (1994); *Osborne v. Ohio*, 495 U.S. 103, 112-114 (1990) (nudity without more is protected expression); *United States v. Amirault*, 173 F.3d 28, 33, 35 (1st Cir. 1999).

In deciding whether a particular depiction of a nude body is lewd, Massachusetts utilizes the factors set out in *United States v. Dost*, 636 F. Supp.

828, 832 (S.D. Cal. 1986), aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856 (1987), as a starting point. See *Commonwealth v. Sullivan*, 82 Mass. App. Ct. 293, 304, 972 N.E.2d 476 (2012). This Circuit uses the same starting point. See *United States v. Amirault*, supra, at 32.

In *Brunette*, this Circuit held that those factors **should be employed when answering the question**, does a given image fall within the statutory definition of child pornography? Only if there is probable cause to believe so may a search warrant issue. *United States v. Brunette*, supra, at 18.

The actual viewer of the images here was not the issuing court or even the affiant, but rather a person described only as Massachusetts State Police Trooper Hart at the Computer Crimes Unit. See and compare the case at bar with *United States v. Burdulis*, 753 F.3d 255, 260-61 (1st Cir. 2014). Nothing more is known about Trooper Hart; nothing more of substance is known about the images, and nothing else in the affidavit made up for these deficiencies. The issuance of the second state warrant based on the presentation here violated the Fourth Amendment, just as it did in *Brunette*.

## II. THE MANNER OF EXECUTION OF THE FIRST WARRANT VIOLATED THE FOURTH AMENDMENT BECAUSE IT EXTENDED TO THE PERSON OF THE DEFENDANT'S WIFE.

The first warrant specifically permitted the police the right to search Derek

Sheehan and did not authorize the search of any person present at the residence. See warrant 1858SW0035, SJA: 51.

The defendant alleged in his initial Motion To Suppress Evidence that the defendant's cell phone, the key item of evidence in this prosecution, was seized from the person of his wife. See Motion, at 30-31; SJA: 30-31. In its written response the government stated, "As an initial matter, the first warrant return does not indicate the location from where the defendant's iPhone was seized. The return merely indicates that it was seized pursuant to the warrant." See Response, at 20; JA: 39. The government neither admitted or denied that the phone was taken from the defendant's wife in its pleading.

At the oral argument on the defendant's motion, the defendant repeated his assertion. Tr.11/15/19:16; Addendum at 34. The government admitted that "the paperwork" that was submitted concerning the warrant says that it was "with Nicole Sheehan," but claimed that, "It does not say it was taken from her. It says it was with her." Tr.11/15/19:26; Addendum at 37. In response to the defendant's suggestion that evidence should be taken on this issue, the district court indicated that if it thought evidence was necessary it would indicate that to the parties. Tr.11/15/19:30; Addendum at 39.

The district court then side stepped this issue by holding that the defendant had no standing to complain about the search of his wife, *citing Rawlings v.*

*Kentucky*, 448 U.S. 98, 105 (1980). See Memorandum And Order, p.17, n.10; Addendum at 26.  Of course, if the district court was correct on the issue of standing (reasonable expectation of privacy), there was no need to take evidence. But, unlike *Rawlings* (he had known the woman whose purse he put his drugs in only a few days and the precipitous nature of the transaction hardly supported a reasonable inference that he took normal precautions to maintain his privacy), the defendant here did have a legitimate expectation of privacy in his cell phone on his wife's person while the two of them were in their home.  The *Rawlings* court did not hold that property placed in the possession of another automatically removed any reasonable expectation of privacy pertaining to it by its owner.

The burden of proving a reasonable expectation of privacy lies with the defendant. *United States v. Mancini*, 8 F.3d 104, 107 (1st Cir. 1993).  In order to make such a demonstration, the defendant must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable. Id. The factors to be considered are ownership, possession and/or control; historical use of the property searched or the thing seized, ability to regulate access, the totality of the surrounding circumstances, the existence or nonexistence of a subjective anticipation of privacy, and the objective reasonableness of such an expectancy under the facts of a given case. Id., at 109.  In *United States v. Rodriguez-Ramos*, 704 F.2d 17 (1st Cir.), cert. denied, 463 U.S. 1209 (1983), this

16

Court found no Fourth Amendment interest to support a defendant's challenge to the warrantless search of a travel bag carried by his female companion. This Court observed that giving custody of luggage to a traveling companion does not alone defeat an expectation of privacy, but it upheld the trial court's factual findings that the bag in question actually belonged to the female companion rather than to the defendant and that she was using it at the time to carry her personal belongings. But this Court observed that there are circumstances in which the relationship between the traveling companions, the conditions of the bailment, or the precautions taken to maintain privacy could substantiate an expectation of privacy on the part of a traveler who deposits personal possessions in a companion's traveling bag. Id., at 21.

Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life. *Riley v. California*, 573 U. S. 373, 403 (2014). On the record that was before the district court, the defendant had established a cognizable expectation of privacy in the cell phone that was "with his wife." The seizure of that phone from her person was not authorized by the first state search warrant and violated the defendant's Fourth Amendment rights.

**III. THERE WAS NO GOOD FAITH EXCEPTION IN THE CIRCUMSTANCES HERE.**

This Court reviews the applicability of the *Leon* good faith exception de novo. See *United States v. Brunette*, supra, at 17.

The government bears the heavy burden of proving that the good-faith exception applies, *United States v. Syphers*, 426 F.3d 461, 468 (1st Cir.2005). Under *Leon*, the good faith exception applies when government agents rely on a warrant in objective good faith and in the interest of justice suppression is generally inappropriate. See *Brunette*, supra, at 19.

The district court never directly addressed good faith because it found probable cause for the second warrant and no standing to contest the initial seizure of the cell phone.  The district court did point out that it found no appellate decision in Massachusetts applying the "best practice" rule announced in *Brunette* and that in *Brunette* itself this Court applied the good faith exception. See Memorandum And Order, p.16, n.9; p. 15 n.8; Addendum at 24-25.  This Court said when it did so in *Brunette* in 2001 that the state of the law remained unclear at the time of the 1999 warrant application there. Id., at 20.  Almost twenty years have passed since then.  Massachusetts law has developed in tandem with federal law in this area. See discussion in *Commonwealth v. Bean*, supra, 711-17, which was decided in 2002.  *Osborne v. Ohio*, 495 U.S. 103 (nudity without more is protected expression) was decided in 1990.

In *Commonwealth v. Rex*, 469 Mass. 36, 11 N.E.3d 1060 (2014), the Supreme Judicial Court was confronted with the issue of whether the evidence before the grand jury provided probable cause to arrest the defendant for possession of child pornography under G.L. c. 272, § 29C (vii), the crime at issue in the case at bar.  In addressing that issue the Supreme Judicial Court was in the same position as a magistrate would be in determining whether to issue a warrant, was there probable cause to believe a crime occurred.[3]  In the Commonwealth's view in *Rex*, because the seven photocopies presented to the grand jury depicted naked young children with their genitals exposed, the photocopies were a lewd exhibition; however, the Supreme Judicial Court, in an analysis that weaved together Supreme Court, First Circuit, and its own precedents, concluded otherwise.  Nudity alone was not enough. See *Rex*, at 43-48.

Any Massachusetts law enforcement officer should have known that.  An officer is required to have a reasonable knowledge of what the law prohibits. *United States v. Fuccillo*, 808 F.2d 173, 177 (1st Cir. 1987).  The *Leon* good faith exception does not apply where an officer's good faith reliance on a warrant was so

---

[3] In Massachusetts a defendant can challenge a grand jury presentation on the grounds that the presentation failed to establish probable cause to believe a crime occurred. *Commonwealth v. McCarthy,* 385 Mass. 160, 163, 430 N.E.2d 1195 (1982).

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *United States v. Owens*, 167 F.3d 739, 745 (1st Cir.1999).

In addition, the good faith exception could not apply to the initial seizure of the phone since the exception assumes that the officers properly executed the warrant and searched only those places and for those objects that it was reasonable to believe were covered by the warrant. *Fuccillo*, 808 F.2d at 178.

## CONCLUSION

For all the foregoing reasons, the denial of the defendant's motion to suppress should be vacated, his conviction should be vacated, and in the circumstances here a judgment of acquittal entered; in the alternative, the case should be remanded to the district court for the appropriate remedy.

Respectfully submitted,
By his attorney,

/s/ Robert Sheketoff
Robert L. Sheketoff
Sheketoff & O'Brien
BBO No. 457340
One McKinley Square
Boston, MA  02109
(617) 367-3449
sheketoffr@aol.com

No. 21-1983

UNITED STATES COURT OFAPPEALS
FOR THE FIRST CIRCUIT

**CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND LENGTH LIMITATIONS**

UNITED STATES OF AMERICA,
Appellee,

V.

DEREK SHEEHAN,
Defendant-Appellant.

1. This brief has been prepared using:  14 point, proportionally spaced, serif type

face: Times New Roman, Word, 14 point.

2. EXCLUSIVE of the corporate disclosure statement; table of contents; table of

citations; addendum; and the certificate of service, the brief contains: 20 Pages.

      I understand that a material misrepresentation can result in the Court striking
the brief or imposing sanctions.  If the Court so directs, I will provide a copy of the
word or line print out.

/s/ Robert Sheketoff
Robert Sheketoff
Signature of Filing Party

**CERTIFICATE OF SERVICE**

I, Robert L. Sheketoff, hereby certify that on October 11, 2022 I served an electronic copy of this brief on all counsel of record via the Court's ECF system:

AUSA Donald Campbell Lockhart, email: Donald.Lockhart2@usdoj.gov

AUSA Charles Dell'Anno, email: Charles.Dell'Anno@usdoj.gov

AUSA Anne Paruti, email: Anne.Paruti.Lohnes@usdoj.gov


/s/ Robert Sheketoff
Robert L. Sheketoff

**ADDENDUM A**

|   | | **Page** |
|---|---|---|
| 1. | Judgment And Commitment Order | 1 |
| 2. | Memorandum And Order dated 1/28/20 | 10 |
| 3. | Government's Omnibus Response (excerpt) | 30 |
| 4. | Motion Hearing Transcript (excerpt) | 35 |

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Derek Sheehan | Case Number:  1:18CR10391-1 |
| | USM Number:  01178-138 |
| | William Keefe |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)     1-3

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of Children | 7/17/2018 | 1-3 |

The defendant is sentenced as provided in pages 2 through ___9___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

11/23/2021
Date of Imposition of Judgment

Signature of Judge

Honorable Richard G. Stearns
Name and Title of Judge

11-30-21.
Date

1

**AO 245B** (Rev. 09/17)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page   2   of   9

DEFENDANT:  Derek Sheehan
CASE NUMBER:  1:18CR10391-1

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

540 months. This term consists of  180 months on Count 1, 180 months on Count 2, and 180 months on Count 3, to be served consecutively.

☑ The court makes the following recommendations to the Bureau of Prisons:

The Court makes a judicial recommendation that the defendant be designated to an institution commensurate with security where the defendant can participate in sex offender treatment

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m.  ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/17)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __9__

DEFENDANT:    Derek Sheehan
CASE NUMBER:    1:18CR10391-1

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

5 years. This term consists of 5 years on Counts 1-3, such terms to run concurrently.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    - ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☑ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

3

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 9 |

DEFENDANT:  Derek Sheehan
CASE NUMBER:  1:18CR10391-1

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

4

Case: 21-1983    Case: 1:18-cr-00391-RGS-1 Document 137    Filed: 11/30/21 Page 5 of 9    Entry ID: 6525305
AO 245B (Rev. 09/17)    Judgment in a Criminal Case
Sheet 3C — Supervised Release

DEFENDANT:   Derek Sheehan
CASE NUMBER: 1:18CR10391-1

# ADDITIONAL STANDARD CONDITIONS OF SUPERVISION

SPECIAL CONDITIONS OF RELEASE (continued on next page)

1. You must participate in a mental health treatment program as directed by the Probation Office.

2. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, you shall register as a sex offender not later than 3 business days (from release or sentencing, if granted probation). You will keep the registration current, in each jurisdiction where you reside, are employed or are a student. You must, not later than 3 business days after each change in name, residence, employment, or student status, appear in person in at least one jurisdiction in which you are registered and inform that jurisdiction of all changes in the information. Failure to do so may not only be a violation of this condition but also a new federal offense punishable by up to 10 years' imprisonment.  In addition, you must read and sign the Offender Notice and Acknowledgment of Duty to Register as a Sex Offender per the Adam Walsh Child Protection and Safety Act of 2006 form.

3. You must participate in a sexual specific evaluation or sex offender specific treatment, conducted by a sex offender treatment provider, as directed and approved by the Probation Office. The treatment provider shall be trained and experienced in the treatment of sexual deviancy and follow the guideline practices established by the Association for the Treatment of Sexual Abusers (ATSA). The sexual specific evaluation may include psychological and physiological testing which may include polygraph testing and the Visual Reaction Time Assessment (e.g. ABEL screen). You must disclose all previous sex offender or mental health evaluations to the treatment provider.

4. You must submit to periodic polygraph testing as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.  When submitting to a polygraph exam, you do not waive your Fifth Amendment rights, and your exercise of such rights will not give rise to a violation proceeding. The results of the polygraph examinations may not be used as evidence in Court to prove that a violation of community supervision has occurred but may be considered in a hearing to modify release conditions and/or could initiate a separate investigation.

5. You must allow the installation of computer internet monitoring software on approved internet capable devices but may still use a computer for work purposes that has been previously approved by the Probation Office. The program(s) used will be designed to identify, for the Probation Office, the viewing, downloading, uploading, transmitting, or otherwise using any images or content of a sexual or otherwise inappropriate nature. You must not attempt to remove or otherwise defeat such systems, and must allow the Probation Office to examine such computer and receive data from it at any reasonable time.

6. You must advise anyone using the monitored internet capable devices that those devices are being monitored by the Probation Office.

7. You must not possess or use any computer or internet-capable device without prior approval from the Probation Office. Any such device should not be used to knowingly access or view sexually explicit materials as defined in 18 U.S.C. §2256 (2)(A).

8. You must disclose all account information relative to internet access, social networking, and email, including user names and passwords, to the Probation Office. You must also, if requested, provide a list of all software/hardware on your computer, as well as telephone, cable, or internet service provider billing records and any other information deemed necessary by the Probation Office to monitor your computer usage.

9. You must provide the probation officer with access to any requested financial information for purposes of monitoring compliance with the imposed computer access/monitoring conditions, including, but not limited to, credit card bills, telephone bills, and cable/satellite television bills.

Case: 21-1983   Case: 1:18-cr-10391-RGS1 Document 137   Filed 11/30/21 Page 6 of 9 Entry ID: 6525305
AO 245B(Rev. 09/17)  Judgment in a Criminal Case
Sheet 3D — Supervised Release

DEFENDANT:  Derek Sheehan
CASE NUMBER: 1:18CR10391-1

# SPECIAL CONDITIONS OF SUPERVISION

10. You must not knowingly have direct contact, or contact through a 3rd party, with children under the age of 18, unless previously approved by the Probation Office, or in the presence of a responsible adult who has been approved by the Probation Office, and who is aware of the nature of your background and current offense.

11. You must not knowingly have any contact with victims without prior approval of the Probation Office. This includes letters, communication devices, audio or visual devices, visits, social networking sites, or third parties not covered by any other condition.

12. You must consent to third party disclosure to any employer or potential employer concerning any computer-related restrictions that are imposed upon you, unless excused by the probation officer. You are prohibited from being employed in any capacity that may cause you to come in direct contact with children, except under circumstances approved in advance by the supervising probation officer. In addition, you must not participate in any volunteer activity that may cause you to come into direct contact with children, except under circumstances approved in advance by the probation officer. Contact is defined as any transaction occurring face to face, over the telephone, via mail, over the internet, and any third-party communication.

13. Prior to accepting any form of employment, you must seek the approval of the Probation Office, in order to allow the Probation Office, the opportunity to assess the level of risk to the community you may pose if employed in a particular capacity.

14. You shall be required to contribute to the costs of evaluation, treatment, programming, and/or monitoring (see Special Condition 1, 3 and 5), based on the ability to pay or availability of third-party payment.

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

DEFENDANT: Derek Sheehan
CASE NUMBER: 1:18CR10391-1

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 300.00 | $ | $ | $ |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $     0.00 | $     0.00 | |

☐   Restitution amount ordered pursuant to plea agreement  $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐   the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐   the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/17)　Judgment in a Criminal Case
Sheet 5A — Criminal Monetary Penalties

DEFENDANT:　Derek Sheehan
CASE NUMBER:　1:18CR10391-1

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

The JVTA assessment is TBD at a later date.

Case: 21-1983    Case: 1:18-cr-10391-RGS-1 Document 137    Filed: 11/30/21    Page 9 of 9    Entry ID: 6525305
AO 245B (Rev. 09/17) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __9__ of __9__

DEFENDANT:  Derek Sheehan
CASE NUMBER:  1:18CR10391-1

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __300.00__ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:

    Preliminary Order of Forfeiture (D. 141)

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 18-10391-RGS

UNITED STATES OF AMERICA

v.

DEREK SHEEHAN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS
AND MOTION FOR A *FRANKS* HEARING

January 28, 2020

STEARNS, D.J.

Defendant Derek Sheehan, who is charged with three counts of sexual exploitation of children (child pornography), 18 U.S.C. §§ 2251(a) and (e), seeks to suppress evidence seized under a Massachusetts state search warrant issued by a Justice of the Hingham District Court.[1]   In the law of search and seizure there is a strong preference for the "informed and deliberate determinations of magistrates." *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932).   In recognition of this preference, courts reviewing warrants "will accept evidence of a less 'judicially competent or persuasive

---

[1] There were in fact two separate state warrants. Pursuant to the first warrant, officers seized a cell phone and various other electronic devices from Sheehan's home.   The second warrant authorized police to examine the contents of the devices.   Both warrants are at issue.

character than would have justified an officer in acting on his own without a warrant.'" *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948).   Warrants are not to be subjected to niggling scrutiny but are to be tested in a "common-sense and realistic fashion."   *United States v. Ventresca*, 380 U.S. 102, 109 (1965).   A "grudging or negative attitude" on the part of a reviewing court is discouraged.   *Id*. at 108-109; *see also United States v. Johnson*, 78 F.3d 1258, 1262 (8th Cir. 1996) ("absolute syllogistic precision" is not required).

Whether a challenged warrant was issued on a sufficient showing of probable cause is a question of law for the determination of the reviewing court.   *Beck v. Ohio*, 379 U.S. 89, 96 (1964).   Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979).   Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false."   *Texas v. Brown*, 460 U.S. 730, 742 (1983) (*plurality opinion*) (internal citation omitted).   As the probable cause inquiry begins and ends with the four corners of the affidavit

2

supporting the search warrant application, *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999), no evidentiary hearing was held.   The court did, however, hear oral argument from counsel involved on two separate occasions, September 20, 2019, and after an order for additional briefing, on November 15, 2019.

FACTUAL BACKGROUND

**The first warrant**

The search warrant affidavit sworn by Norwell police officer Kayla Puricelli on August 16, 2018, sets out the following pertinent facts.   On June 28, 2018, Puricelli interviewed a woman who had presented herself at the Nowell police station to report a sexual assault on her younger brother, allegedly committed by Sheehan.   In looking through her brother's iPhone (which she had brought with her), she stated that she had seen references to a Massachusetts State Police file and a purported email exchange between Sheehan and Rick Phelps, the Norwell police school resources officer.   Later that day, Puricelli spoke to the mother of a second boy who reported that she had seen a reference to the same exchange of emails between Sheehan and "Phelps" on her son's phone.   On June 30, 2018, Puricelli spoke to the father of the first child who told her that Sheehan had given him a copy of the supposed email exchange with Phelps.   Sheehan told the father that Phelps had contacted him regarding the investigation of a gossipy exchange of texts

3

between his son and the second boy accusing Sheehan of being a pedophile. In the email exchange, Phelps purports to tell Sheehan that the matter had been resolved and that he had been exonerated.

On July 9, 2018, a SAIN interview was held with the first boy at the Plymouth Children's Advocacy Center. Based on what was learned in that interview, Puricelli and three other officers spoke again to the second boy's mother.   She stated that Sheehan had told her that he had been investigated by the State Police "because a kid made up an untrue accusation of him being a pedophile, but that he was cleared be the State Police of any wrong doing (sic)."   Dkt. #68-1 at 8.   Sheehan had also shown her a file with a State Police logo on its cover which contained copies of the accusatory text messages exchanged by the two boys.   On August 1, 2018, Puricelli, accompanied by the other three officers, interviewed the father of a third boy whose name had also come up during the SAIN interview.    The father stated that Sheehan had told him that he had been falsely accused, but later cleared after an investigation conducted by Phelps and the State Police.   Sheehan had shown him a photo of the file displaying the logo of the State Police on its cover.

On August 14, 2018, the officers met again with the mother of the second boy.   She stated that her husband had been contacted earlier in the spring by Sheehan who had told him that he had "to inform him of something that could not wait."   *Id.*   According to the mother, Sheehan had shown her

husband a copy of a "State Police Report" containing the texts between the two boys.    The officers then spoke with her son who told them that Sheehan had created the iPhone account that the boys had used for texting.    In one of the text messages the boys referred to Sheehan as a "literal child rpst (sic)." Dkt. #68-1 at 9.

On August 17, 2018, the officers spoke with the second boy in presence of his mother.    He confirmed that Sheehan had created the iPhone account for his friend (the first boy), and that Sheehan regularly "spied" on his friend's text messages.    He also stated that Mac desktop computer in his home office, "a bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement."    *Id.*    The boy's mother had also told the police that she had spoken by telephone earlier that week with Sheehan's wife (at her request).    Mrs. Sheehan told her that the police were investigating Sheehan and "trying to turn her . . . against her husband." *Id.*    Mrs. Sheehan also stated that the first boy's accusation of having been assaulted by Sheehan the summer before was a lie. Sheehan then joined the conversation and urged her to tell the police that he had done nothing wrong.

According to Puricelli, the State Police was able to corroborate, by way of administrative subpoenas served on Google, that Sheehan had had created the account used by the first boy for texting and that he had also created the rickphelps21 Gmail account purportedly owned by Officer Phelps.

Based on the facts summarized above, Puricelli concluded that

5

probable cause existed to search Sheehan's home for evidence related to the state crimes of Impersonation of a Police Officer, Witness Interference & Obstruction, Unauthorized Access to a Computer, and Identity Fraud. The warrant application specifically asked for permission to seize computers, tablets, cellular telephones, and media storage devices, all of which was granted by the issuing Justice of the Hingham District Court.

**The Second Warrant**

The second warrant was issued on August 29, 2018, on Officer Puricelli's application, also by the Hingham District Court. [2]    Puricelli sought permission, which was granted, to search the contents of the fifteen electronic storage devices that had been seized from Sheehan's home. [3]    The stated purpose of the search was to seize evidence of possession by Sheehan of child pornography in violation of Mass. Gen. Laws, ch. 272, § 29C.    After

---

[2] A third warrant was issued by a U.S. Magistrate Judge on September 19, 2018, on the application of Lisa Crandall, a Special Agent of the Federal Bureau of Investigation, authorizing a second search of Sheehan's home. That warrant is not being contested by the instant motion to suppress.

[3] Although Puricelli did not specifically incorporate by reference her first affidavit, she four times listed the docket number of the first warrant (1858SW0035).  She also disclosed that the first application involved the seizure of the same items as named in the second, although in an investigation of different crimes.   Notably, the second warrant was given the next successive docket number to the first (1858SW0036).  It may be reasonably inferred that the second judge would have been aware of the earlier warrant issued by his court.

6

relating information regarding the execution of the first search warrant and the arrest of Sheehan at his home, Puricelli stated that she had been told by the State Trooper, who had been tasked with downloading files from Sheehan's iPhone, that he had encountered pictures that he believed to be child pornography. Specifically, the Trooper stated that he had observed "images of prepubescent penises that lacked pubic hair." Dkt. #68-2 at 5.

## DISCUSSION

As the court noted at the initial hearing, the parties had largely briefed the motion to suppress on the issue of whether the warrant complied with Massachusetts state law. It is true, as Sheehan contends, that a federal court evaluating the admissibility of evidence seized pursuant to a state search warrant will look to whether the supporting affidavits provided a "substantial basis" for concluding that probable cause existed that evidence related to the (state) crimes under investigation would be found. *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015). *See Gamble v. United States*, 139 S. Ct. 1960, 1979 (2019) ("Once the Fourth Amendment was held to apply to the States as well as the Federal Government, however, the silver platter doctrine was scuttled. . . . Now the fruits of unreasonable state searches are inadmissible in federal and state courts alike."). *See also Elkins v. United States*, 364 U.S. 206, 213 (1960). On the other hand, it is

well established that evidence gathered in conformity with federal law, whether by state or federal authorities, "is admissible in federal court proceedings *without regard to state law*." *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991), quoting *United States v. Little*, 953 F.2d 1420, 1434 (9th Cir. 1984). This is true even when the evidence "is obtained pursuant to a state search warrant or in the course of a state investigation." *United States v. Mitro*, 880 F.2d 1480, 1485 n.7 (1st Cir. 1989).

The reason for the rule is explained by the ancient doctrine of dual sovereignty reaffirmed in *Gamble*. Significant differences exist between the Supreme Court's interpretation of the Fourth Amendment and the Supreme Judicial Court's more rights-oriented interpretation of the analog article 14 of the Massachusetts Declaration of Rights. One prominent and relevant example entails the applicability of the "good faith mistake" doctrine. *Compare United States v. Leon,* 468 U.S. 981 (1984) (recognizing a good faith exception) *with Commonwealth v. Hernandez*, 456 Mass. 528, 533 (2010) (rejecting the exception as a matter of state law). In another significant respect state and federal law differ in that Massachusetts does not follow the flexible "totality of the circumstances" test of probable cause approved in *Illinois v. Gates*, 462 U.S. 213 (1983), but rather the "more meticulous" standard set out in *Aguilar v. Texas*, 378 U.S. 108 (1964), and

*Spinelli v. United States*, 393 U.S. 410 (1969).   *See Commonwealth v. Upton (II)*, 394 Mass. 363, 374 (1985).

A federal court is also not bound by procedural differences between state and federal law relating to the formalities of the warrant process. Evidence gathered under a state warrant will be admitted in federal proceedings if the warrant substantially complies with federal due process requirements; strict adherence to Fed. R. Crim. P. 41(a) is not required. *United States v. Soule*, 908 F.2d 1032, 1038-1039 (1st Cir. 1990).

## Probable Cause: The First Warrant

Sheehan's principal argument is that Puricelli's initial affidavit failed to establish probable cause with respect to each of the state crimes she listed as the object of the investigation.   At issue are Impersonation of a Police Officer, Mass. Gen. Laws ch. 268, § 33; Witness Interference & Obstruction of Justice, Mass. Gen. Laws ch. 268, § 13B; and Unauthorized Access to a Computer, Mass. Gen. Laws ch. 266, § 120F.[4]

---

[4] Officer Puricelli also specified Identity Fraud, Mass. Gen. Laws ch. 266, § 37E, as a target crime.   Identity fraud or theft under Massachusetts law requires proof of four elements: "that a defendant (1) posed as another person; (2) did so without that person's express authorization; (3) used that other person's identifying information to obtain, or attempt to obtain, something of value [including identity documents]; and (4) did so with the intent to defraud."   *Commonwealth v. Giavazzi*, 60 Mass. App. Ct. 374, 376 (2004) (internal citation omitted).   The theory on which Puricelli proceeded

9

Impersonation of a police officer under Massachusetts law requires proof that a person falsely pretended to be a police officer and acted as such or used his apparent authority to command another person to aid or assist him in a matter pertaining to the official duty of an officer.   Although the court (and the parties) are unaware of any Massachusetts appellate case discussing the elements of the crime, other states with similar statutes require that the impersonation must be done with a deliberate or fraudulent intent to induce reliance on the impersonator's pretended acts.   *See, e.g.*, California Penal Code § 538d(a) ("fraudulently impersonating . . . or of fraudulently inducing the belief that he or she is a police officer"); Arizona Criminal Code § 13-2411(A) ("intent to induce another to submit to the person's pretended authority or to rely on the person's pretended acts").[5]

---

was that Sheehan posed as Officer Phelps in part to deflect a potential prosecution.   However, some five months before she presented her affidavit, the Supreme Judicial Court had redefined a "thing of value" to mean "something that has a market or monetary value."   *Commonwealth v. Escobar*, 479 Mass. 225, 227, 229 (2018) (avoiding a criminal prosecution is not a "thing of value" within the meaning of the Massachusetts statute). Neither Puricelli nor the Hingham Clerk-Magistrate appear to have been aware of the change in the law.   The government concedes that the fourth element of identity theft was not satisfied but suggests that the "good faith" exception should apply.   Gov't.'s Br. at 15-16.   As I find that probable cause was established with respect to three of the other target offenses, there is no compelling reason to reach the issue.

[5]   The closest analogous federal criminal statute, 18 U.S.C. § 912, adds

10

Puricelli's affidavit, while admittedly not a literary masterpiece, lays out the steps that Sheehan took to assume the identity of Officer Rick Phelps as part of a scheme to deflect parental complaints by the parents of the boys described in the affidavit that might trigger an actual police investigation. Sheehan created a phony Gmail account in Phelps's name and then fabricated an email exchange with himself in which Phelps purportedly exonerates Sheehan of any sexual impropriety involving the boys.  Sheehan then shared this fictious email chain with the boys' parents (the father of the first boy, the father and mother of the second boy, and the father of the third boy), supposedly corroborated by a phony Massachusetts State Police "report" cobbled up by Sheehan, in an elaborate effort to convince the parents that the boys were lying about his sexual misdeeds.[6]   In the totality of the circumstances, the affidavit establishes probable cause that Sheehan deliberately and falsely represented himself to be Officer Phelps and that

---

an element missing from the state statute, the demanding or obtaining something of value.

[6] As the government notes, Sheehan concedes the impersonation of Officer Phelps.   I agree with the government that his argument that he did not use an "official" Norwell Police Department email account in doing so is a distinction without a difference.   *See* Gov't.'s Br. at 10.

11

evidence of the impersonation would be found stored in his electronic devices, specifically his phone and computers.

The Massachusetts witness intimidation statute, M.G.L. c. 268, § 13B, has gone through several modern permutations. In the current version, as amended most recently in 2018, the statute punishes three types of conduct undertaken with the intent to interfere with the judicial process: (1) causing or threatening to cause physical or emotional injury to any person protected by the statute or doing harm to his or her economic interests and property; (2) the offer of a gift or anything of value as a *quid pro quo*; or (3) "mislead[ing], intimidate[ing], or harass[ing] another person who is a: (A) witness or potential witness; (B) person who is or was aware of information, records, documents or objects that relate to a violation of a criminal law . . . with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: a criminal investigation at any stage . . . ."   It is the third branch component (misleading with the intent to interfere) that is at issue here.

Under section 13B, the Commonwealth is not required to prove that a crime had actually occurred – only the possibility that it had or, alternatively, that an investigation had already begun. *Commonwealth v. Fragata*, 480 Mass. 121, 124-125 (2018); *Commonwealth v. Garcia*, 95 Mass. App. Ct. 1, 8

(2019).   The term "potential witness," as used in the current and previous iteration of the statute, includes any person who has or who might possibly be called upon to testify in a judicial proceeding.   *Commonwealth v. Burt*, 40 Mass. App. Ct. 275, 277-278 (1996). By using the word "potential," the statute includes persons who *might* have witnessed criminal conduct; there is no requirement that the Commonwealth prove actual knowledge on the witness's part.   *Fragata*, 480 Mass. at 125-126. "It is enough that the jury reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication." *Commonwealth v. King,* 69 Mass. App. Ct. 113, 121 (2007).   Finally, the Commonwealth is not required to show that a criminal investigation had commenced or was ongoing or that the victim was furnishing information to the authorities at the time the intimidating act was undertaken.   *Id.*[7]

Here there is every reason to believe (probable cause plus) that Sheehan's efforts to persuade the parents (in the case of the second child with

---

[7] I have set out Massachusetts law in perhaps more detail than necessary as I agree with the government that the Sheehan's restrictive interpretation of section 13B is largely based on case law interpreting prior, less expansive iterations of the statute.   *See* Gov't.'s Br. at 12-13.

13

the aid of his wife) that he had been exonerated from any wrongdoing involving their children was an attempt, however clumsy, to mislead and dissuade them from initiating and cooperating with a police investigation of his misconduct.

The Massachusetts statute criminalizing unauthorized access to a computer, Mass. Gen. Laws, ch. 266, § 120F, states:

> Whoever, without authorization, knowingly accesses a computer system by any means, or after gaining access to a computer system by any means knows that such access is not authorized and fails to terminate such access, shall be punished by imprisonment in the house of correction for not more than thirty days or by a fine of not more than one thousand dollars, or both.

> The requirement of a password or other authentication to gain access shall constitute notice that access is limited to authorized users.

Here as related in the affidavit, Puricelli was told by the second boy that Sheehan had created a Gmail account for the first boy (the alleged victim of the assault) and that Sheehan "spied regularly" on the boy's text messages using a desktop computer and "a bunch of laptops all over his home."   It may be that Sheehan was acting with the boy's knowledge and permission in eavesdropping on his text conversations, but that is an issue of fact that does not detract from a finding of probable cause.   *See United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986) ("The standard of probable cause is the

14

probability, not *prima facie* showing, of criminal activity.").

**Probable Cause: The Second Warrant**

Sheehan's complaint with respect to the second warrant is based on dicta in *United Stats v. Brunette*, 256 F.3d 14 (1st Cir. 2001), also a child pornography case, which he reads to require either the attachment to the affidavit of the allegedly obscene images or a written description in *Lady Chatterley* detail, *viz.*

> [D]oes a given image fall within the statutory definition of child pornography? Only if there is probable cause to believe so may a search warrant issue. A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them.

*Id.* at 18.

In *Brunette*, the affiant, rather than describe the images, attempted to parrot the language of the statute ("a prepubescent boy lasciviously displaying his genitals"), a description that that the Court dismissed as a mere "legal assertion." *Id.* at 17.[8]   By contrast, Puricelli's incorporation of what the State Trooper reported ("images of prepubescent penises that lacked pubic hair") is not a mouthing of statutory formulation, is far more

---

[8] The *Brunette* Court ultimately declined to suppress the images, invoking the good-faith exception.   *Id.* at 19-20.

15

graphic than the language in *Brunette*, and is attributed to the first-hand visual inspection and determination of the State Trooper tasked with downloading the images.

That said, the First Circuit's suggestion of what the government fairly describes as a "best practice," *see United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005), is not a constitutional mandate and is not binding on state courts as a matter of comity.   *See United States v. Morel*, 922 F.3d 1, 11 (1st Cir. 2019) ("The 'best practice' judicial gloss cannot be imposed onto state courts.").[9]

**Other Warrant Issues**

Sheehan's catch-all objections to the warrant can be dealt with summarily.   (1) The claim that the affidavit supporting the first warrant failed to establish a "nexus" between his home and the likelihood that evidence of the target crimes would be found there is rebutted by what the second boy told Puricelli, that Sheehan had a "Mac desktop computer in his home office, "a bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement."   Given that the three

---

[9] To the best of my knowledge, no Massachusetts appellate court has ever applied the First Circuit's "best practice" rule in a child pornography search case.

target crimes for which probable cause was established involved email communications, real and fabricated, computer surveillance, and the mock-up of a supposed police report, it was highly probable that corroborating evidence would be found stored in the devices. (2) The first warrant was not overbroad. The seizing authority was specifically limited by the magistrate to computer equipment, media storage devices, direct evidence of the targeted crimes, and documents showing possession and control of the target premises. (3) The execution of the warrant did not exceed its authorized scope as demonstrated by the items listed in the warrant return filed with the issuing court.[10]

## Motion for a *Franks* Hearing

To be entitled to a *"Franks"* hearing, a defendant must make a "substantial preliminary showing" that an affidavit contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-156, 170 (1978). A showing of simple factual error in an affidavit is insufficient to trigger a *Franks* hearing. *United States v. Monaco*, 700 F.2d 577, 580 (10th Cir.

---

[10] Sheehan has no standing to object to the seizure of an iPhone from his wife's personal possession, if such a thing happened. *See Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980).

17

1983); *United States v. Baldwin*, 691 F.2d 718, 720 n.1 (5th Cir. 1982).   The

reckless omission of material information from the affidavit may also raise a

*Franks* issue. *United States v. Rumney,* 867 F.2d 714, 720 (1st Cir. 1989); *cf.*

*United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) ("[A]n affidavit

which omits potentially exculpatory information is less likely to present a

question of impermissible official conduct than one which affirmatively

includes false information.").

> To mandate an evidentiary hearing, the challenger's attack must
> be more than conclusory and must be supported by more than a
> mere desire to cross-examine. There must be allegations of
> deliberate falsehood or of reckless disregard for the truth, and
> those allegations must be accompanied by an offer of proof. They
> should point out specifically the portion of the warrant affidavit
> that is claimed to be false; and they should be accompanied by a
> statement of supporting reasons. Affidavits or sworn or
> otherwise reliable statements of witnesses should be furnished,
> or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

If a hearing is warranted, the defendant must prove the knowing falsity

or recklessness of the affiant's statements by a preponderance of the

evidence. *Id.* at 156.   The defendant must also show that any deliberately

false or reckless statement was material to the determination of probable

cause. If such a showing is made the offending statement is excised from the

affidavit, which is then reexamined for probable cause. *Id.*, at 171-172; *United*

18

*States v. Veillette*, 778 F.2d 899, 903-904 (1st Cir. 1985); *see also Doescher v. Estelle*, 666 F.2d 285, 288 (5th Cir. 1982) (evidentiary hearing properly denied where, even if all challenged material was excised, the affidavit demonstrated probable cause); *United States v. Alicea*, 205 F.3d 480, 487 (1st Cir. 2000) (*Franks* hearings "are the exception, not the rule" given the rigorous threshold a defendant must meet to be entitled to a hearing).

Sheehan challenges three aspects of Puricelli's affidavit: (1) that the affidavit includes information that is not reflected in a written report of the interview of the second child; (2) that Puricelli omitted information about whether the first child knew that Sheehan was able to access his Gmail account; and (3) that Puricelli omitted a first-hand description of the State Police report. None of these niggles amounts to a "substantial preliminary showing." There is no reason why Puricelli needed stick verbatim to a written report of the second child's interview, a report that as the government points out, is identified by the Trooper who filed it as "a brief summary," especially given the fact that, as the affidavit makes clear, that Puricelli, contrary to defendant's contention, was physically present during the interview. Whether the first child had given permission to Sheehan to access his Gmail account (or had the ability to do so), as previously explained, has no bearing on the finding of probable cause. Finally, I am at a loss to

19

understand what purpose would have been served by the incorporation in the affidavit of a "first-hand" description of the fabricated State Police Report.[11]

ORDER

For the foregoing reasons, the motion to suppress is <u>DENIED</u>. The motion for a *Franks* hearing is also <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

---

[11] In her affidavit, Puricelli stated that a picture of the "Report" given to one of her fellow investigators by the father of the third boy (who had received it from Sheehan) showed "the Massachusetts State Police emblem on the cover, with tabs dividing the sections of the 'report.'" Dkt #68-1 at 8.

20

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Docket No. 18-CR-10391-RGS |
| | ) | |
| DEREK SHEEHAN, | ) | |
| | ) | |
| Defendant. | ) | |

---

GOVERNMENT'S OMNIBUS RESPONSE TO THE DEFENDANT'S MOTIONS
TO SUPPRESS EVIDENCE AND FOR <u>FRANKS</u> HEARING

---

Now comes the United States, by and through the undersigned Assistant United States Attorney, and hereby files its omnibus opposition to the defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants and Motion for a <u>Franks</u> Hearing. For the reasons discussed in greater detail below, this Court should DENY the motions.

**BACKGROUND AND RELEVANT FACTS**

Derek Sheehan (the "defendant") stands charged by indictment in the above-captioned docket with three counts of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e). Count One involves a minor victim identified as "Minor A," Count Two involves a minor victim identified as "Minor B," and Count Three involves a minor victim identified as "Minor C." [Doc. 13]. The investigation precipitating these federal charges stemmed from a separate investigation that began on or around June 28, 2018, when Minor A reported that he was the victim of a past sexual assault by the defendant to the Norwell Police Department. [Search Warrant Affidavit of Special Agent Lisa Crandall ("Crandall Aff.") at ¶ 4, attached hereto as Sealed Exhibit A]. As outlined in more detail below, the ensuing state investigation led to the execution of a state search warrant, issued by and docketed in the Hingham District Court as 1858SW0035, on August

[D.Mot. at 24], the Court should suppress any MP3 players seized.  Finally, even if this Court finds that the language in the affidavit violated the particularity requirement of the Fourth Amendment, the good-faith exception to the exclusionary rule would apply.  Kuc, 737 F.3d at 134.  The motion to suppress, on these grounds, should be denied.

### C.      The search was not executed overbroadly.

The defendant next argues that the search was overbroadly executed, in that a phone was seized from the person of Nichole Sheehan, in direct contravention to the face of the warrant, and in that investigators opened files not pertaining to the crimes outlined in the first warrant.  [D.Mot. at 25-26.]

As an initial matter, the first warrant return does not indicate the location from where the defendant's iPhone was seized.  The return merely indicates that it was seized pursuant to the warrant.  [SW35 Ret.]  The government is unclear as to the basis for the defendant's contention that the phone was seized as part of a "warrantless search."  [D.Mot. at 25.] [14]

The defendant also argues that the affidavit did not supply a basis to believe that there would be photographs or videos of an incriminatory nature, and therefore, the officers never should have reviewed video media in executing the search warrant.  [D.Mot. at 26.]  This argument, it appears, is really an extension of the argument made above – that the affidavit does not draw a sufficient nexus between the type of file to be searched (videos) and the crimes for which the affidavit established probable cause.  Styled as it is, however, it must fail. [15]  First, the affidavit submitted in support of the second warrant indicated that a trooper conducting a forensic analysis

---

[14]  Rather than engage in a hypothetical analysis here, the government reserves argument on this point for a hearing on the motions or, if it would be helpful to the Court, in a separate briefing.

[15]  To the extent the Court agrees that the affidavit did not draw a sufficient nexus to videos, the good-faith exception applies, for the reasons outlined above.

20

of the defendant's phone pursuant to the first warrant observed *pictures* he believed to be child pornography.  This mistake of fact eviscerates the argument; the defendant does not suggest—nor could he, given the facts laid out in the affidavit regarding pictures of the Massachusetts State Police report—a deficient nexus between that type of media and the alleged crimes.  The warrant, authorized by a detached and neutral clerk magistrate, allowed officers to search for pictures or images.  In the absence of an allegation that the magistrate abandoned that detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit.  Leon, 468 U.S. at 926.  That is not the case here, and as such, the "extreme sanction of exclusion is inappropriate." Id.

### D.    The second warrant was properly issued, where it established probable cause to believe the specified items would contain evidence of child pornography.

In executing the first warrant, Trooper Hart observed images on the defendant's phone that he believed to be child pornography.  [SW36 Aff. ¶ 4(b)(3).]  Relying on the First Circuit's decision in United States v. Brunette, 256 F. 3d 14 (1st Cir. 2001), the defendant argues that, because Puricelli did not submit copies of the child pornography that Trooper Hart observed, the affidavit lacks probable cause and the fruits of the warrant should be suppressed.  [D.Mot. at 30.]  If this were an affidavit submitted to a federal magistrate judge in the District of Massachusetts (or elsewhere in the First Circuit), the government might agree.  However, it was not; it was submitted to a clerk magistrate of a state district court.  As such, while the First Circuit's opinion in Brunette may be instructive, it is not binding precedent.  "Although we give respectful consideration to such lower Federal court decisions as seem persuasive, we are not bound by decisions of Federal courts except the decisions of the United States Supreme Court on questions of federal law." Commonwealth v. Pon, 469 Mass. 296, 308 (2014) (internal quotations omitted).  The government is unaware of any Supreme Court or Massachusetts state court case that adopts the "best practice"

outlined in <u>Brunette</u>.  As such, neither Puricelli nor the clerk magistrate who issued the second warrant should be held to its standard.

  To establish probable cause, an affidavit need only establish a "fair probability" that evidence of particular crime will be found in particular locations.  <u>Commonwealth v. Anthony</u>, 451 Mass. 59, 72 (2008).  "An inference drawn from the affidavit, if not forbidden by some rule of law, need only be reasonable and possible…not necessary or inescapable." <u>Commonwealth v. Molina</u>, 476 Mass. 388, 394 (2017) (internal quotations omitted).  Here, Puricelli's affidavit, when examined "in a common sense manner," <u>Syphers</u>, 426 F.3d at 465, establishes such a probability, where it indicates that Trooper Hart observed pictures of prepubescent penises lacking pubic hair. [SW36 Aff. ¶ 4(b)(3).]  The clerk magistrate thus properly issued the warrant to search the specified devices for further evidence of child pornography.

  Once again, even if this Court determines that the affidavit lacked probable cause, the defendant's motion to suppress must be denied because the officers executing the warrant acted in objectively reasonable reliance on it and the good-faith exception applies.

## II. <u>The defendant's motion for a *Franks* hearing must be denied.</u>

  Affidavits executed in support of a search warrant enjoy a presumption of validity.  <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).  A defendant may be entitled to a hearing to contest the factual validity of an affidavit only if he makes a "substantial preliminary showing" on two issues. <u>Franks</u>, 438 U.S. at 170.  First, the defendant must make a showing of "deliberate falsehood or of reckless disregard for the truth" regarding specific portions of the warrant affidavit; "negligence or innocent mistake" will not suffice.  <u>Id.</u> at 171.  If the defendant alleges that the officer was reckless, the defendant must show that "the affiant in fact entertained serious doubts as to the truth of the allegations." <u>United States v. Ranney</u>, 298 F.3d 74, 78 (1st Cir. 2002) (internal quotations omitted).

1        The affiant knew that the gmail account was created in

2    April of 2018.

3        The parents of Minor B, C, and D, were shown the bogus

4    State Police report sometime in the springtime of 2018, and

5    the lack of limitation allowed the officers to search

6    everything from the inception or creation of the account of

7    every single account in the household.

8        The other violation with respect to the manner in which

9    the search warrant was executed, it's crystal clear from the

10    government's own documents that the iPhone which is searched

11    and becomes the predicate, the basis, for the second search

12    warrant, which reveals the items for which the defendant is

13    now charged, is seized from Nicole Sheehan.  She is the wife

14    of the defendant.  And there's a clear restriction that

15    this -- these police do not have authority to search any

16    person present.  That information is from the search warrant

17    return.

18        If your Honor thought -- and I do think it's a valid

19    basis to allow the suppression of the telephone.  If the

20    court thought necessary that some evidence should be taken

21    on that, I don't think that's inappropriate.

22            THE COURT:  We might get to that point.

23        I suppose the question that just occurs to me is what

24    is the defendant's, if it's Nicole's phone, what is his

25    standing with respect to the search?

1          MR. KEEFE:  I think the government is saying it's

2     the defendant's phone.

3          THE COURT:  That may be an evidentiary point that

4     needs to be resolved.

5          MR. KEEFE:  Yeah, and I think that's clear from the

6     reading of the two affidavits that the telephone, the iPhone

7     seized from Nicole Sheehan, belongs to the defendant.

8          So on the *Franks* issue, your Honor, I will be very

9     brief.  They're threefold.  The affiant omitted information

10    from the magistrate that Minor A authorized Sheehan's access

11    to his Apple account.  And what the defendant is arguing

12    here -- I mean, it's in the affidavit that the defendant

13    created the account.  But these detectives interviewed

14    Minor A on multiple occasions, including a SANE interview.

15    And it just defies logic that they didn't ask the kid, Who

16    created the account for you?  How did you come up with the

17    password and the user name?

18         The answer to that obviously would be that the

19    defendant created it and created the password.

20         Including false information that Minor B was spying on

21    Minor A, that argument is essentially that if the defendant

22    had access -- the defendant had access to Minor A's phone

23    and Minor A knows it, then he's not spying on him.

24         And the last argument is the one I mentioned already,

25    your Honor, that omitting the State Police report that I

1    As the Court noted, you know, this became -- this is a

2    case that the federal government adopted after this stage of

3    the investigation had passed.  So I don't know the answer to

4    that.

5    Would that have added to this warrant?  Absolutely.  No

6    question.  I share -- again, I share in the question that

7    the Court is asking, but I think the important thing for us

8    here today, for why we are here today, is whether or not

9    even without that information this warrant was sufficient

10    for the magistrate to issue it; that is, it was

11    sufficiently -- it showed a substantial basis to believe

12    that evidence of a crime would be found in the places

13    designated in the warrant.  And that standard has been met.

14    There is no question.

15        THE COURT:  Going back to the phone.

16        MS. PARUTI:  Yes.

17        THE COURT:  The government's contention is that the

18    phone was the defendant's.

19        MS. PARUTI:  Hm-hmm.

20        THE COURT:  So we are not putting forward a

21    standing issue?

22        MS. PARUTI:  No, no.  That's was the defendant's

23    phone.

24    One thing -- I will call it maybe a "misapprehension"

25    rather than a "misstatement."  But one point of confusion is

 1    where -- or how defense counsel has a basis to say that the

 2    phone was taken from Mrs. Sheehan.  That is not in the

 3    paperwork.  The paperwork that was submitted connected to

 4    the warrant, so the return, says that it was with Nicole

 5    Sheehan.  A plain reading of that supports an inference that

 6    the police abided by the constricts of the warrants; that

 7    is, that they couldn't search other people present at the

 8    house.  It does not say it was taken from her.  It says it

 9    was with her.  I have no further information to believe that

10    the police took Mr. Sheehan's phone off of or away from

11    Mrs. Sheehan besides the defendant's speculation.  And I

12    don't think that's proper for the Court to rely upon or

13    engage in, frankly.

14            THE COURT:  Well, it makes it easier if I do not

15    have to address the standing issue, if we all agree.

16            MS. PARUTI:  It's definitely his phone.  I can tell

17    you that.

18            THE COURT:  Okay.

19            MS. PARUTI:  But I think even if it -- but I will

20    say that truly whether it was his phone or her phone -- I

21    think this goes to one of the other arguments that counsel

22    was weaving into his presentation to the Court today when he

23    was talking about the overbreadth of the warrant and

24    faulting the government or the detectives in this case for

25    not limiting their seeking of objects that belonged to the

```
 1    the information to be seized or sought within the specific

 2    items that were seized.

 3        I may be mistaken, but I don't believe that that was

 4    raised in the filings.  So to the extent that that actually

 5    does become a concern for the Court, which I don't think it

 6    should be, but to the extent it does, if the Court believes

 7    that it needs more information from the government in the

 8    way of argument on that point, I would just ask for leave to

 9    file something about that later.

10        Again, I don't think I need to.  I don't think it was

11    addressed in the defendant's filings.  I think it wasn't

12    addressed because it's not truly an issue here, so I don't

13    believe that the Court needs to spend any time on that.  But

14    I just wanted to flag that in case it does for some reason

15    play a part in the Court's decision-making.

16            THE COURT:  Understood, but I doubt that it will.

17        (Pause in proceedings.)

18            MS. PARUTI:  And I think -- I don't think that I

19    need to say anything beyond what I have written with regards

20    to the *Franks* issue, but again I'm happy to answer any

21    questions on that point.

22            THE COURT:  No.  It's not an issue that I find

23    compelling.

24        Mr. Keefe, would you like the last word?

25            MR. KEEFE:  Your Honor, briefly.
```

1       So the cell phone at issue was taken from the person of

2   Nicole Sheehan.  That comes from the search warrant return,

3   your Honor, and if the United States is stating that that's

4   not accurate or not true, I don't know if the Court --

5       THE COURT:  I think they're saying that's true, or

6   they're not contesting that, but, nonetheless, the phone was

7   the defendant's regardless of where it was --

8       MR. KEEFE:  Yes, but I thought I heard them argue

9   that there's no evidence it was taken from her.  And if

10   that's the case, I don't know if the Court would be inclined

11   to have a short evidentiary hearing to find out where the

12   phone was recovered.

13       THE COURT:  If for some reason I start focusing on

14   that -- in fact, there may be other issues.  If I think

15   evidence is necessary, I will identify those for counsel.

16       MR. KEEFE:  Thank you, your Honor.

17     I didn't mention the good-faith exception, but I will

18   rely on what I argued on the papers.

19     Thank you.

20       THE COURT:  Thank you.

21     Counsel, again, I'm very apologetic about the delay.

22       MS. PARUTI:  It's no problem.

23       THE COURT:  I was sitting in the doctor's office,

24   and he's running around, and there's nothing I can do.

25       MS. PARUTI:  It's stressful enough.

# ADDENDUM B

**Mass. Gen. Laws, ch. 272, § 29C provides:**

Whoever knowingly purchases or possesses a negative, slide, book, magazine, film, videotape, photograph or other similar visual reproduction, or depiction by computer, of any child whom the person knows or reasonably should know to be under the age of 18 years of age and such child is:

(i) actually or by simulation engaged in any act of sexual intercourse with any person or animal;

(ii) actually or by simulation engaged in any act of sexual contact involving the sex organs of the child and the mouth, anus or sex organs of the child and the sex organs of another person or animal;

(iii) actually or by simulation engaged in any act of masturbation;

(iv) actually or by simulation portrayed as being the object of, or otherwise engaged in, any act of lewd fondling, touching, or caressing involving another person or animal;

(v) actually or by simulation engaged in any act of excretion or urination within a sexual context;

(vi) actually or by simulation portrayed or depicted as bound, fettered, or subject to sadistic, masochistic, or sadomasochistic abuse in any sexual context; or

(vii) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or, if such person is female, a fully or partially developed breast of the child; with knowledge of the nature or content thereof shall be punished by imprisonment in the state prison for not more than five years or in a jail or house of correction for not more than two and one-half years or by a fine of not less than $1,000 nor more than $10,000, or by both such fine and imprisonment for the first offense, not less than five years in a state prison or by a fine of not less than $5,000 nor more than $20,000, or by both such fine and imprisonment for the second offense, not less than 10 years in a state prison or by a fine of not less than $10,000 nor more than $30,000, or by both such fine and imprisonment for the third and subsequent offenses.

A prosecution commenced under this section shall not be continued without a finding nor placed on file.

The provisions of this section shall not apply to a law enforcement officer, licensed physician, licensed psychologist, attorney or officer of the court who is in possession of such materials in the lawful performance of his official duty. Nor shall the provisions of this section apply to an employee of a bona fide enterprise, the purpose of which enterprise is to filter or otherwise restrict access to such materials, who possesses examples of computer depictions of such material for the purposes of furthering the legitimate goals of such enterprise.