No. 21-1983

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————

UNITED STATES OF AMERICA,
APPELLEE

v.

DEREK SHEEHAN,
DEFENDANT-APPELLANT

———————

ON APPEAL FROM A JUDGMENT IN A CRIMINAL CASE,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————

BRIEF FOR THE UNITED STATES

———————

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

DONALD C. LOCKHART
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3193

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE ISSUES .......................................................1

STATEMENT OF THE CASE ...........................................................1

      A.    Offense facts.............................................................1

      B.    Suppression facts.....................................................2

      C.    Procedural history....................................................4

SUMMARY OF ARGUMENT ..........................................................6

ARGUMENT .....................................................................................8

I.     Standard of review .................................................................8

II.    The officers did not exceed the scope of the first search warrant merely by seizing Sheehan's iPhone from his wife's hand, and at a minimum the good-faith exception applies here ......................8

      A.    The Court should bypass the standing issue .........................9

      B.    Even accepting Sheehan's account of what happened, there was no "search" and thus no violation of the terms of the state warrant..................................................................10

      C.    The good-faith exception applies in any event ...................15

III.   The second search warrant was supported by probable cause to believe that Sheehan's iPhone would contain child pornography, and at a minimum the good-faith exception applies here ...........................16

      A.    The pertinent legal principles .............................................16

      B.    The operative warrant facts ................................................19

    C.      There was ample probable cause under all the circumstances............22

    D.      The good-faith exception applies in any event ...................................25

CONCLUSION ......................................................................................................26

CERTIFICATE OF COMPLIANCE.....................................................................27

CERTIFICATE OF SERVICE ..............................................................................28

ADDENDUM

## TABLE OF AUTHORITIES

### CASES

*Baranski v. United States*,
    515 F.3d 857 (8th Cir. 2008) ............................................................21

*Commonwealth v. Rex*,
    469 Mass. 36, 11 N.E.3d 1060 (2014) ............................................23

*Commonwealth v. Vieira*,
    483 Mass. 417, 133 N.E.3d 296 (2019) ..........................................19

*Heien v. North Carolina*,
    574 U.S. 54 (2014) ..........................................................................15

*Herring v. United States*,
    555 U.S. 135 (2009) ........................................................................16

*Hudson v. Michigan*,
    547 U.S. 586 (2006) ........................................................................16

*Kaley v. United States*,
    571 U.S. 320 (2014) ........................................................................18

*Leininbach v. United States*,
    38 F.2d 442 (3d Cir. 1930) ..............................................................13

*New York v. Ferber*,
    458 U.S. 747 (1982) ........................................................................24

*Rawlings v. Kentucky*,
    448 U.S. 98 (1980) ............................................................................9

*Spencer v. Roche*,
    659 F.3d 142 (1st Cir. 2011) ............................................................13

*Texas v. Brown*,
    460 U.S. 730 (1983) ........................................................................18

*United States v. Beckett*,
    321 F.3d 26 (1st Cir. 2003) ..............................................................25

*United States v. Brunette*,
   256 F.3d 14 (1st Cir. 2001) ........................................................ 7, 17, 22-24

*United States v. Burdulis*,
   753 F.3d 255 (1st Cir. 2014) ...............................................................17

*United States v. Charriez-Rolón*,
   923 F.3d 45 (1st Cir. 2019) .................................................................23

*United States v. Chiu*,
   36 F.4th 294 (1st Cir. 2022) ......................................................... 17-19, 24

*United States v. Congo*,
   21 F.4th 29 (1st Cir. 2021) ........................................................... 10-11

*United States v. Cotton*,
   261 F.3d 397 (4th Cir. 2001),
   *rev'd on other grounds*, 535 U.S. 625 (2002) ...............................................14

*United States v. Cruz-Mendez*,
   467 F.3d 1260 (10th Cir. 2006).............................................................14

*United States v. Feliz*,
   182 F.3d 82 (1st Cir. 1999) .................................................................18

*United States v. Fuccillo*,
   808 F.2d 173 (1st Cir. 1987) ...............................................................15

*United States v. Gonzalez-Arias*,
   946 F.3d 17 (1st Cir. 2019) .................................................................18

*United States v. Grant*,
   218 F.3d 72 (1st Cir. 2000) .................................................................18

*United States v. Henry*,
   848 F.3d 1 (1st Cir. 2017) ..................................................................20

*United States v. Hurwitz*, 459 F.3d 463
   (4th Cir. 2006)………………………………………………………………..21

*United States v. Khounsavanh*,
   113 F.3d 279 (1st Cir. 1997) ...............................................................11

iv

*United States v. Lazar*,
   604 F.3d 230 (6th Cir. 2010) ........................................................... 21

*United States v. Leon*,
   468 U.S. 897 (1984) ......................................................................... 25

*United States v. Ludwig*,
   641 F.3d 1243 (10th Cir. 2011) ...................................................... 18

*United States v. McLellan*,
   792 F.3d 200 (1st Cir. 2015) ........................................................... 18

*United States v. Melvin*,
   596 F.2d 492 (1st Cir. 1979) ........................................................... 18

*United States v. Morel*,
   922 F.3d 1 (1st Cir. 2019) ............................................................... 17

*United States v. Morris*,
   977 F.2d 677 (1st Cir.1992)……………………………………………21

*United States v. Moss*,
   936 F.3d 52 (1st Cir. 2019) ............................................................. 10

*United States v. Nohara*,
   3 F.3d 1239 (9th Cir. 1993) ............................................................ 14

*United States v. Pimentel*,
   26 F.4th 86 (1st Cir. 2022) ......................................................... 2, 15

*United States v. Reyes*,
   24 F.4th 1 (1st Cir. 2022) ................................................................. 8

*United States v. Rivera*,
   825 F.3d 59 (1st Cir. 2016) ............................................................. 18

*United States v. Rivera-Rosario*,
   300 F.3d 1 (1st Cir. 2002) ................................................................. 3

*United States v. SDI Future Health, Inc.*,
   568 F.3d 684 (9th Cir. 2009) .......................................................... 20

v

*United States v. Soto*,
    799 F.3d 68 (1st Cir. 2015) .................................................................................18

*United States v. Sowers*,
    136 F.3d 24 (1st Cir. 1998) .................................................................................10

*United States v. Symonevich*,
    688 F.3d 12 (1st Cir. 2012) ...................................................................................9

*United States v. Syphers*,
    426 F.3d 461 (1st Cir. 2005) ...............................................................................25

*United States v. Ventresca*,
    380 U.S. 102 (1965) ............................................................................................21

*United States v. Woodbury*,
    511 F.3d 93 (1st Cir. 2007) .................................................................................18

*United States v. Zannino*,
    895 F.2d 1 (1st Cir. 1990) ........................................................................... 12, 15

*Valente v. Wallace*,
    332 F.3d 30 (1st Cir. 2003) .................................................................................18

*Ybarra v. Illinois*,
    444 U.S. 85 (1979) ..............................................................................................10

## STATUTES, RULES AND REGULATIONS

18 U.S.C. § 2251(a) ....................................................................................................4

18 U.S.C. § 2251(e) ....................................................................................................4

Fed. R. App. P. 10(a) .................................................................................................3

Mass. Gen. Laws, ch. 265, § 13B ............................................................................19

Mass. Gen. Laws, ch. 268, § 13B ............................................................................19

Mass. Gen. Laws, ch. 272, § 29C .............................................................................4

Mass. Gen. Laws, ch. 272, § 29C(vii) .....................................................................17

vi

### OTHER AUTHORITIES

2 Wayne R. Lafave, *Search and Seizure* §§ 4.9(a)-(d) (6th ed. 2021 update).........10

## STATEMENT OF THE ISSUES

1.    The officers who executed the first search warrant at defendant's home did not "search" his wife when they merely seized his iPhone from her hand, and the good-faith exception applies here in any event.

2.    There was at least a "fair probability" that one or more of the devices seized from defendant's home pursuant to the first search warrant would contain child pornography, justifying the second warrant authorizing a search of those devices, and the good-faith exception applies here in any event.

## STATEMENT OF THE CASE

### A.    Offense facts

As he later admitted in pleading guilty, between March 2017 and July 2018, defendant-appellant Derek Sheehan sexually abused three 11-to-12-year-old boys and created videos that documented the abuse which he stored on his cellphone. [ECF 151 at 19-23; Presentence Report (PSR) ¶¶ 12-27]. The victims were friends of Sheehan's son and in two instances players on the football team Sheehan coached, and he molested them during sleepovers at the Sheehan residence in Norwell, Massachusetts, while filming the crimes using a hidden camera. [*Id.*].

1

### B.    __Suppression facts__[1]

In an apparent effort to allay concerns about whether he had sexually abused young boys and to deter witnesses from coming forward, Sheehan fabricated email exchanges with a Norwell police officer to create the false impression that he had been investigated and cleared of any wrongdoing (going so far as to include materials bearing the official logo of the Massachusetts State Police), and he shared this information with parents of his alleged victims. [GA: 3-6, 11-15; SJA: 57-59].[2]

Sheehan's ruse was unsuccessful. On June 28, 2018, the older sister of one victim visited the Norwell Police Department to report that Sheehan had sexually assaulted her brother. [GA: 3; SJA: 57]. She also gave the officers her brother's cellphone, which she said contained email exchanges reflecting Sheehan's false story about having been exonerated, including alleged statements of the Norwell police officer. [GA: 3-4; SJA: 57].

---

[1] The suppression facts (condensed here, with further details appearing in the argument section) are drawn from the district court's order denying Sheehan's suppression motion and from the search warrant materials that formed the basis of that order. *See United States v. Pimentel*, 26 F.4th 86, 88 n.1 (1st Cir. 2022) (gleaning suppression facts from "the district court order and any other reliable evidence in the motion to suppress record") (cleaned up). For his part, Sheehan "does not quarrel" with the district court's fact findings. [Br. 3].

[2] The government cites its addendum as "GA:__," the joint appendix as "JA:__," and the sealed joint appendix as "SJA:__."

On August 16, 2018, officers obtained a state search warrant authorizing a search of Sheehan's house and his person for various items such as computers and cellphones. [GA: 3; SJA: 51-75]. A box on the warrant form was checked to indicate: "You . . . are not also commanded to search any [other] person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." [SJA: 51]. Although the affidavit in support of the warrant recited the evidence noted above as well as other facts indicating that Sheehan had sexually abused boys, it alleged there was probable cause to believe Sheehan had committed four non-sex-related state crimes: impersonation of a police officer; witness interference and obstruction; unauthorized access of a computer; and identity fraud. [GA: 5-6; SJA: 51-52, 54-56].

When officers executed the warrant at Sheehan's house, they seized his iPhone and various other devices. [GA: 6; SJA: 71-72]. A state police form (distinct from the search warrant return) noted that the iPhone was "with" Sheehan's wife when it was seized. [SJA: 8, 30; JA: 83-84].[3]

After an officer saw "images of prepubescent penises that lacked pubic hair" on Sheehan's iPhone, the state police applied for and received a second warrant

---

[3] Although the parties quoted and paraphrased one passage in the form, the form itself was never submitted to the district court and therefore it is not part of the record. *See* Fed. R. App. P. 10(a); *United States v. Rivera-Rosario*, 300 F.3d 1, 9 (1st Cir. 2002).

authorizing them to conduct a detailed search of the device (and other devices seized) based on probable cause to believe it would contain child pornography, in violation of Mass. Gen. Laws, ch. 272, § 29C. [GA: 6-7; SJA: 76-86]. This search revealed the videos of Sheehan sexually abusing three boys, and it triggered a federal indictment charging him with three counts of sexual exploitation of children in violation of 18 U.S.C. §§ 2251(a) and (e). [JA: 15-19].

### C.     <u>Procedural history</u>

Sheehan filed a motion to suppress in which he faulted both search warrants. Sheehan challenged the first warrant on two main grounds: (1) it failed to establish probable cause that he had committed the four listed state crimes [SJA: 9-21; GA: 9-15]; and (2) it was overbroad for various reasons [SJA: 21-30; GA: 16-17]. Sheehan also made cursory complaints that the district court termed "catch-all objections." [GA: 16]. One such claim was that the officers exceeded the scope of the warrant by seizing the iPhone from his wife, because the warrant had prohibited a "search" of others who might be present at the address. [SJA: 30-31; JA: 74-75, 88; GA: 17]. On appeal, Sheehan has abandoned all but this last claim.

With respect to the second warrant, Sheehan argued that it failed to supply probable cause to believe that child pornography would be found on his iPhone or his other devices, principally because the affidavit relied on an officer's description

of the penis images rather than attaching the actual photos themselves. [SJA: 35-38; GA: 15-16]. Sheehan renews this contention on appeal.

Following briefing [SJA: 1-38, 87-111; JA: 20-46], and non-evidentiary hearings held on September 20 and November 15, 2019 [JA: 47-55, 59-89], the district court (Stearns, J.) issued a 20-page ruling rejecting all of Sheehan's suppression claims. [GA: 1-20]. As relevant here, in addressing Sheehan's "catch-all objections" that could be "dealt with summarily," the court said it was satisfied from its review of the first search warrant return's list of seized items that there had been no scope violation, while adding in a footnote that Sheehan lacked a reasonable expectation of privacy in the iPhone if indeed his wife possessed it at the time of the search. [GA: 16-17 & n.10]. As to the second warrant, the court found that it was supported by probable cause to believe the phone would contain child pornography notwithstanding the fact that the penis images were not appended to the warrant affidavit. [GA: 15-16].

A year and a half later, Sheehan moved for reconsideration of the first ruling based in part on an allegation that an officer had seized the iPhone from his wife's hand. [JA: 90-98]. Sheehan never explained why, if this were so, the mere action of taking the phone from her hand constituted a "search" barred by the first search warrant. The government opposed the motion [JA: 99-101], and the district court denied it without further comment [JA: 102].

5

On July 20, 2021, Sheehan pled guilty conditionally to all three federal charges, preserving his right to appeal the denial of his suppression-related motions. [ECF 123-125]. On November 23, 2021, the district court sentenced Sheehan to 540 months in prison, emphasizing the "protracted and calculated nature of the conduct involved"; the "obsessive, savage, and predatory nature of the crime"; and Sheehan's "abuse of a position of authority."  [ECF 152 at 37]. Sheehan timely appeals [JA: 103], advancing the two suppression theories noted above.

## SUMMARY OF ARGUMENT

1.     Even assuming the search warrant for Sheehan's home barred a search of others who might be present during the execution of the warrant, and that a violation of this prohibition could lead to suppression, the record is bereft of any indication that the officers recovered his iPhone by searching the person of his wife. Indeed, the position that Sheehan himself espoused below—that an officer seized the iPhone from his wife's hand—negates any possibility that a search took place. No search occurs when officers merely seize from someone's hand a visible item that is within the scope of a search warrant. And at a minimum, the good-faith exception applies here. Thus, the Court may affirm the denial of Sheehan's suppression motion without addressing the district court's ruling that Sheehan lacked a reasonable expectation of privacy in the phone.

6

2.    For three main reasons, there was more than a "fair probability" that one or more of the devices seized from Sheehan's home, including his iPhone, would contain child pornography. First, the description of "images of prepubescent penises that lacked pubic hair" differs significantly from the affidavit language criticized in *United States v. Brunette*, 256 F.3d 14 (1st Cir. 2001), as the district court found. Second, the description indicates that the images focused on the penises and were not merely pictures of naked boys—a key factor in the "lewd"/"lascivious" test. And third, the images were stored in Sheehan's own cellphone, at a time when a state judge had found probable cause to believe he had engaged in "indecent" touching of a boy under the age of 14, and in circumstances where there were strong indications he had molested this boy as well as other boys and committed related misconduct. The surrounding evidence that Sheehan was sexually attracted to prepubescent boys and had engaged in sexual acts with at least one minor victim strongly supported the inferences that the "images of prepubescent penises that lacked pubic hair" that Sheehan kept on his own cellphone were (a) further evidence of those sexual offenses against children, and (b) at the very least, images of the type designed to appeal to a person with such proclivities, and hence "lewd" under state law for either or both reasons. And in any event, the facts did not fall so woefully short of the fair-probability mark that it was unreasonable for the officers to rely on the second search warrant. Thus, the good-faith exception applies here.

7

# **ARGUMENT**

## I.    **Standard of review**

In evaluating a suppression ruling, this Court considers the evidence "in the light most favorable to [that] ruling," and it may affirm the denial of suppression "on any basis apparent in the record." *United States v. Reyes*, 24 F.4th 1, 11 (1st Cir. 2022) (cleaned up). The Court reviews fact findings for clear error and legal conclusions *de novo*. *Id.*

## II.    **The officers did not exceed the scope of the first search warrant merely by seizing Sheehan's iPhone from his wife's hand, and at a minimum the good-faith exception applies here**

Sheehan argues [Br. 14-17] the district court erred in ruling that he had "no standing to object to the seizure of an iPhone from his wife's personal possession, if such a thing happened." [GA: 17 n.10]. The government agrees this no-standing ruling is questionable on the current record. The Court need not resolve the issue, however, since Sheehan's suppression theory plainly fails on the merits even if he is correct that the iPhone was seized from his wife's hand. That plain-view seizure of an item sought by the search warrant was not a "search," and thus the officers did not violate any provision of the warrant. And at the very least, the good-faith exception applies here, so there is no justification for suppressing the iPhone.

8

**A.      The Court should bypass the standing issue**

As Sheehan recognizes [Br. 16], "[t]he burden to establish a reasonable expectation of privacy lies squarely on the movant," *United States v. Symonevich*, 688 F.3d 12, 21 n.6 (1st Cir. 2012), and a defendant does not satisfy that burden merely by pointing to a "possessory interest" in an object, *id.* at 21 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980)). At the November 15 hearing, however, the government not only conceded the iPhone was Sheehan's but stated that it was not contesting standing. [JA: 83-85]. Moreover, the existing record lacks details that might bear on whether Sheehan had a reasonable expectation of privacy in the iPhone. The mere fact that Sheehan's wife may have had the phone in her "personal possession" (*e.g.*, that she may have been holding it in her hand) when the officers executed the first search warrant, is not dispositive, as the Supreme Court opinion the district court cited [GA: 17 n.10] itself illustrates. *See Rawlings*, 448 U.S. at 104-05 (defendant had no reasonable expectation of privacy in drugs that he hastily stashed in the purse of a woman he had only known for a "few days," where he "had never sought or received access to her purse prior to that sudden bailment," at least one other person "had free access to her purse on the very morning of the arrest [and] had rummaged through its contents," and "the record also contains a frank admission by petitioner that he had no subjective expectation that [the] purse would remain free from governmental intrusion").

9

Because a definitive assessment of standing would require further factual development, the Court should bypass the standing issue and proceed to the merits, which are easily addressed. *See United States v. Moss*, 936 F.3d 52, 58 (1st Cir. 2019) (bypassing standing issue and affirming suppression ruling on merits); *United States v. Sowers*, 136 F.3d 24, 28 (1st Cir. 1998) (electing not to address "the district court's determination that Sowers, having lent his jacket, could no longer claim a reasonable expectation of privacy vis-à-vis the contents of its pockets," and instead affirming denial of suppression on the merits).

### B.     Even accepting Sheehan's account of what happened, there was no "search" and thus no violation of the terms of the state warrant

A warrant that only authorizes the search of a location ordinarily does not confer on officers an automatic right to search the persons of occupants or visitors who may be present when the warrant is executed. *See Ybarra v. Illinois*, 444 U.S. 85, 91-92 & n.4 (1979). Such person searches during a premises search are nonetheless lawful in certain circumstances. *See* 2 Wayne R. Lafave, *Search and Seizure* §§ 4.9(a)-(d) (6th ed. 2021 update) (cataloguing recognized exceptions). For example, even when a search warrant for a premises is silent on the matter, officers may search an occupant or visitor upon probable cause to believe the individual is concealing on their person an item that is within the scope of the search warrant. *See Ybarra*, 444 U.S. at 91-96; Lafave, *Search and Seizure* § 4.9(c); *cf. United States v.*

*Congo*, 21 F.4th 29, 33-34 (1st Cir. 2021); *United States v. Khounsavanh*, 113 F.3d 279, 287-88 (1st Cir. 1997).

In the present case, the warrant "commanded" officers to search Sheehan's house and his person for certain listed items, including cellphones. [SJA: 51, 65-68]. A box on the warrant form, however, was checked to indicate: "You . . . are not also commanded to search any [other] person present who may be found to have such property in his or her possession or under his or her control or to whom such property may have been delivered." [SJA: 51]. The government assumes *arguendo* that the phrase "are not also commanded" should be interpreted to mean that the issuing state judge positively banned searches of the persons of others who might be present when the warrant was executed, though a more plausible reading of this language is that it merely means that such searches are not authorized in advance by the warrant but may be permissible depending on the circumstances that exist when the warrant is executed. The government further assumes *arguendo* that a violation of such a state court order (so construed) could lead to suppression in a federal case despite the clear federal rule that officers may search an occupant or visitor when they have probable cause to believe that the individual is concealing on their person an item that is within the scope of the search warrant. Even under those twin assumptions, however, Sheehan's suppression claim must fail for a simple reason: The record does not indicate that the officers obtained Sheehan's iPhone by *searching* his wife. Quite

11

the contrary. The record, including Sheehan's own affidavit prepared and submitted by his counsel, readily refutes any such notion.

In his initial suppression motion, Sheehan cited just one piece of evidence in suggesting that officers discovered his cellphone by searching the person of his wife: a state police form noting the phone was "with" his wife when it was seized. [SJA: 8, 30]. Defense counsel alluded to the form at the November 15 hearing, without quoting it and without expanding on his position. [JA: 74, 88]. But of course, that the cellphone was "with" Nichole Sheehan hardly means that it was concealed on her person and retrieved pursuant to a search, as the government suggested at the hearing. [JA: 83-84].

In response, defense counsel merely argued that the "with" *could* be construed to mean that the cellphone "was *taken from the person* of Nicole [sic] Sheehan." [JA: 88 (emphasis added)]. Counsel was careful not to allege that an actual *search* of Nichole's person—such as an exploration of her clothing—had taken place, even though his own client was in a prime position to level such an accusation. And even on appeal, Sheehan merely assumes that the seizure of the iPhone amounted to a search, even though a seizure and a search are plainly not the same thing. [Br. 14-17]. He never explains why this should be so, thus waiving any appellate claim on the subject. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

In any event, Sheehan's own account of what happened eliminates any possibility that a search took place. A year and a half after the district court denied his suppression motion, Sheehan moved for reconsideration [JA: 90-96], and his counsel attached to the motion an affidavit in which Sheehan now averred that his wife was "in possession" of his iPhone when the warrant was executed, and that: "I saw a police officer physically remove this iPhone from my wife's person. This officer grabbed my wife by the arm, twisted her arm and *removed the phone from her hand*." [JA: 97 (emphasis added)].

Even if Sheehan's belated assertion were credited, it only confirms that no search occurred. After all, if Nichole Sheehan was holding the phone in her hand when it was seized, then it was plainly visible to the officer who seized it, and "[i]t is well settled that a police officer's observation of an item in plain view does not constitute a search so long as the officer makes his observation from a lawful vantage point." *Spencer v. Roche*, 659 F.3d 142, 149 (1st Cir. 2011). The vantage point here was entirely lawful given the search warrant. Moreover, the fact that an officer may have "removed" the phone from Nichole's hand after seeing it—or even "twisted her arm" to get her to release it—does not even remotely suggest a search occurred; it merely reflects there was a seizure. *See Leininbach v. United States*, 38 F.2d 442, 444 (3d Cir. 1930) ("There is no question as to the lawfulness of a search, because there was no search at all. There was simply a seizure.")

13

Were it otherwise, the target of a lawful search warrant that banned searches of other persons present could evade it merely by tossing incriminating evidence or contraband into the hands of another occupant of the place to be searched, who could then hide or destroy those items as officers scrambled to get a new warrant. In the present case, for example, Nichole Sheehan might have wiped the iPhone's data if given a chance. Not surprisingly, Sheehan cites no case law supporting such an absurd outcome. The bottom line is that there is no search when an officer simply seizes from someone's hand a visible item that is within the scope of a search warrant or whose incriminating character is otherwise apparent. *See, e.g.*, *United States v. Cruz-Mendez*, 467 F.3d 1260, 1263, 1266 (10th Cir. 2006) (in case where officers were lawfully in an apartment based on consent and they saw a "cell phone protruding from the [defendant's jacket] pocket," "[t]he officers' observation of the cellular phone did not violate the Fourth Amendment"); *United States v. Cotton*, 261 F.3d 397, 409 (4th Cir. 2001), *rev'd on other grounds*, 535 U.S. 625 (2002) (plain-view seizure of key after "the officers noticed the key in Powell's hand"); *United States v. Nohara*, 3 F.3d 1239, 1242-43 (9th Cir. 1993) (plain-view seizure of methamphetamine pipe from defendant's hand).

Sheehan cites no Massachusetts authority for the proposition that the word "search" in the operative language of the state search warrant form—"You . . . are not also commanded to search any person present . . ."—is a term of art that also

14

encompasses plain-view *seizures* that would not qualify as searches under the Fourth Amendment. And even if an argument could be constructed in support of such a counterintuitive interpretation of "search"—Sheehan makes no effort along these lines in his opening brief, thus waiving the position, *see Zannino*, 895 F.2d at 17— any conceivable mistake of law by the officers on this point was surely reasonable. *See Heien v. North Carolina*, 574 U.S. 54, 61-62, 66 (2014) (denying suppression because mistake of law was reasonable, and observing that in the case of such reasonable mistakes "there [i]s no violation of the Fourth Amendment in the first place").

### C.    The good-faith exception applies in any event

At the very least, the officers acted in good faith in seizing Sheehan's iPhone from his wife given the circumstances outlined above. Citing *United States v. Fuccillo*, 808 F.2d 173 (1st Cir. 1987), Sheehan appears to argue [Br. 10, 20] that the good-faith exception cannot apply to the *execution* of a search warrant, but that is simply incorrect, as a recent decision of this Court attests. *See United States v. Pimentel*, 26 F.4th 86, 90-91 (1st Cir. 2022) (observing that "Pimentel's claim that the HPD exceeded the scope of the search warrant does not itself foreclose the application of the good-faith exception," citing Supreme Court authority, dismissing "dicta" in *Fuccillo* that could suggest otherwise, and holding that the good-faith exception applied even though officers searched a different floor of a building than

the one specified in the warrant). The officers here "reasonably believed that the warrant authorized them," *id.* at 92, to seize Sheehan's iPhone from his wife and that such a seizure was not a "search" within the meaning of the warrant. Thus, even if that belief was mistaken—and the government is aware of no Massachusetts precedent suggesting it was—there would be no basis for employing the "extreme sanction of exclusion," *Herring v. United States*, 555 U.S. 135, 140 (2009) (cleaned up), or "the massive remedy of suppressing evidence of guilt," *Hudson v. Michigan*, 547 U.S. 586, 599 (2006).

### III. The second search warrant was supported by probable cause to believe that Sheehan's iPhone would contain child pornography, and at a minimum the good-faith exception applies here

There was more than a "fair probability" that one or more of the devices seized from Sheehan's home would contain child pornography, notwithstanding the fact that the "images of prepubescent penises that lacked pubic hair" that the Trooper saw on Sheehan's iPhone were not attached to the affidavit in support of the second search warrant. And at the very least, that affidavit did not fall so short of the mark that it was unreasonable for the officers to rely on the warrant.

### A. The pertinent legal principles

Sheehan argues that the facts recited in the second warrant affidavit did not support a "fair probability" that one or more of the devices seized from his house, including his iPhone, would contain images of minors "depicted or portrayed in any

16

pose, posture or setting involving a *lewd exhibition* of the unclothed genitals, pubic area, [or] buttocks." Mass. Gen. Laws, ch. 272, § 29C(vii) (emphasis added). [Br. 10-14]. He relies principally on decisions of this Court holding that "[i]n cases in which the warrant request hinges on a judgment by an officer that particular pictures are pornographic, the officer must convey to the magistrate more than his mere opinion that the images constitute pornography," and that the safest course is to attach the images at issue or provide a detailed description of them. *United States v. Burdulis*, 753 F.3d 255, 261 (1st Cir. 2014); *accord United States v. Chiu*, 36 F.4th 294, 298 (1st Cir. 2022); *United States v. Brunette*, 256 F.3d 14, 17-18 (1st Cir. 2001).[4]

As the district court observed citing *Morel* [GA: 16], a "best practice" rule like this "cannot be imposed onto state courts." *Morel*, 922 F.3d at 11 ("[I]t is the Fourth Amendment probable cause standard that governs."). Thus, in the end, this Court's review entails an ordinary probable cause assessment, as part of which it "give[s] significant deference to the magistrate judge's initial evaluation, reversing only if we see no substantial basis for concluding that probable cause existed." *Chiu*, 36 F.4th at 297 (cleaned up).

---

[4] Sheehan refrains from arguing there was inadequate evidence that the images in this case were of penises of real boys who were minors. *See, e.g.*, *United States v. Morel*, 922 F.3d 1, 11-12 (1st Cir. 2019).

The probable cause standard is settled. As this Court recently reiterated in rejecting claims like Sheehan's: "The judicial task in a probable-cause determination is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Chiu*, 36 F.4th at 297 (cleaned up). "Fair probability," the Supreme Court has cautioned, "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). As the district court noted citing *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979) [GA: 2], "fair probability" is not a "more likely than not" or "more likely true than false" standard.[5] And in a case like this one, the Court focuses not just on the search warrant affidavit's description of the sexual images—as Sheehan's brief implies [Br. 11-14]—but on the "totality of the circumstances" set forth in the affidavit, including

---

[5] *Texas v. Brown*, 460 U.S. 730, 742 (1983) (plurality opinion); *United States v. Gonzalez-Arias*, 946 F.3d 17, 25 (1st Cir. 2019); *United States v. Rivera*, 825 F.3d 59, 63 (1st Cir. 2016); *United States v. Soto*, 799 F.3d 68, 84 (1st Cir. 2015); *United States v. McLellan*, 792 F.3d 200, 209 (1st Cir. 2015); *United States v. Woodbury*, 511 F.3d 93, 98 (1st Cir. 2007); *United States v. Grant*, 218 F.3d 72, 75 (1st Cir. 2000); *United States v. Feliz*, 182 F.3d 82, 87 (1st Cir. 1999); *Melvin*, 596 F.2d at 495 (rejecting argument that "would define [probable cause] mathematically to mean 'more likely than not' or 'by a preponderance of the evidence'"); *see also United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011) (Gorsuch, J.) (collecting cases holding that a "fair probability" "need not reach the fifty percent mark," that it is not a "more likely than not" standard, and that it is "something less than a preponderance"); *but see Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir. 2003) (stating issue is "arguably unsettled," without addressing *Brown*, *Grant*, *Feliz*, or *Melvin*).

"contextual and investigatory details" that may increase the odds that the images at issue are pornographic. *Chiu*, 36 F.4th at 298-99.

**B.     The operative warrant facts**

Sheehan fails to address key contextual and investigatory details contained in the affidavit supporting the second search warrant. In setting forth the facts, Norwell police officer Kayla Puricelli began by noting that, following a seven-week investigation, the Massachusetts State Police obtained a warrant to arrest Sheehan on charges of indecent assault and battery on a child under the age of 14, and witness intimidation, in violation of Mass. Gen. Laws, ch. 265, § 13B, and ch. 268, § 13B. [SJA: 80]. Thus, by that time, a state judge had already found there was then probable cause to believe Sheehan had committed a "battery" that required a "touching [that] was indecent," and that the victim was "a child under the age of fourteen." *Commonwealth v. Vieira*, 483 Mass. 417, 423 n.12, 133 N.E.3d 296, 303 n.12 (2019). Officer Puricelli next stated that Sheehan was arrested pursuant to this warrant when his home was searched on August 17, 2018, and that his iPhone was seized at that time. [SJA: 80]. Finally, Puricelli affirmed: "On Monday, August 27, 2018, I was advised by Massachusetts State Police Trooper Hart at the Computer Crimes Unit, that while downloading the digital evidence from Derek Sheehan's iPhone . . . he identified pictures he believed to be child pornography. The pictures consisted of images of prepubescent penises that lacked pubic hair." [SJA: 80].

19

But there was more. Although the Court need not resolve the issue to affirm, there were additional contextual and investigatory details set forth in the *first* search warrant affidavit, and these facts must be considered as well. As the district court determined:

> Although Puricelli did not specifically incorporate by reference her first affidavit, she four times listed the docket number of the first warrant (1858SW0035). She also disclosed that the first application involved the seizure of the same items as named in the second, although in an investigation of different crimes. Notably, the second warrant was given the next successive docket number to the first (1858SW0036). It may be reasonably inferred that the second judge would have been aware of the earlier warrant issued by his court.

[GA: 6 n.3]. The text of the warrant affidavit confirms these details. [SJA: 80-81]. Moreover, Sheehan makes no effort to contest the court's ultimate conclusion that the first affidavit was incorporated into the second one, and thus he has waived any contrary claim. *See United States v. Henry*, 848 F.3d 1, 7 (1st Cir. 2017) (defendant waived any challenge to one component of a suppression ruling by not addressing it in his opening brief). And in any event, the court's assessment is sound, particularly in view of the Supreme Court's admonition that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).[6]

---

[6] Though not right on point, cases rejecting claims based on the particularity requirement lend further support. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 700 (9th Cir. 2009) (observing that "there are no required magic words of

The affidavit in support of the first search warrant contained three additional categories of relevant evidence. First, Officer Puricelli stated that on June 28, 2018, the older sister of one of Sheehan's victims reported to the police that Sheehan had "sexually assaulted" her younger brother, a boy born in 2005 and known as "Minor A," and that her brother's iPhone (which she left with the police) contained evidence of the ruse discussed above [*supra* at 2], as part of which Sheehan concocted emails and other materials purporting to show that the police had investigated and cleared him of any sexual improprieties. [SJA: 57; GA: 3, 11]. Second, Puricelli recounted the police interviews of several parents of alleged minor victims of Sheehan (including the father of Minor A), as well as evidence from Google, all of which further documented that ruse, including Sheehan's creation of a fake Gmail address for the Norwell police officer who had purportedly exonerated him. [SJA: 57-61; GA: 3-5]. And third, Puricelli summarized an August 2018 police interview of a boy known as Minor B, who described how Sheehan: (1) "had access to [Minor A's] Apple ID, as Mr. Sheehan helped [Minor A] create it a while ago"; (2) "has access

---

incorporation") (cleaned up); *United States v. Lazar*, 604 F.3d 230, 236 (6th Cir. 2010) (same, and noting that "'[i]ncorporation' of one thing into another need not be by express 'reference'"); *Baranski v. United States*, 515 F.3d 857, 860-61 (8th Cir. 2008) (warrant that "referred" to affidavit successfully incorporated it even though affidavit itself did not "accompany" warrant); *United States v. Hurwitz*, 459 F.3d 463, 471-73 (4th Cir. 2006) (same); *but see United States v. Morris*, 977 F.2d 677, 681 n.3 (1st Cir. 1992).

to [Minor A's] texts, pictures and videos through his Apple ID"; and (3) "frequently looks at [Minor A's] text conversations on his (Mr. Sheehan['s]) own computer in his [home] office." [SJA: 59; GA: 5; *see also* JA: 24]. Minor B provided examples of this "spying" that he had personally witnessed, and his information was partially corroborated by Google evidence showing that Sheehan had created a Gmail account for Minor A, with a recovery email address that Sheehan controlled. [SJA: 57, 59-61; GA: 5; *see also* JA: 24-25].

### C.    There was ample probable cause under all the circumstances

For three main reasons, there was at least a "fair probability" that one or more of the devices seized from Sheehan's home would contain child pornography given the facts outlined just above.

First, the affidavit in support of the second search warrant stated not just that Massachusetts State Police Trooper Hart at the Computer Crimes Unit had "identified pictures he believed to be child pornography" on Sheehan's already-seized iPhone, but that: "The pictures consisted of images of prepubescent penises that lacked pubic hair." [SJA: 80]. As the district court observed, unlike the affidavit language criticized in *Brunette*, 256 F.3d at 17-18 ("a prepubescent boy lasciviously displaying his genitals"), this is not a mere "mouthing of statutory formulation." [GA: 15]. Rather, it "is far more graphic than the language in *Brunette*, and is

attributed to the first-hand visual inspection and determination of the State Trooper tasked with downloading the images." [GA: 15-16].

Second, fairly read, the statement "the pictures *consisted of* images of prepubescent penises that lacked pubic hair" indicates that the images were primarily of—and focused on—the penises, and were not merely pictures of naked boys. *See United States v. Charriez-Rolón*, 923 F.3d 45, 52 (1st Cir. 2019) (lead factor in test for whether an image depicts "lascivious" conduct is "whether the genitals or pubic area are the focal point of the image"); *Commonwealth v. Rex*, 469 Mass. 36, 43-44, 11 N.E.3d 1060, 1069 (2014) (same, for "lewd" element of state pornography offense).

And third, the "images of prepubescent penises that lacked pubic hair" were stored in Sheehan's own cellphone, at a time when a state judge had found probable cause to believe he had engaged in "indecent" touching of a boy under the age of 14, and in circumstances where there were strong indications he had molested this boy as well as other boys, that he was monitoring the texts of one alleged victim as well as the photos and videos stored on the boy's phone, and that he was taking elaborate steps to deflect the concerns of parents by (among other things) creating fake communications with a police officer. *Compare Brunette*, 256 F.3d at 17 (images were merely online postings linked to the defendant). The surrounding evidence that Sheehan was sexually attracted to prepubescent boys and had engaged in sexual acts

23

with at least one minor victim strongly supported the inferences that the "images of prepubescent penises that lacked pubic hair" that Sheehan kept on his own cellphone were (a) further evidence of those sexual offenses against children, and (b) at the very least, images of the type designed to "appeal[] to the prurient interest," *New York v. Ferber*, 458 U.S. 747, 764 (1982), of a person with such proclivities, and hence "lewd" under state law for either or both reasons.

At bottom, however, the question here is not whether the particular images that the Trooper saw on Sheehan's iPhone depicted a lewd display of genitals but whether the affidavit's graphic description of the images, coupled with the broader investigative context and the Trooper's assessment that they were child pornography, created at least a "fair probability" that child pornography (whether in the form of those images or others) would be found on one or more of the devices seized from Sheehan's home. The district court properly answered that question in the affirmative, and appropriately deferred to the issuing judge. [GA: 15-16]. *See, e.g.*, *Chiu*, 36 F.4th at 299 (the search warrant affidavit's "chronology of events," including witness interviews that disclosed how the defendant "came to acquire, store, and view the contraband," compensated for its general descriptions of "child pornography").

24

### D.     The good-faith exception applies in any event

At all events, given the facts and circumstances discussed above, this is not a situation in which the officers relied "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (cleaned up). Far from it. Even if the facts fell short of satisfying the "fair probability" standard— requiring less than a 50/50 chance that one or more of Sheehan's seized devices would contain child pornography—they did not fall so woefully short as to make it "unreasonable" for the officers to rely on the warrant. As such, the *Leon* good-faith exception applies here. *See, e.g.*, *United States v. Syphers*, 426 F.3d 461, 467-68 (1st Cir. 2005); *Brunette*, 256 F.3d at 19. Indeed, because the warrant plainly "pass[es] muster under *Leon*," the Court need not even address "whether the warrant application was supported by probable cause." *United States v. Beckett*, 321 F.3d 26, 32 & n.4 (1st Cir. 2003) (bypassing probable cause and affirming based on *Leon*).

## <u>CONCLUSION</u>

For the above reasons, this Court should affirm.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    /s/ *Donald C. Lockhart*
DONALD C. LOCKHART
Assistant U.S. Attorney

**CERTIFICATE OF COMPLIANCE WITH**
**Rule 32(a)**

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type-Style Requirements**

1.     This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,328 words (an opening or answering brief may not exceed 13,000 words, a reply brief may not exceed 6,500 words), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2016.

 /s/ *Donald C. Lockhart*   
DONALD C. LOCKHART
Assistant U.S. Attorney

Dated:  November 10, 2022

27

## **CERTIFICATE OF SERVICE**

       I, Donald C. Lockhart, Assistant U.S. Attorney, hereby certify that on November 10, 2022, I electronically served a copy of the foregoing document on the following registered participant of the CM/ECF system:

Robert L. Sheketoff, Esq.
Sheketoff & O'Brien
One McKinley Square
Boston, MA 02109

                          /s/ *Donald C. Lockhart*
                          DONALD C. LOCKHART
                          Assistant U.S. Attorney

No.  21-1983

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

### UNITED STATES OF AMERICA,
### APPELLEE

### V.

### DEREK SHEEHAN,
### DEFENDANT-APPELLANT

_____

### **Addendum Table of Contents**

1.     District court's opinion denying suppression motion [ECF 90] .........GA: 001

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 18-10391-RGS

UNITED STATES OF AMERICA

v.

DEREK SHEEHAN

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS
AND MOTION FOR A *FRANKS* HEARING

January 28, 2020

STEARNS, D.J.

Defendant Derek Sheehan, who is charged with three counts of sexual exploitation of children (child pornography), 18 U.S.C. §§ 2251(a) and (e), seeks to suppress evidence seized under a Massachusetts state search warrant issued by a Justice of the Hingham District Court.[1]   In the law of search and seizure there is a strong preference for the "informed and deliberate determinations of magistrates." *United States v. Lefkowitz*, 285 U.S. 452, 464 (1932).   In recognition of this preference, courts reviewing warrants "will accept evidence of a less 'judicially competent or persuasive

_____

[1] There were in fact two separate state warrants. Pursuant to the first warrant, officers seized a cell phone and various other electronic devices from Sheehan's home.   The second warrant authorized police to examine the contents of the devices.   Both warrants are at issue.

**GA: 1**

character than would have justified an officer in acting on his own without a warrant.'" *Aguilar v. Texas*, 378 U.S. 108, 111 (1964), quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948). Warrants are not to be subjected to niggling scrutiny but are to be tested in a "common-sense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). A "grudging or negative attitude" on the part of a reviewing court is discouraged. *Id.* at 108-109; *see also United States v. Johnson*, 78 F.3d 1258, 1262 (8th Cir. 1996) ("absolute syllogistic precision" is not required).

Whether a challenged warrant was issued on a sufficient showing of probable cause is a question of law for the determination of the reviewing court. *Beck v. Ohio*, 379 U.S. 89, 96 (1964). Probable cause means "reasonable cause," something significantly less exacting than "more likely than not" or "by a preponderance of the evidence." *United States v. Melvin*, 596 F.2d 492, 495 (1st Cir. 1979). Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (*plurality opinion*) (internal citation omitted). As the probable cause inquiry begins and ends with the four corners of the affidavit

supporting the search warrant application, *United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999), no evidentiary hearing was held.   The court did, however, hear oral argument from counsel involved on two separate occasions, September 20, 2019, and after an order for additional briefing, on November 15, 2019.

FACTUAL BACKGROUND

**The first warrant**

The search warrant affidavit sworn by Norwell police officer Kayla Puricelli on August 16, 2018, sets out the following pertinent facts.   On June 28, 2018, Puricelli interviewed a woman who had presented herself at the Nowell police station to report a sexual assault on her younger brother, allegedly committed by Sheehan.   In looking through her brother's iPhone (which she had brought with her), she stated that she had seen references to a Massachusetts State Police file and a purported email exchange between Sheehan and Rick Phelps, the Norwell police school resources officer.   Later that day, Puricelli spoke to the mother of a second boy who reported that she had seen a reference to the same exchange of emails between Sheehan and "Phelps" on her son's phone.   On June 30, 2018, Puricelli spoke to the father of the first child who told her that Sheehan had given him a copy of the supposed email exchange with Phelps.   Sheehan told the father that Phelps had contacted him regarding the investigation of a gossipy exchange of texts

between his son and the second boy accusing Sheehan of being a pedophile. In the email exchange, Phelps purports to tell Sheehan that the matter had been resolved and that he had been exonerated.

On July 9, 2018, a SAIN interview was held with the first boy at the Plymouth Children's Advocacy Center. Based on what was learned in that interview, Puricelli and three other officers spoke again to the second boy's mother.   She stated that Sheehan had told her that he had been investigated by the State Police "because a kid made up an untrue accusation of him being a pedophile, but that he was cleared be the State Police of any wrong doing (sic)."   Dkt. #68-1 at 8.   Sheehan had also shown her a file with a State Police logo on its cover which contained copies of the accusatory text messages exchanged by the two boys.   On August 1, 2018, Puricelli, accompanied by the other three officers, interviewed the father of a third boy whose name had also come up during the SAIN interview.   The father stated that Sheehan had told him that he had been falsely accused, but later cleared after an investigation conducted by Phelps and the State Police.   Sheehan had shown him a photo of the file displaying the logo of the State Police on its cover.

On August 14, 2018, the officers met again with the mother of the second boy.   She stated that her husband had been contacted earlier in the spring by Sheehan who had told him that he had "to inform him of something that could not wait."   *Id.*   According to the mother, Sheehan had shown her

4

husband a copy of a "State Police Report" containing the texts between the two boys.    The officers then spoke with her son who told them that Sheehan had created the iPhone account that the boys had used for texting.    In one of the text messages the boys referred to Sheehan as a "literal child rpst (sic)." Dkt. #68-1 at 9.

On August 17, 2018, the officers spoke with the second boy in presence of his mother.    He confirmed that Sheehan had created the iPhone account for his friend (the first boy), and that Sheehan regularly "spied" on his friend's text messages.    He also stated that Mac desktop computer in his home office, "a bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement." *Id.*   The boy's mother had also told the police that she had spoken by telephone earlier that week with Sheehan's wife (at her request).    Mrs. Sheehan told her that the police were investigating Sheehan and "trying to turn her . . . against her husband." *Id.*  Mrs. Sheehan also stated that the first boy's accusation of having been assaulted by Sheehan the summer before was a lie. Sheehan then joined the conversation and urged her to tell the police that he had done nothing wrong.

According to Puricelli, the State Police was able to corroborate, by way of administrative subpoenas served on Google, that Sheehan had had created the account used by the first boy for texting and that he had also created the rickphelps21 Gmail account purportedly owned by Officer Phelps.

Based on the facts summarized above, Puricelli concluded that

probable cause existed to search Sheehan's home for evidence related to the state crimes of Impersonation of a Police Officer, Witness Interference & Obstruction, Unauthorized Access to a Computer, and Identity Fraud. The warrant application specifically asked for permission to seize computers, tablets, cellular telephones, and media storage devices, all of which was granted by the issuing Justice of the Hingham District Court.

**The Second Warrant**

The second warrant was issued on August 29, 2018, on Officer Puricelli's application, also by the Hingham District Court.[2]   Puricelli sought permission, which was granted, to search the contents of the fifteen electronic storage devices that had been seized from Sheehan's home.[3]   The stated purpose of the search was to seize evidence of possession by Sheehan of child pornography in violation of Mass. Gen. Laws, ch. 272, § 29C.   After

---

[2] A third warrant was issued by a U.S. Magistrate Judge on September 19, 2018, on the application of Lisa Crandall, a Special Agent of the Federal Bureau of Investigation, authorizing a second search of Sheehan's home. That warrant is not being contested by the instant motion to suppress.

[3] Although Puricelli did not specifically incorporate by reference her first affidavit, she four times listed the docket number of the first warrant (1858SW0035).  She also disclosed that the first application involved the seizure of the same items as named in the second, although in an investigation of different crimes.   Notably, the second warrant was given the next successive docket number to the first (1858SW0036).   It may be reasonably inferred that the second judge would have been aware of the earlier warrant issued by his court.

6

relating information regarding the execution of the first search warrant and the arrest of Sheehan at his home, Puricelli stated that she had been told by the State Trooper, who had been tasked with downloading files from Sheehan's iPhone, that he had encountered pictures that he believed to be child pornography. Specifically, the Trooper stated that he had observed "images of prepubescent penises that lacked pubic hair." Dkt. #68-2 at 5.

DISCUSSION

As the court noted at the initial hearing, the parties had largely briefed the motion to suppress on the issue of whether the warrant complied with Massachusetts state law. It is true, as Sheehan contends, that a federal court evaluating the admissibility of evidence seized pursuant to a state search warrant will look to whether the supporting affidavits provided a "substantial basis" for concluding that probable cause existed that evidence related to the (state) crimes under investigation would be found. *United States v. Cordero-Rosario*, 786 F.3d 64, 69 (1st Cir. 2015). *See Gamble v. United States*, 139 S. Ct. 1960, 1979 (2019) ("Once the Fourth Amendment was held to apply to the States as well as the Federal Government, however, the silver platter doctrine was scuttled. . . . Now the fruits of unreasonable state searches are inadmissible in federal and state courts alike."). *See also Elkins v. United States*, 364 U.S. 206, 213 (1960). On the other hand, it is

well established that evidence gathered in conformity with federal law, whether by state or federal authorities, "is admissible in federal court proceedings *without regard to state law*." *United States v. Sutherland*, 929 F.2d 765, 769 (1st Cir. 1991), quoting *United States v. Little*, 953 F.2d 1420, 1434 (9th Cir. 1984). This is true even when the evidence "is obtained pursuant to a state search warrant or in the course of a state investigation." *United States v. Mitro*, 880 F.2d 1480, 1485 n.7 (1st Cir. 1989).

The reason for the rule is explained by the ancient doctrine of dual sovereignty reaffirmed in *Gamble*. Significant differences exist between the Supreme Court's interpretation of the Fourth Amendment and the Supreme Judicial Court's more rights-oriented interpretation of the analog article 14 of the Massachusetts Declaration of Rights. One prominent and relevant example entails the applicability of the "good faith mistake" doctrine. *Compare United States v. Leon,* 468 U.S. 981 (1984) (recognizing a good faith exception) *with Commonwealth v. Hernandez*, 456 Mass. 528, 533 (2010) (rejecting the exception as a matter of state law). In another significant respect state and federal law differ in that Massachusetts does not follow the flexible "totality of the circumstances" test of probable cause approved in *Illinois v. Gates*, 462 U.S. 213 (1983), but rather the "more meticulous" standard set out in *Aguilar v. Texas*, 378 U.S. 108 (1964), and

*Spinelli v. United States*, 393 U.S. 410 (1969).  *See Commonwealth v. Upton (II)*, 394 Mass. 363, 374 (1985).

A federal court is also not bound by procedural differences between state and federal law relating to the formalities of the warrant process. Evidence gathered under a state warrant will be admitted in federal proceedings if the warrant substantially complies with federal due process requirements; strict adherence to Fed. R. Crim. P. 41(a) is not required. *United States v. Soule*, 908 F.2d 1032, 1038-1039 (1st Cir. 1990).

## Probable Cause: The First Warrant

Sheehan's principal argument is that Puricelli's initial affidavit failed to establish probable cause with respect to each of the state crimes she listed as the object of the investigation.   At issue are Impersonation of a Police Officer, Mass. Gen. Laws ch. 268, § 33; Witness Interference & Obstruction of Justice, Mass. Gen. Laws ch. 268, § 13B; and Unauthorized Access to a Computer, Mass. Gen. Laws ch. 266, § 120F.[4]

---

[4] Officer Puricelli also specified Identity Fraud, Mass. Gen. Laws ch. 266, § 37E, as a target crime.   Identity fraud or theft under Massachusetts law requires proof of four elements: "that a defendant (1) posed as another person; (2) did so without that person's express authorization; (3) used that other person's identifying information to obtain, or attempt to obtain, something of value [including identity documents]; and (4) did so with the intent to defraud."  *Commonwealth v. Giavazzi*, 60 Mass. App. Ct. 374, 376 (2004) (internal citation omitted).   The theory on which Puricelli proceeded

9

Impersonation of a police officer under Massachusetts law requires proof that a person falsely pretended to be a police officer and acted as such or used his apparent authority to command another person to aid or assist him in a matter pertaining to the official duty of an officer. Although the court (and the parties) are unaware of any Massachusetts appellate case discussing the elements of the crime, other states with similar statutes require that the impersonation must be done with a deliberate or fraudulent intent to induce reliance on the impersonator's pretended acts. *See, e.g.*, California Penal Code § 538d(a) ("fraudulently impersonating . . . or of fraudulently inducing the belief that he or she is a police officer"); Arizona Criminal Code § 13-2411(A) ("intent to induce another to submit to the person's pretended authority or to rely on the person's pretended acts").[5]

was that Sheehan posed as Officer Phelps in part to deflect a potential prosecution. However, some five months before she presented her affidavit, the Supreme Judicial Court had redefined a "thing of value" to mean "something that has a market or monetary value." *Commonwealth v. Escobar*, 479 Mass. 225, 227, 229 (2018) (avoiding a criminal prosecution is not a "thing of value" within the meaning of the Massachusetts statute). Neither Puricelli nor the Hingham Clerk-Magistrate appear to have been aware of the change in the law. The government concedes that the fourth element of identity theft was not satisfied but suggests that the "good faith" exception should apply. Gov't.'s Br. at 15-16. As I find that probable cause was established with respect to three of the other target offenses, there is no compelling reason to reach the issue.

[5] The closest analogous federal criminal statute, 18 U.S.C. § 912, adds

10

**GA: 10**

Puricelli's affidavit, while admittedly not a literary masterpiece, lays out the steps that Sheehan took to assume the identity of Officer Rick Phelps as part of a scheme to deflect parental complaints by the parents of the boys described in the affidavit that might trigger an actual police investigation. Sheehan created a phony Gmail account in Phelps's name and then fabricated an email exchange with himself in which Phelps purportedly exonerates Sheehan of any sexual impropriety involving the boys. Sheehan then shared this fictious email chain with the boys' parents (the father of the first boy, the father and mother of the second boy, and the father of the third boy), supposedly corroborated by a phony Massachusetts State Police "report" cobbled up by Sheehan, in an elaborate effort to convince the parents that the boys were lying about his sexual misdeeds.[6]   In the totality of the circumstances, the affidavit establishes probable cause that Sheehan deliberately and falsely represented himself to be Officer Phelps and that

---

an element missing from the state statute, the demanding or obtaining something of value.

[6] As the government notes, Sheehan concedes the impersonation of Officer Phelps.   I agree with the government that his argument that he did not use an "official" Norwell Police Department email account in doing so is a distinction without a difference.   *See* Gov't.'s Br. at 10.

evidence of the impersonation would be found stored in his electronic devices, specifically his phone and computers.

The Massachusetts witness intimidation statute, M.G.L. c. 268, § 13B, has gone through several modern permutations. In the current version, as amended most recently in 2018, the statute punishes three types of conduct undertaken with the intent to interfere with the judicial process: (1) causing or threatening to cause physical or emotional injury to any person protected by the statute or doing harm to his or her economic interests and property; (2) the offer of a gift or anything of value as a *quid pro quo*; or (3) "mislead[ing], intimidate[ing], or harass[ing] another person who is a: (A) witness or potential witness; (B) person who is or was aware of information, records, documents or objects that relate to a violation of a criminal law . . . with the intent to or with reckless disregard for the fact that it may; (1) impede, obstruct, delay, prevent or otherwise interfere with: a criminal investigation at any stage . . . ."  It is the third branch component (misleading with the intent to interfere) that is at issue here.

Under section 13B, the Commonwealth is not required to prove that a crime had actually occurred – only the possibility that it had or, alternatively, that an investigation had already begun. *Commonwealth v. Fragata*, 480 Mass. 121, 124-125 (2018); *Commonwealth v. Garcia*, 95 Mass. App. Ct. 1, 8

12

(2019).   The term "potential witness," as used in the current and previous iteration of the statute, includes any person who has or who might possibly be called upon to testify in a judicial proceeding.   *Commonwealth v. Burt*, 40 Mass. App. Ct. 275, 277-278 (1996). By using the word "potential," the statute includes persons who *might* have witnessed criminal conduct; there is no requirement that the Commonwealth prove actual knowledge on the witness's part.   *Fragata*, 480 Mass. at 125-126. "It is enough that the jury reasonably conclude from the surrounding circumstances that it was likely that the victim would furnish to an official investigating authority information pertaining to the crime and that the defendant intended to discourage such communication." *Commonwealth v. King,* 69 Mass. App. Ct. 113, 121 (2007).   Finally, the Commonwealth is not required to show that a criminal investigation had commenced or was ongoing or that the victim was furnishing information to the authorities at the time the intimidating act was undertaken.   *Id.*[7]

Here there is every reason to believe (probable cause plus) that Sheehan's efforts to persuade the parents (in the case of the second child with

---

[7] I have set out Massachusetts law in perhaps more detail than necessary as I agree with the government that the Sheehan's restrictive interpretation of section 13B is largely based on case law interpreting prior, less expansive iterations of the statute.   *See* Gov't.'s Br. at 12-13.

the aid of his wife) that he had been exonerated from any wrongdoing involving their children was an attempt, however clumsy, to mislead and dissuade them from initiating and cooperating with a police investigation of his misconduct.

The Massachusetts statute criminalizing unauthorized access to a computer, Mass. Gen. Laws, ch. 266, § 120F, states:

> Whoever, without authorization, knowingly accesses a computer system by any means, or after gaining access to a computer system by any means knows that such access is not authorized and fails to terminate such access, shall be punished by imprisonment in the house of correction for not more than thirty days or by a fine of not more than one thousand dollars, or both.

> The requirement of a password or other authentication to gain access shall constitute notice that access is limited to authorized users.

Here as related in the affidavit, Puricelli was told by the second boy that Sheehan had created a Gmail account for the first boy (the alleged victim of the assault) and that Sheehan "spied regularly" on the boy's text messages using a desktop computer and "a bunch of laptops all over his home."   It may be that Sheehan was acting with the boy's knowledge and permission in eavesdropping on his text conversations, but that is an issue of fact that does not detract from a finding of probable cause.   *See United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986) ("The standard of probable cause is the

14

**GA: 14**

probability, not *prima facie* showing, of criminal activity.").

**Probable Cause: The Second Warrant**

Sheehan's complaint with respect to the second warrant is based on dicta in *United Stats v. Brunette*, 256 F.3d 14 (1st Cir. 2001), also a child pornography case, which he reads to require either the attachment to the affidavit of the allegedly obscene images or a written description in *Lady Chatterley* detail, *viz.*

> [D]oes a given image fall within the statutory definition of child pornography? Only if there is probable cause to believe so may a search warrant issue. A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them.

*Id.* at 18.

In *Brunette*, the affiant, rather than describe the images, attempted to parrot the language of the statute ("a prepubescent boy lasciviously displaying his genitals"), a description that that the Court dismissed as a mere "legal assertion." *Id.* at 17.[8]  By contrast, Puricelli's incorporation of what the State Trooper reported ("images of prepubescent penises that lacked pubic hair") is not a mouthing of statutory formulation, is far more

---

[8] The *Brunette* Court ultimately declined to suppress the images, invoking the good-faith exception. *Id.* at 19-20.

graphic than the language in *Brunette*, and is attributed to the first-hand visual inspection and determination of the State Trooper tasked with downloading the images.

That said, the First Circuit's suggestion of what the government fairly describes as a "best practice," *see United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005), is not a constitutional mandate and is not binding on state courts as a matter of comity.   *See United States v. Morel*, 922 F.3d 1, 11 (1st Cir. 2019) ("The 'best practice' judicial gloss cannot be imposed onto state courts.").[9]

**Other Warrant Issues**

Sheehan's catch-all objections to the warrant can be dealt with summarily.   (1) The claim that the affidavit supporting the first warrant failed to establish a "nexus" between his home and the likelihood that evidence of the target crimes would be found there is rebutted by what the second boy told Puricelli, that Sheehan had a "Mac desktop computer in his home office, "a bunch of laptops all over his home," as well as an iPhone, an iPad, monitors, and "a big server in his basement."   Given that the three

---

[9] To the best of my knowledge, no Massachusetts appellate court has ever applied the First Circuit's "best practice" rule in a child pornography search case.

16

target crimes for which probable cause was established involved email communications, real and fabricated, computer surveillance, and the mock-up of a supposed police report, it was highly probable that corroborating evidence would be found stored in the devices.   (2) The first warrant was not overbroad.   The seizing authority was specifically limited by the magistrate to computer equipment, media storage devices, direct evidence of the targeted crimes, and documents showing possession and control of the target premises.   (3) The execution of the warrant did not exceed its authorized scope as demonstrated by the items listed in the warrant return filed with the issuing court.[10]

## Motion for a *Franks* Hearing

To be entitled to a *"Franks"* hearing, a defendant must make a "substantial preliminary showing" that an affidavit contains intentionally false or recklessly untrue statements that are material to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-156, 170 (1978).   A showing of simple factual error in an affidavit is insufficient to trigger a *Franks* hearing.   *United States v. Monaco*, 700 F.2d 577, 580 (10th Cir.

---

[10] Sheehan has no standing to object to the seizure of an iPhone from his wife's personal possession, if such a thing happened. *See Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980).

1983); *United States v. Baldwin*, 691 F.2d 718, 720 n.1 (5th Cir. 1982). The reckless omission of material information from the affidavit may also raise a *Franks* issue. *United States v. Rumney,* 867 F.2d 714, 720 (1st Cir. 1989); *cf. United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) ("[A]n affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information.").

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

If a hearing is warranted, the defendant must prove the knowing falsity or recklessness of the affiant's statements by a preponderance of the evidence. *Id.* at 156. The defendant must also show that any deliberately false or reckless statement was material to the determination of probable cause. If such a showing is made the offending statement is excised from the affidavit, which is then reexamined for probable cause. *Id.*, at 171-172; *United*

18

**GA: 18**

*States v. Veillette*, 778 F.2d 899, 903-904 (1st Cir. 1985); *see also Doescher v. Estelle*, 666 F.2d 285, 288 (5th Cir. 1982) (evidentiary hearing properly denied where, even if all challenged material was excised, the affidavit demonstrated probable cause); *United States v. Alicea*, 205 F.3d 480, 487 (1st Cir. 2000) (*Franks* hearings "are the exception, not the rule" given the rigorous threshold a defendant must meet to be entitled to a hearing).

Sheehan challenges three aspects of Puricelli's affidavit: (1) that the affidavit includes information that is not reflected in a written report of the interview of the second child; (2) that Puricelli omitted information about whether the first child knew that Sheehan was able to access his Gmail account; and (3) that Puricelli omitted a first-hand description of the State Police report.  None of these niggles amounts to a "substantial preliminary showing."  There is no reason why Puricelli needed stick verbatim to a written report of the second child's interview, a report that as the government points out, is identified by the Trooper who filed it as "a brief summary," especially given the fact that, as the affidavit makes clear, that Puricelli, contrary to defendant's contention, was physically present during the interview.  Whether the first child had given permission to Sheehan to access his Gmail account (or had the ability to do so), as previously explained, has no bearing on the finding of probable cause.  Finally, I am at a loss to

19

**GA: 19**

understand what purpose would have been served by the incorporation in the affidavit of a "first-hand" description of the fabricated State Police Report.[11]

ORDER

For the foregoing reasons, the motion to suppress is <u>DENIED</u>.    The motion for a *Franks* hearing is also <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

[11] In her affidavit, Puricelli stated that a picture of the "Report" given to one of her fellow investigators by the father of the third boy (who had received it from Sheehan) showed "the Massachusetts State Police emblem on the cover, with tabs dividing the sections of the 'report.'" Dkt #68-1 at 8.

20

**GA: 20**